**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN FAHY,<br>JENNENE STOICESCU,<br>KIMBERLY ADAMS,<br>and WILLIAM NORTHCUTT<br>on behalf of Plaintiffs and the class<br>members described herein, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:23-cv-03590 |
| v. | ) | |
| | ) | Judge: Matthew F. Kennelly |
| MINTO DEVELOPMENT<br>CORPORATION;<br>BENHTI ECONOMIC<br>DEVELOPMENT CORPORATION;<br>DOUGLAS WILLIAM ISAACSON;<br>MINTO FINANCIAL d/b/a Minto Money<br>and JOHN DOES 1–20, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

Defendants Benhti Economic Development Corporation ("BEDCO"), Minto Financial d/b/a Minto Money ("Minto"), Minto Development Corporation ("MDC"), Douglas William Isaacson ("Isaacson")[1] (collectively, "Defendants"), move to transfer the above-captioned matter to the District of Alaska under 28 U.S.C. § 1404(a). In support, Defendants state as follows:

---

[1] Minto Development Corporation and Douglas William Isaacson have filed a Motion to Dismiss concurrently with the instant motion because they were improperly named in this suit. As set forth in the Motion to Dismiss, neither MDC nor Isaacson served in the capacities alleged in the Complaint at the time Plaintiffs entered into the loans at issue and they have ceased all involvement with Minto. Thus, MDC and Isaacson are not proper parties and should be dismissed.

**INTRODUCTION**

This case is about a lending operation based in Alaska, owned, operated, and controlled by an Alaskan federally recognized Indian tribe, and managed and operated by Alaskan Tribal members. Yet Plaintiffs brought this action in Illinois federal court alleging that they received loans from this lending operation that exceeded Illinois interest rate caps, in violation of the Racketeer and Influenced Corrupt Organizations Act ("RICO") and Illinois law.

The Court should transfer this matter to the District of Alaska under 28 U.S.C. § 1404(a) because Alaska is the more convenient forum. It is where the lending operation is based, where the loans were approved and extended, and where all the witnesses reside. Illinois, on the other hand, is only the site of Plaintiffs' residences and purported injuries, neither of which make Illinois a more convenient forum. Litigating in Alaska would also serve the interests of justice. Compared to Illinois, Alaska has a thriving Native American community, and that community has a compelling interest in a local court resolving the critical Tribal issues presented here. Alaska courts also have significant expertise in Tribal law and have capacity on their dockets to adjudicate such claims. These and other public and private interests all favor transferring this matter to Alaska.

**BACKGROUND**

While Defendants dispute the claims in Plaintiffs' Complaint and deny all liability, the allegations make clear that nearly all relevant events took place within the District of Alaska.

According to the Complaint, Plaintiffs each obtained loans from Minto in 2022 or 2023. (Compl. ¶¶ 44, 48, 52, 56, ECF No. 1.) Minto exists under the laws of the Native Village of Minto ("Minto Tribe"), a federally recognized tribe based in Minto, Alaska. (*Id.* ¶¶ 21, 71.) Minto's office is on the Minto Tribe reservation, where it also maintains a postal box. (*Id.* ¶¶ 38–39.)

2

Minto is a lender. Its loans are made on the Minto Tribe reservation under Minto Tribal law (*id.* ¶ 37), and Minto operates its lending business online via www.mintomoney.com. (*Id.* ¶¶ 14–15.) MDC is an Alaska corporation based in Fairbanks, and its registered agent is in North Pole, Alaska. (*Id.* ¶ 13.) Minto's lending business provides significant and direct economic benefit to the Tribe, its members, and community. (*Id.* ¶ 28.)

Plaintiffs allege that BEDCO is the parent company of Minto. (*Id.* ¶¶ 21, 25.) BEDCO is an economic development corporation organized under the laws of the Minto Tribe. (*Id.* ¶ 12.) BEDCO's offices reside in the same building as Minto, so it too is located on the Minto Tribe reservation in Alaska. (*Id.* ¶¶ 12, 38–39.)

