IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUSTIN FAHY, )
JENNENE STOICESCU, )
KIMBERLY ADAMS, )
and WILLIAM NORTHCUTT )
on behalf of Plaintiffs and the class )
members described herein, )
 )
                Plaintiffs, )
 ) Case No. 1:23-cv-03590
    v. )
 ) Judge: Matthew F. Kennelly
MINTO DEVELOPMENT )
CORPORATION; )
BENHTI ECONOMIC )
DEVELOPMENT CORPORATION; )
DOUGLAS WILLIAM ISAACSON; )
MINTO FINANCIAL d/b/a Minto Money )
and JOHN DOES 1–20, )
 )
                Defendants. )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION**

Defendants Benhti Economic Development Corporation ("BEDCO"), Minto Financial d/b/a Minto Money ("Minto"), Minto Development Corporation ("MDC"), and Douglas William Isaacson ("Isaacson")[1] (collectively, "Defendants") by counsel, submit this Memorandum of Law in Support of their Motion to Compel Arbitration.[2] In support of Defendants' Motion to Compel Arbitration, Defendants state as follows:

---

[1] MDC and Isaacson have filed a Motion to Dismiss concurrently with the instant motion because they were improperly named in this suit. As set forth in the Motion to Dismiss, neither MDC nor Isaacson served in the capacities alleged in the Complaint at the time Plaintiffs entered into the loans at issue and they have ceased all involvement with Minto. Thus, MDC and Isaacson are not proper parties and should be dismissed.

[2] Concurrently with the instant motion, Defendants filed a Motion to Transfer Venue. Defendants submit that the proper order of resolving these motions is to resolve the Motion to Transfer Venue first, and if the Court grants that motion, then the instant motion may be resolved in the transferee court. *See Esposito v. Airbnb Action, LLC*, 538 F. Supp. 3d 844, 850 (N.D. Ill. 2020).

1

## INTRODUCTION

Plaintiffs' claims do not belong in federal court. They must either be brought in arbitration or should be dismissed based on Defendants' tribal sovereign immunity. Given that filing a dispositive motion could undermine Defendants' ability to arbitrate their claims, Defendants have first moved to compel arbitration before moving to dismiss based on tribal sovereign immunity.[3] Accordingly, Defendants move to compel Plaintiffs to arbitrate their disputes on an individual basis and ask the Court to stay this action while arbitration proceeds.

## FACTUAL BACKGROUND

Plaintiffs each obtained loans from Minto in 2022 or 2023. *See* Exhibits A–D to the Complaint. The interest rates on each loan varied, but Plaintiffs bring claims against Defendants alleging that the interest rates on Plaintiffs' loans exceed the maximum permitted under Illinois law in violation of the Illinois Interest Act, 815 ILCS 205/6, the Illinois Predatory Loan Prevention Act and Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). *See generally* Compl.

Each loan agreement contains an arbitration and class action waiver provision ("Arbitration Provision").[4] The Arbitration Provision advises Plaintiffs that they must resolve any dispute on an individual basis in binding arbitration:

---

[3] Plaintiffs' federal claims are barred by the doctrine of sovereign immunity. Minto is a subsidiary of BEDCO, and both entities are organized under the laws of the Native Village of Minto ("Minto Tribe"). *See* ECF No. 1. Because federally recognized Indian tribes are sovereign entities, they are immune from suit in federal court absent waiver or congressional abrogation. *Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 689 (7th Cir. 2011). As arms of the Minto Tribe, Minto and BEDCO enjoy the same sovereign immunity granted to the tribe itself. *Aleksic v. Clarity Servs., Inc.*, No. 13 C 7802, 2014 WL 7793410, at *1 (N.D. Ill. Dec. 2, 2014). Thus, Plaintiffs' claims cannot survive in federal court. Accordingly, if the Court denies Defendants' motion to compel arbitration, Defendants intend to file a dispositive motion on the basis of tribal sovereign immunity.

[4] The Arbitration Provisions within Plaintiffs' four loan agreements are the same or substantively the same. *Compare* Compl. Ex. A, Ex. B, & Ex. D *with* Compl. Ex. C. Given this uniformity, Defendants use the singular "Arbitration Provision" to refer to the four provisions collectively. For ease of reference, Defendants cite the Arbitration Provision in Exhibit A to the Complaint, which is identical to the ones in Exhibits B and D. The provision in Exhibit C is also identical unless otherwise noted.