Minto holds a Tribal lending license. (*Id.* ¶ 72.) The license is signed by the commissioner of the Minto Financial Services Licensing & Regulatory Commission. (*Id.*) Operating from a Minto, Alaska address, the Minto Financial Services Licensing & Regulatory Commission issued the license "pursuant to and in accordance with the Tribal Credit Code of the Minto Tribe." (*Id.* Ex. N, ECF No. 1-1.)

Plaintiffs assert that Minto mainly benefits Isaacson and other nontribal members rather than the Minto Tribe. According to Plaintiffs, Isaacson is the Chief Executive Officer of MDC, acts as an agent of Minto, and controls BEDCO. (*Id.* ¶¶ 16, 24–25.) Isaacson resides in North Pole, Alaska and maintains an office in Fairbanks. (*Id.* ¶ 16.) As set forth above, MDC and Isaacson did not serve in the capacities alleged in the Complaint, and at the time Plaintiffs entered into the loans at issue, MDC and Isaacson had ceased all involvement with Minto; however, the management responsibilities of MDC and Isaacson were absorbed by members of the Minto Tribe who are located in Alaska. Plaintiffs submit no information about the other nontribal members who purportedly benefit from Minto's lending operation. (*See generally id.*)

Plaintiffs reside in Illinois and allegedly obtained loans from Minto through its website. (*Id.* ¶¶ 8–11, 46, 50, 54, 58.) As alleged in the Complaint, the loan-approval process included a final review from a Minto Tribe representative, who must give final loan approval from the Minto Tribe reservation in Alaska. (*Id.* ¶ 35.) Although Plaintiffs' loans were made on the Minto Tribe reservation (*see id.* ¶ 37), they contend that Minto transferred the money through banks located in Illinois and debited the funds in Illinois accounts. (*Id.* ¶ 41.)

Based on these allegations, Plaintiffs bring putative class action claims under RICO, 18 U.S.C. § 1964; the Illinois Interest Act, 815 ILCS 205/4; and the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1, and Consumer Fraud Act, 815 ILCS 505/1. (*Id.* Counts II–IV.) Plaintiffs also bring a putative class action claim for illegal conduct. (*Id.* Count I.)

## ARGUMENT

Defendants move to transfer this matter to the District of Alaska under 28 U.S.C. § 1404(a). Section 1404(a) grants this Court with the authority to transfer a matter to another district court "[f]or the convenience of the parties and witnesses, in the interest of justice." *Id.* Transferring a matter under § 1404(a) has four requirements: "(1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) the transfer would serve the interest of justice." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (alteration in original) (quoting *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007)).

All these requirements are met. Venue is proper in this district. Likewise, venue and jurisdiction are proper in the District of Alaska. Alaska is not only where all Defendants reside, are incorporated, or have their principal place of business, but it is also where a substantial part of the events giving rise to Plaintiffs' claims occurred. *See* 28 U.S.C. §§ 1391(b)(1)-(2); *Livingston*

*v. Hoffmann-La Roche Inc.*, 293 F. Supp. 3d 760, 766 (N.D. Ill. 2018) ("The 'paradigm' forums in which a corporation is 'at home' [for the exercise of general jurisdiction] . . . are the corporation's place of incorporation and its principal place of business.") (second alteration in original) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)). The District of Alaska is more convenient for the parties and witnesses because it is where nearly all the evidence is and all the material events occurred. And transferring this matter to the District of Alaska would serve the interests of justice because Alaska courts have experience in resolving Tribal issues, have capacity on their dockets to adjudicate such claims, and serve a community with a compelling interest in Tribal matters.

## I.      Alaska Is More Convenient For The Parties And Witnesses.

To evaluate convenience, courts in this district weigh five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 22 C 1422, 2023 WL 4106067, at *14 (N.D. Ill. June 21, 2023) (quoting *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017)). All these factors favor transferring this matter to Alaska.

### A.      Plaintiffs' Choice Of Forum Should Be Discounted.

First, Plaintiffs' choice of forum merits little weight because Plaintiffs bring a putative class action. *Jaramillo*, 664 F. Supp. 2d at 914 (noting weight afforded plaintiff's choice of forum "is greatly discounted in class actions"); *Kahn v. Target Corp.*, No. 22 C 4178, 2023 WL 2306940, at *2 (N.D. Ill. Mar. 1, 2023) ("[C]ourts greatly discount the weight given to a plaintiff's choice of forum in putative class actions . . . ."); Wright & Miller, Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ("[I]n representative actions, where the plaintiff seeks to vindicate rights of others the plaintiff's venue preference is weakened.").