> **ARBITRATION PROVISION:** PLEASE READ THE FOLLOWING CAREFULLY AS IT IMPACTS YOUR LEGAL RIGHTS.
>
> **WE, AS A WHOLLY OWNED ECONOMIC DEVELOPMENT ARM AND INSTRUMENTALITY, AND LIMITED LIABILITY COMPANY OF THE TRIBE, AND OUR DIRECTORS, OFFICERS, AND EMPLOYEES ACTING WITHIN THE SCOPE OF THEIR AUTHORITY, ARE NOT SUBJECT TO SUIT IN ANY COURT IN ANY JURISDICTION, OR ANY OTHER FORUM, ABSENT A WAIVER OF SOVEREIGN IMMUNITY.** In order to resolve a dispute that we cannot resolve to your satisfaction as set forth above, we consent to a limited waiver of sovereign immunity as expressly authorized by our Tribal Council in the Tribal Credit Code set forth below, which is expressly limited by the Arbitration Provision in this Agreement. This limited waiver is strictly limited to individual arbitration claims set forth below and judicial actions to enforce such individual arbitration awards as strictly limited herein.

Compl. Ex. A, ECF No. 1-1 at 5. "Dispute" is defined broadly:

> The words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision, the validity and scope of this Provision and any claim or attempt to set aside this Arbitration Provision[] (b) all tribal, U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Agreement or Agreements between you and us[] (c) all counterclaims, cross-claims and third-party claims[] (d) all common law claims, based upon contract, tort, fraud, or other intentional acts[] (e) all claims based upon a violation of any tribal, federal or state constitution, statute or regulation[] (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us[] (g) all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, "related third parties"), including claims for money damages and/or equitable or injunctive relief[] (h) all claims asserted on your behalf by another person[] (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims")[] and/or (j) all claims arising from or relating directly or

indirectly to the disclosure by us or related third parties of any non-public personal information about you.

*Id.* [5]

The loan agreement also contains an explicit class action waiver:

**CLASS-ACTION/REPRESENTATIVE WAIVER: YOU ARE WAIVING ANY RIGHT YOU MAY HAVE TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

*Id.* at 6. [6]

---

[5] The definition of "dispute" differs slightly in Exhibit C; differences are in bold and strikethrough:

The words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision **("this Provision")**, the validity and scope of this Provision and any claim or attempt to set aside this ~~Arbitration~~ Provision[] (b) all ~~tribal,~~ U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Agreement or Agreements between you and us[] (c) all counterclaims, cross-claims and third-party claims[] (d) all common law claims, based upon contract, tort, fraud, or other intentional **torts** ~~acts~~[] (e) all claims based upon a violation of any **state or** ~~tribal,~~ federal constitution, statute or regulation[] (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us[] (g) all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, "related third parties"), including claims for money damages and/or equitable or injunctive relief[] (h) all claims asserted on your behalf by another person[] (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims")[] and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

Compl. Ex. C, ECF No. 1-1 at 28.

[6] The class action waiver also differs slightly in Exhibit C; differences are un-bolded and in strikethrough:

**CLASS-ACTION/REPRESENTATIVE WAIVER:** BY AGREEING TO THE TERMS OF THIS ARBITRATION PROVISION, YOU HEREBY AGREE AND ACKNOWLEDGE THAT **YOU ARE WAIVING** YOUR ~~ANY~~ **RIGHT** ~~YOU MAY HAVE~~ **TO PURSUE OR**

4

Plaintiffs signed each loan agreement and accepted all the terms, including the agreement to arbitrate their claims and the agreement to waive their right to participate in class claims. *See Id.* at 8 (Ex. A); *Id.* at 18 (Ex. B); *Id.* at 30 (Ex. C); *Id.* at 40 (Ex. D).

## **LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), courts must stay or dismiss any proceeding and compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3-4; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("§ 3 requires courts to stay litigation of arbitral claims pending arbitration . . . § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement.'"). "To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "Once it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Federal law strongly favors the arbitration of disputes and requires courts to rigorously enforce arbitration agreements. *See, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530,

---

**PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

Compl. Ex. C, ECF No. 1-1 at 28–29.

5

532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *Concepcion*, 563 U.S. at 339; *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000). The Seventh Circuit has recognized that the FAA manifests a liberal policy favoring arbitration agreements. *James v. McDonald's Corp.*, 417 F.3d 672, 676–77 (7th Cir. 2005) ("The FAA embodies a liberal federal policy favoring arbitration agreements . . . any doubts with respect to arbitrability therefore should be resolved in favor of arbitration.") (internal quotation marks omitted)). Indeed, "arbitration is favored and should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 646 (7th Cir. 2008) (internal quotation marks omitted); *see also Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (same).