Further, the plaintiff's choice of forum affords even less deference when, as here, "another forum has a stronger relationship to the dispute." *Jaramillo*, 664 F. Supp. 2d at 914 (citation omitted); *accord Jasper v. Danone N. Am. Pub. Benefit Corp.*, No. 22 C 7122, 2023 WL 4492354, at *2 (N.D. Ill. July 12, 2023). Consider *Jasper*. The court there discounted the plaintiff's choice of forum because her consumer fraud claims had almost no connection to Illinois: that was only where she resided and purchased the product at issue. *Jasper*, 2023 WL 4492354, at *2. The transferee forum, by contrast, bore a strong relationship to the claims. That was where most of the defendant's relevant decisions took place. *Id.* It was also where the defendant's headquarters was located. *Id.* Similarly, here, Defendants and nearly all key witnesses are located in Alaska and Plaintiffs allege that Defendants made critical marketing and loan-approval decisions from their headquarters and offices in Alaska. (Compl. ¶¶ 12–13, 16, 35, 37–39.) Plaintiffs' claims, on the other hand, bear only a tenuous relationship to Illinois: that is only where they reside and where they allegedly obtained the loans. (*Id.* ¶¶ 46, 50, 54, 58.) Thus, as in *Jasper*, Plaintiffs' choice of forum should be discounted, and this factor weighs in favor of transfer to the District of Alaska.

## B.     Alaska Is The Situs of Material Events.

Second, the situs of material events is in Alaska, not Illinois. *Jasper* is again instructive. The court there found this factor favored transfer because the defendant was headquartered in the transferee forum, its critical decisions occurred mostly in the transferee forum, and there was evidence in the transferee forum. *Jasper*, 2023 WL 4492354, at *3. Those considerations were far more material to the plaintiff's claims than were the location of her purchase and injury. *Id.*; *see also Jaramillo*, 664 F. Supp. 2d at 914 (finding situs of material events in a consumer fraud class action favored transfer when the claims focused on defendants' decisions, not plaintiffs' purchases, and defendants were headquartered in other states); *Kahn*, 2023 WL 2306940, at *2 (similar).

That reasoning applies wholesale here. Just as in *Jasper*, Defendants either live and work in Alaska or are headquartered there. (Compl. ¶¶ 12–13, 16.) Additionally, the Complaint alleges that all decisions critical to Plaintiffs' claims occurred in Alaska. These include decisions about Minto's creation and relationship to the Minto Tribe, decisions about how and where to market Minto's loans, and decisions about which loans to approve. (*See id.* ¶¶ 16, 35, 37–39.) And given that Plaintiffs' claims sound in fraud, Defendants' decisions are far more material to this matter than the site of Plaintiffs' residences or alleged injuries. *See Jasper*, 2023 WL 4492354, at *3 (finding the location of defendant's decisions highly relevant to consumer fraud claims because they require proof of intent). This factor favors transfer to the District of Alaska.

C.      **Alaska Is The Source of Nearly All The Proof.**

Third, the relative ease of access to sources of proof favors transfer because the most significant sources of evidence are in Alaska. Key to this inquiry is where "documents and decision making employees of the [d]efendants are located." *Jaramillo*, 664 F. Supp. 2d at 914. Here, the allegations in Complaint are based on the actions of Minto and BEDCO, and both entities exist in and operate from Alaska. Moreover, according to the Complaint, the individuals who make decisions about Minto's creation and relationship to the Minto Tribe, how and where to market Minto's loans, and which loans to approve are all located in Alaska. Indeed, nothing in the Complaint suggests the primary sources of proof exist anywhere other than Alaska. Thus, this factor weighs in favor of transfer.