Arbitration is especially favored in consumer actions. "Indeed, arbitration's advantages often would seem helpful to individuals, say complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995); *see Concepcion*, 563 U.S. at 344 (enforcing arbitration provision in contract between consumer and lender); *see also Randolph*, 531 U.S. at 91–92 (enforcing arbitration clause between consumer and lender).

## **ARGUMENT**

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich*, 466 F.3d at 580. The Court should compel Plaintiffs to pursue their claims in arbitration because the parties formed valid agreements to arbitrate, Plaintiffs' disputes fall within the scope of the agreements, and Plaintiffs have refused to submit their claims to arbitration.

6

The loan agreements also include valid class-action waivers, so Plaintiffs are required to arbitrate their claims on an individual basis. Moreover, even if the Arbitration Provision is not enforced, the class action waiver is independently enforceable. Therefore, if the Defendants' Motion to Compel Arbitration is denied, the Court should nevertheless enter an order stating that Plaintiffs cannot pursue their claims on a class basis in court.

I. **This Court Should Compel Plaintiffs To Bring Their Claims In Arbitration On An Individual Basis.**

The Court should compel Plaintiffs to pursue their claims in arbitration because the parties formed a valid agreement to arbitrate, and Plaintiffs' dispute falls within the scope of the agreement. Plaintiffs are also required to arbitrate their claims on an individual basis pursuant to the valid class action waiver in the loan agreements.

A. **A Valid And Enforceable Arbitration Provision Exists.**

The FAA provides that arbitration agreements must be enforced according to their terms. 9 U.S.C. § 2 (stating a "written provision in any . . . contract . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract"). "[C]ourts look to the state law of contracts to determine whether the parties entered into a valid and enforceable agreement to arbitrate." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 753 (N.D. Ill. 2015) (citing *Koveleskie v. SBC Cap. Mkts., Inc.*, 167 F.3d 361, 367–68 (7th Cir. 1999)).

The existence of a valid and enforceable Arbitration Provision is indisputable.[7] As reflected in each loan agreement, Minto offered to lend Plaintiffs money subject to certain terms, including

---

[7] If Plaintiffs argue that the Arbitration Provision is unenforceable, that issue should be submitted to arbitration under the delegation clause, which requires Plaintiffs to arbitrate "all claims, disputes, or controversies arising from or relating directly or indirectly to . . . the validity and scope of this Provision and any claim or attempt to set [it] aside." Compl. Ex. A, ECF No. 1-1 at 5; *see also Kemph v. Reddam*, No. 13-6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (enforcing substantively same delegation clause and noting "[c]ourts in this district and elsewhere have found that similar language clearly evidences the parties' agreement to delegate gateway issues to the arbitrator.") (citing cases)).

their acceptance of the Arbitration Provision. Plaintiffs agreed to the terms as offered, including the terms in the Arbitration Provision, and signed each loan agreement without modification. *See* ECF No. 1-1 at 8 (Compl. Ex. A); *Id.* at 18 (Ex. B); *Id.* at 30 (Ex. C); *Id.* at 40 (Ex. D). Thus, the loan agreements "plainly establish a meeting of the minds," rendering the Arbitration Provision within each enforceable under Illinois law. *Carter v. CVS Pharmacy, Inc.*, No. 18-1482, 2019 WL 11505578, at *3 (N.D. Ill. Jan. 15, 2019) (enforcing the arbitration provision where there was offer, acceptance, and consideration). The Court should enforce the Arbitration Provision.

### B. Plaintiffs' Claims Fall Within The Scope Of The Arbitration Provision.

Plaintiffs must arbitrate their claims against Defendants because they fall within the scope of the valid Arbitration Provision. That provision is broad and requires arbitration of "all" "U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement . . . and/or any past Agreement or Agreements between you and us"; "all claims based upon a violation of any tribal, federal or state constitution, statute or regulation";[8] and "all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, 'related third parties'), including claims for money damages and/or equitable or injunctive relief." Compl. Ex. A, ECF No. 1-1 at 5; *accord* Compl. Ex. C, ECF No. 1-1 at 28. Based on the interest rates Minto charged Plaintiffs in the loan agreements and Minto's relationships with BEDCO, MDC, and Isaacson, Plaintiffs allege statutory violations of the Illinois Interest Act, the Illinois Predatory Loan Prevention Act, the Illinois Consumer Fraud Act, and RICO. Thus, Plaintiffs' claims are based upon purported violations of federal and state statutes arising from Plaintiffs' loan agreements and Minto's related third parties. Accordingly, Plaintiffs'

---

[8] *Compare with* Compl. Ex. C (requiring arbitration of "all claims based upon a violation of any state or federal constitution, statute or regulation.").