D.      **Nearly All The Witnesses Are In Alaska.**

Fourth, in evaluating the convenience of witnesses, courts put special emphasis on the location of nonparty witnesses. *See id.* at 915 ("The convenience of non-party witnesses should be given more consideration than party witnesses under this factor, 'since party witnesses normally

must appear voluntarily.'") (quoting *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007)). Again, the allegations in the Complaint are based on the actions of Minto and BEDCO, which exist in and operate from Alaska. Accordingly, it is reasonable to conclude that relevant witnesses will be located in Alaska, including employees of Minto, MDC, and BEDCO. These also include Tribal members familiar with the creation of these entities and their relationship to the Minto Tribe. Only if this matter is transferred will these potential witnesses reside within 100 miles of the court and thus be within its subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A). And to avoid any doubt, nothing in the Complaint suggests that there are any potential nonparty witnesses in Illinois. *See Amorose*, 521 F. Supp. 2d at 737 (finding transfer more convenient for witnesses when plaintiffs "identified no witnesses who reside in this district"). This factor favors transfer.

### F. Litigating In Alaska Is More Convenient For The Parties.

Finally, Alaska is, on balance, more convenient for the parties. Litigating in Alaska is much more convenient for Defendants. This is where they live and work or where they are headquartered. (Compl. ¶¶ 12–13, 16.) Plus, most depositions will likely involve employees of Minto, MDC, and BEDCO, all of whom likely live and work in the District of Alaska as well. *See Simonoff v. Kaplan, Inc.*, No. 09-cv-5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010) ("It makes little sense to litigate a case in Illinois when virtually every material witness resides in New York."). And to ease any burden in litigating this case in Alaska, Defendants are amenable to deposing Plaintiffs in Illinois. This factor favors transfer.

## II. Transferring This Matter Would Serve The Interests Of Justice.

Along with its convenience, litigating in Alaska would serve the interests of justice. Assessing the interests of justice does not involve assessing Plaintiffs' claims. *Jasper*, 2023 WL

4492354, at *4. Instead, courts in this district consider "each court's relative familiarity with the relevant law, docket congestion and likely speed to trial, the relationship of each community to the controversy, and the respective desirability of resolving controversies in each locale." *Kahn*, 2023 WL 2306940, at *3. All these considerations favor transfer.

A.    **Litigating In Alaska Will Accelerate The Speed To Trial.**

The speed-to-trial factor turns on statistics. *Id.* at *4. According to most recent data, the median time from filing to disposition for civil cases in the Northern District of Illinois is 7.3 months; in the District of Alaska, it is 6.4 months. *See* Table C-5, U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-month Period Ending September 30, 2022, https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf; *see Kahn*, 2023 WL 2306940, at *4 (using same table to assess the speed-to-trial factor). Likewise, thirty-three civil cases went to trial last year in the Northern District of Illinois, about one per judge; in the District of Alaska, only two civil cases were tried, which hardly congested the dockets of the seven judges in that district. *See* Table C-5. These statistics support that this matter would resolve more quickly if it were transferred to Alaska.

B.    **Alaska Has A Compelling Interest In Having A Local Court With Expertise In Tribal Law Resolve Key Tribal Issues.**

In this case, considerations about the relative familiarity with applicable law dovetail with those about each community's relationship with this litigation and the desirability in resolving this controversy in one locale over another. *See Kahn*, 2023 WL 2306940, at *4 (analyzing some of these considerations together); *Jasper*, 2023 WL 4492354, at *7 (same). This is so because Tribal issues will feature prominently in this case. Key among these will be Tribal sovereign immunity, which forecloses Plaintiffs' claims. *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 185

9

(4th Cir. 2019) (instructing district court to dismiss tribal lending entities for lack of subject matter jurisdiction after finding they enjoyed tribal sovereign immunity). The need to litigate this issue strongly favors transfer.

For starters, Alaska has a far greater interest in resolving Tribal sovereign immunity than Illinois does. Unlike Illinois, which is home to zero federally recognized Indian tribes, Alaska is home to 228. *Compare* Bureau of Affairs, Alaska Region, https://www.bia.gov/regional-offices/alaska, *with* Bureau of Indian Affairs, Search Federally Recognized Tribes, https://www.bia.gov/service/tribal-leaders-directory/federally-recognized-tribes (listing no federally recognized tribes under Illinois). The more than 180,000 Native Americans who belong to these tribes have a compelling interest in a local court resolving Tribal sovereign immunity, an issue that affects their daily lives. *See* Bureau of Indian Affairs, Alaska Region (noting that more than 180,000 Native Americans belong to Alaska's 228 federally recognized tribes). In Illinois, where the Tribal presence is minimal, the community's interest in Tribal sovereign immunity is academic at best. Alaska's strong interest in this litigation favors transfer. *See Jaramillo*, 664 F. Supp. 2d at 917 (noting the relation of the community to the occurrence "is often given a great deal of weight").