8

dispute falls within the scope of the Arbitration Provision, and so they must arbitrate. *See, e.g.*, *Yaroma v. CashCall, Inc.*, 130 F. Supp. 3d 1055, 1066 (E.D. Ky. 2015) (finding plaintiff's claims under the Fair Debt Collection Practices Act and Fair Credit Reporting Act within the scope of an arbitration provision within a consumer loan was "very broad" and applied to "any and all disputes" related to the loan agreement); *Johnston v. Arrow Fin. Servs., LLC*, No. 06-13, 2006 WL 2710663, at *1 (N.D. Ill. Sept. 15, 2006) (similar).

### C. The Class Action Waiver Bars Class Arbitration.

Not only should the case be compelled to arbitration, but arbitration should be compelled on an individual and non-class basis. Plaintiffs' loan agreement requires Plaintiffs to arbitrate their claims on an individual basis:

> **YOU ARE WAIVING ANY RIGHT YOU MAY HAVE TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

Compl. Ex. A, ECF No. 1-1 at 6; *accord* Compl. Ex. C, ECF No. 1-1 at 28–29.

The Seventh Circuit has consistently enforced class action waivers such as the ones here. In *Livingston v. Associates Finance, Inc.*, for example, the court reversed an order denying a motion to compel arbitration and certifying a class action. "The Arbitration Agreement at issue," the court explained, "explicitly precludes the [plaintiffs] from bringing class claims or pursuing class action arbitration, so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis." 339 F.3d 553, 559 (7th Cir. 2003) (citing *Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995)) (internal quotation marks omitted). Similarly, in *James*, the Seventh Circuit affirmed an order compelling arbitration

9

when the agreement required that all claims "be resolved individually, without resort to any form of class action." 417 F.3d at 681.

These decisions reflect the fundamental principle that arbitration is a matter of contract, and arbitration agreements are to be enforced as written. The Arbitration Provision requires individual, rather than class-wide, arbitration, and it should be enforced according to its terms.

**II.    The Class Action Waiver Should Be Enforced Independently of the Arbitration Provision.**

In the event the Court finds the Arbitration Provision is not enforceable, the Court should still enforce the class action waiver provision independently of the Arbitration Provision and rule that this case cannot proceed in court as a class action.

As an initial matter, courts often enforce class action waivers outside the arbitration context. *Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722, at *6–8 (N.D. Ill. Jan. 11, 2022) (enforcing a class action waiver in an employment agreement that had no arbitration provision, but prohibited participation in "any class action"). And, even where class action waivers are found in arbitration agreements, courts find that the "two contract terms are conceptually distinct." *Fischer v. Instant Checkmate LLC*, 19-4892, 2022 WL 971479, at *4 (N.D. Ill. Mar. 31, 2022) (citing *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020)); *see also Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 179 (2d Cir. 2015). Indeed, a "class action waiver is a promise to forgo a procedural right to pursue class claims," whereas "an agreement to arbitrate is a promise to have a dispute heard in some forum other than a court." *Fischer*, 2022 WL 971479, at *4 (citing *Laver*, 976 F.3d at 846); *see also Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) (enforcing class waiver provision separately from arbitration provision where the "plain meaning of the class-waiver provision bar[red] [plaintiff] from proceeding on a class basis" and explaining that a "reading that confines the prohibition on class litigation to arbitration

10

would render meaningless the phrase 'and class actions'"); *Bock v. Salt Creek Midstream LLC*, No. 19-1163, 2020 WL 5640669, at *8 (D.N.M. Sept. 22, 2020) (enforcing class waiver provision separately from arbitration provision where the class waiver "plainly applies to '*any* dispute' that can "be brought, heard, decided, *or arbitrated*") (emphasis in original). Thus, even if the Arbitration Provision is found to be invalid, the Court may separately enforce the class action waiver. *See Fischer*, 2022 WL 971479, at *4 (finding waiver of plaintiff's right to seek arbitration of its claims did not make class action waiver unenforceable).