The massive differential in Tribal presence also means that Alaska courts are much more familiar with Tribal issues than are their Illinois counterparts—another factor weighing heavily in

10

favor of transfer. In fact, as best Defendants can tell, the phrase "tribal sovereign immunity" appears in nine District of Alaska cases[2] but in only three Northern District of Illinois cases.[3]

Finally, Plaintiffs' Illinois claims do not bar transfer. "The Northern District of Illinois is undoubtedly more familiar with the application of Illinois law, but federal courts have experience applying the law of foreign states." *Id.*; *accord Jasper*, 2023 WL 4492354, at *7. More compelling is the Alaska court's familiarity with Tribal sovereign immunity, an issue this Court "would have to spend valuable time acquainting itself with." *Jaramillo*, 664 F. Supp. 2d at 917. Transfer would thus conserve scarce judicial resource and promote judicial economy. *See id.*

Accordingly, the interests of justice would be better served if this matter was transferred to the District of Alaska. Defendants' motion should be granted.

## CONCLUSION

For all the above reasons, Defendants request that the Court transfer this matter to the District of Alaska.

Dated: September 7, 2023                    Respectfully submitted,

                                            By: */s/ Sarah A. Zielinski*

                                            Sarah A. Zielinski (IL 6294156)
                                            Amy Starinieri Gilbert (IL 6317954)
                                            McGuireWoods LLP
                                            77 W. Wacker Drive, Suite 4100
                                            Chicago, Illinois 60601-1818

---

[2] *Cole v. Alaska Island Cmty. Servs., Inc.*, No. 1:18-cv-00011, 2019 WL 13211822 (D. Alaska Oct. 11, 2019), *aff'd, Cole v. Alaska Island Cmty. Servs.*, 834 F. App'x 366 (9th Cir. 2021); *Oertwich v. Traditional Vill. of Togiak*, 413 F. Supp. 3d 963 (D. Alaska 2019), *aff'd in part, rev'd in part and remanded*, 29 F.4th 1108 (9th Cir. 2022), *opinion withdrawn*, 41 F.4th 1193 (9th Cir. 2022); *Matyascik v. Arctic Slope Native Ass'n, Ltd.*, No. 2:19-cv-0002, 2019 WL 3554687 (D. Alaska Aug. 5, 2019); *Wilson v. Alaska Native Tribal Health Consortium*, 399 F. Supp. 3d 926 (D. Alaska 2019); *Alaska Logistics, LLC v. Newtok Vill. Council*, 357 F. Supp. 3d 916 (D. Alaska 2019); *Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232 (D. Alaska 2019); *Montella v. Chugachmiut*, 283 F. Supp. 3d 774 (D. Alaska 2017); *M.J. by Beebe v. City of Quinhagak*, No. 4:08-cv-0021, 2008 WL 11338668 (D. Alaska Aug. 19, 2008); *United States v. CNA Fin. Corp.*, 381 F. Supp. 2d 1088 (D. Alaska 2005).

[3] *Harris v. FSST Mgmt. Servs., LLC*, No. 22-1063, 2023 WL 5096295 (N.D. Ill. Aug. 9, 2023); *Slate v. Makes Cents, Inc.*, No. 22-4165, 2023 WL 3504931 (N.D. Ill. May 17, 2023); *Martin v. Haling*, No. 21-5494, 2022 WL 14634854 (N.D. Ill. Oct. 25, 2022) (merely mentioning tribal sovereign immunity in case discussion).

Telephone: (312) 849-8100
Facsimile: (312) 84903690
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Counsel for Defendants Minto Development Corporation, Benhti Economic Development Corporation, Douglas William Isaacson, and Minto Financial d/b/a Minto Money*