First, the Court must "look[] first to the plain language of the contract." *Ross v. First Fin. Corp. Servs., Inc.*, No. 19-CV-1849, 2022 WL 1567128, at *4 (N.D. Ill. May 18, 2022), *aff'd*, 60 F.4th 1046 (7th Cir. 2023). Here, the plain language of the class action waiver unequivocally states that the consumer has agreed to waive the right to pursue a class action in *any* lawsuit; the waiver is not limited to claims in arbitration. The class action waiver says:

> You are waiving any right you may have to pursue or participate in representative claims and you therefore will not be allowed to serve as a representative, as a private attorney general, or in any other representative capacity, and/or participate as a member of a class of claimants, in any lawsuit filed against us and/or related third parties.

Compl. Ex. A, ECF No. 1-1 at 6. The agreement does not define "lawsuit," but that term is defined by Black's Law Dictionary as "[a]ny proceeding by a party or parties against another in a court of law." "SUIT," Black's Law Dictionary (11th ed. 2019)[9]; *Genus Credit Mgmt. Corp. v. Jones*, No. CIV. JFM-05-3028, 2006 WL 905936, at *3 (D. Md. Apr. 6, 2006) (explaining that "lawsuit" "normally means a case before a court" and is separate from arbitration).

This action is unquestionably a lawsuit—i.e., it is a proceeding by Plaintiffs against Defendants in a court of law. Accordingly, the class action waiver prevents Plaintiffs from

---

[9] The entry for "lawsuit" in Black's Law Dictionary directs the reader to the definition of "suit." "LAWSUIT," Black's Law Dictionary (11th ed. 2019).

11

pursuing their claims against Defendants in Court on behalf of a class. In *Bock*, the court reached the same conclusion based on similarly broad language. There, the contract provided that the parties waived the right "for *any dispute* to be brought . . . as a class and/or collective action." *Bock*, 2020 WL 5640669, at *8 (emphasis added). The Court held that the language "any dispute" meant that the class action waiver applied to claims brought in arbitration and in court. *Id.* at *9. Similarly, here, the class action waiver applies to *any lawsuit*, not just to claims in arbitration.

Second, the language immediately following the class action waiver, which addresses arbitration, does not limit the class action waiver to arbitration. That sentence states:

> Therefore, the arbitrator shall not conduct class arbitration; that is, the arbitrator shall not allow you to serve as a representative . . . or in any other representative capacity for others in the arbitration.

Compl. Ex. A, ECF No. 1-1 at 6. Reading the two sentences together, they convey that because the consumer has agreed to waive the right to a class action in any lawsuit, it follows that an arbitrator shall not conduct a class action arbitration.

Third, the contract language preceding the class action waiver in three of the four loan agreements further supports that the class action waiver is a distinct contractual term. *See id.* Exs. A, B, D. That language says, "You acknowledge and agree that by executing *the Agreement* (*including* the terms of the arbitration provision), submitting it to us, and accepting the loan proceeds without cancelling your loan . . . ." *See* Ex. A (emphasis added). The word "Agreement" is defined as the loan agreement, not the arbitration provision. *Id.* The court encountered similar language in *Horton*. There, the contract "provide[d] that 'by entering into this *Agreement*, you are giving up the ability to participate in a class action.'" The court reasoned that "because 'this Agreement' refer[ed] to the entire Subscriber Agreement, the class-waiver provision [was] best read as applying to both litigation and arbitration." 804 F. App'x at 84. Similarly, here, because

the agreement refers to the loan agreement, and not the Arbitration Provision, it lends additional support that the class action waiver is not limited to arbitration.

Therefore, if the Arbitration Provision is found to be unenforceable, then the Court should independently enforce the class action waiver provision and enter an order stating that Plaintiffs cannot pursue their claims on a class basis in court.

## CONCLUSION

Based on the foregoing, Defendants request that the Court enforce the Arbitration Provision, compel Plaintiffs to arbitrate their claims on an individual basis, and stay this action pending the outcome of arbitration. In the alternative, Defendants ask for a ruling that this case cannot proceed in court as a class action.

Dated: September 7, 2023

Respectfully submitted,

By: */s/ Sarah A. Zielinski*

Sarah A. Zielinski (IL 6294156)
Amy Starinieri Gilbert (IL 6317954)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 849-8100
Facsimile: (312) 849-3690
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Counsel for Defendants Minto Development Corporation, Benhti Economic Development Corporation, Douglas William Isaacson, and Minto Financial d/b/a Minto Money*

13