# EXHIBIT A

## **INTERROGATORIES**

Provide information for the period January 1, 2020 to present:

1. Identify all persons who answer calls made to (844) 446-4686 [the contact number in the loan documents], any entity that they work for, who pays for the line, and where the persons or call center are located.

**ANSWER:**

2. With respect to P.O. Box 58112, Minto, AK [address given for Minto Money in loan documents]: state the name and address of all individuals who are authorized to retrieve mail delivered to that Box, whether such individuals are members of the Minto Tribe, and what is done with mail delivered to the P.O. Box once it is received (i.e., is it given or transmitted to other persons, and if so, who are they and where are they located).

**ANSWER:**

3. Identify who answers emails sent to customerservice@mintomoney.com [the email address in the loan documents], and state where such persons are located.

**ANSWER:**

4. Identify the location of the server for www.mintomoney.com and what persons or firms maintain it.

**ANSWER:**

5. Identify the persons who comprise the "underwriting department" referenced in Plaintiffs' "Minto Money" loan agreements (Dkt. 1-1, p. 2) and each such person's location.

**ANSWER:**

6. Identify the "service providers" and "data processors" referred to in the privacy notice contained in Plaintiffs' "Minto Money" loan agreements (Dkt. 1-1, p. 10), and state what services each entity provides and where they are located.

**ANSWER:**

7. Identify the persons who comprise the "customer care team" referenced on Minto Money's website (Dkt. 1-1, p. 89) and each such person's location.

**ANSWER:**

5

8. Identify the name and address of all persons who provide capital used to fund loans made by "Minto Money."

**ANSWER:**

9. State who has received monies paid or collected from borrowers on "Minto Money" loans, or as a result of the lending activities of "Minto Money" and each recipient's address. Identify the accounts and financial institutions into which the monies were deposited, the branch each account is assigned to, and who had signature authority on each such account. If any of the monies were paid to someone or moved to an account other than the one in which they were initially deposited, explain who received the monies, the address of each such recipient, and the reason the monies were distributed to them.

**ANSWER:**

10. State who processes ACH debits for payments made on "Minto Money" loans and each such entity's location.

**ANSWER:**

11. State the name and address of all persons and/or businesses involved in the making, funding, underwriting, servicing, marketing, or collection of "Minto Money" loans and state: (a) the time period in which they were involved, (b) the nature of their involvement, (c) the location of each such businesses' computers and/or computer servers, and (d) whether such person is a member of the Minto Tribe, or in the case of businesses, where the business is incorporated or chartered (an address need only be provided for non-Tribal persons).

**ANSWER:**

12. Explain the nature of the involvement of attorneys located in Wisconsin and Minnesota in the "Minto Money" lending enterprise, including, specifically, that of Shane Thin Elk and Lochen Law Offices.

**ANSWER:**

13. Identify the name and address of all persons who respond to consumer complaints, including those lodged with the Better Business Bureau, other than Douglas William Issacson.

**ANSWER:**

14. Identify who performs underwriting or screens applicants for "Minto Money" loans and where such persons are located.

**ANSWER:**

6

15. Identify the name and address of all persons who evaluate and decide the states in which "Minto Money" makes loans.

**ANSWER:**

16. State the name and address of all persons who collect delinquent "Minto Money" loans.

**ANSWER:**

## DOCUMENT REQUESTS

1. Please produce the Minto Tribe's arbitration law.

**ANSWER:**

2. Please produce the "Tribal Credit Code" referenced in Plaintiffs' "Minto Money" loan agreements (Dkt. 1-1, p. 5).

**ANSWER:**

3. Please produce all documents relating to how a consumer's consent to arbitrate a dispute is obtained, including documents relating to how a consumer enters into a loan agreement and arbitration provision such as that in Attachment I.

**ANSWER:**

4. All contracts and/or agreements that govern the lending program generally described or represented by Attachment I, including, specifically, any contracts or agreements (and amendments to them) relating to the making, underwriting, funding, processing, marketing, advertising, servicing, and/or collection of "Minto Money" loans and any exhibits to any contracts or agreements.

**ANSWER**:

5. All documents describing how "Minto Money" loans are made, originated, underwritten, funded, calculated, approved, processed, serviced, or documented, including documents regarding how the process operates, who is involved and where those individuals or entities are located.

**ANSWER:**

6. All documents identifying the names and/or addresses of the individuals or entities (other than consumers who received "Minto Money" loans) who received money paid or

7

collected from borrowers on "Minto Money" loans, or as a result of the lending activities of "Minto Money."

**ANSWER:**

7.  All documents identifying the sources of the monies used to fund loans made by "Minto Money," and where those entities are located.

**ANSWER:**

8.  All documents relating to the location of the computers and/or computer servers that host and/or run the web sites used by "Minto Money."

**ANSWER:**

9.  All documents relating to the location of the computers and/or computer servers that store customer data for "Minto Money."

**ANSWER:**

# ATTACHMENT I

Electronic communications in connection with your loan transaction and the Loan Agreement are governed by this consent (this "Electronic Consent").

In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. You must have an internet browser that supports the SSL protocol which provides a secure channel to send and receive data over the internet. You will also need either a printer to print disclosures/notices or sufficient hard drive space available to save the information. You must have your own internet service provider.

You agree that any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, the Loan Agreement, this Consent, disclosures, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, and transaction information (collectively, "Communications"), may also be sent to you electronically by either sending it or a link to it to you by e-mail as permitted by applicable law.

You understand that we will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so. You may obtain a copy of any Communication by contacting us at www.mintomoney.com, writing to us at customerservice@mintomoney.com. or by calling us at (844) 446-4686. You will not be charged a fee for such copy. You also can withdraw your consent to ongoing electronic communications in the same manner and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate your Loan Agreement and demand payment of the amount then due by the date of your withdrawal of consent; or by the expiration of any minimum term mandated by applicable law, whichever is later.

You will provide us with your current e-mail address for notices at the address or phone number indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least 5 days before the change.

**PLEASE TAKE A MOMENT TO REVIEW THIS LOAN AGREEMENT CAREFULLY. YOU WILL BE REQUIRED TO ELECTRONICALLY SIGN AND DATE IT. YOU WILL ALSO ELECTRONICALLY SIGN AND DATE THE DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATIONS. BY ELECTRONICALLY SIGNING AND DATING THIS LOAN AGREEMENT, YOU AGREE TO BE BOUND BY ITS TERMS AS PROVIDED HEREIN.**

**LOAN AGREEMENT**

**Loan # ▆▆▆▆▆▆19**

| | |
|---|---|
| **Agreement Date: 9/7/2022** <br> **Effective Date: 9/7/2022** | **Loan #:** ▆▆▆▆▆▆19 <br> **Loan Type: Installment Loan** |
| Minto Financial d/b/a <br> Minto Money <br> PO Box 58112 <br> Minto, AK 99758 <br> Phone (844) 446-4686 | Name: Justin Fahy <br> Address: ▆▆▆▆▆▆ <br> City: ▆▆▆▆▆▆ <br> State: ▆▆▆▆▆▆ <br> Phone: ▆▆▆▆▆▆ <br> Email Address: ▆▆▆▆▆▆ |

In this Agreement("Agreement") the words "we," "us" and "our" mean Minto Financial d/b/a Minto Money, a wholly owned subsidiary of Benhti Economic Development Corporation ("BEDCO"), a wholly owned economic arm of the Native Village of Minto, a federally recognized sovereign American Indian tribe in Alaska ("Tribe"). "You" and "your" means the consumer who signs the Agreement electronically. The term "business day" means any calendar day other than a Saturday, Sunday or a bank or federal holiday, between the hours of 8AM and 5PM Alaska time.

This Agreement is governed by the laws of the Tribe.

In order to complete your transaction with us, you must electronically sign and date this Agreement. We cannot commit to make a loan to you unless your completed application is approved by our underwriting department, located within the exterior boundaries of the Native Village of Minto. Once you sign and submit this Agreement, we will either approve or deny your request for credit from our office located on tribal land. If your information cannot be verified by the Effective Date, your request for credit will not be approved, we will not fund the loan, and you will not incur any finance charge or fees.

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 792.76 % | $5,742.53 | $1,200.00 | $6,942.53 |

**Your Payment Schedule will be:**

**Number of payments:** 20   **Amount of payments:** $347.22   **When payments are due:** Semi-Monthly (The 15th and the 30th of each month)

**Late Charge:** If a payment is not paid within 5 days, you will pay a late fee of $20.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See the terms of the Agreement below for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.

ITEMIZATION OF AMOUNT FINANCED: Amount Financed/Amount provided to you: $1,200.00

**SPECIAL NOTICES:**

•YOUR LOAN IS AN EXPENSIVE FORM OF BORROWING.
•YOU CAN SAVE FINANCE CHARGES BY PAYING OFF YOUR LOAN EARLY EITHER IN PART OR IN FULL.
•YOUR LOAN IS DESIGNED TO ASSIST YOU IN MEETING YOUR SHORT-TERM CASH NEEDS. IT IS NOT A SOLUTION FOR LONGER TERM FINANCIAL PROBLEMS.
•NON-PROFIT CREDIT COUNSELING SERVICES MAY BE AVAILABLE IN YOUR COMMUNITY FOR CONSUMERS EXPERIENCING FINANCIAL PROBLEMS.

**DISBURSEMENT:** If your loan is approved, we will process disbursement of your loan proceeds within a business day of the day your loan is approved. You authorize us to use commercially reasonable efforts to initiate a credit entry by depositing the proceeds of your loan into your Bank Account as described in your Disbursement and Payment Choice Authorization. The date that your loan proceeds are deposited to your Bank Account is the "Disbursement Date." You may not be able to access to the loan proceeds from your Bank Account due to unavoidable delays such as bank holidays, your bank's processing schedule, inadvertent processing errors, "acts of God," or "acts of terror." If you revoke this authorization before we credit the loan proceeds to you, then we will not be able to deposit the loan proceeds into your Bank Account. To find out whether or not a deposit has been made, you may contact customer service at (844)446-4686.

**LATE CHARGE:** You agree to pay a late charge of $20 if a payment is 5 days or more late. If you authorize debits from your Bank Account in your Disbursement and Payment Choice Authorization, you also authorize us to debit your Bank Account for any late charges

**REFUSED INSTRUMENT CHARGE:** If any payment is refused, denied or otherwise dishonored by your bank for any reason, then you agree to pay us a refused instrument charge of $30. If you authorize debits from your Bank Account in your Disbursement and Payment Choice Authorization, you also authorize us to debit your Bank Account for any Refused Instrument Charge. Your refused instrument may also cause your payment to be late which could result in your having to also pay a late charge.

**YOUR PROMISE TO PAY:** You promise to pay us the Amount Financed and finance charges on the payment due dates according to the payment schedule in the Truth in Lending Disclosures above plus all other amounts owed to us under this Agreement. You agree that your finance charges will be calculated at the Annual Percentage Rate in the Truth in Lending Disclosures. All payments will be applied first to finance charges and fees and then to principal. If you would like to arrange a modified payment schedule, you must contact a customer service representative no later than 3 days prior to your next scheduled payment due date to make those payment schedule modifications if you would like them in effect for the next payment due date. You will make your payments on or before every payment due date until you have paid the entire principal, accrued finance charges and any other charges due under this Agreement. If on the final scheduled payment due date, you still owe amounts under this Agreement, you will pay those amounts in full on that date. In your Disbursement and Payment Choice Authorization you will choose to either authorize electronic payments or agree to mail a cashier's check or money order to us.

**WHEN YOU BEGIN PAYING FINANCE CHARGES:** You begin to accrue finance charges for the loan as of the Disbursement Date. In calculating your payments, we have assumed you will make each payment on the day and in the amount due as described in your payment schedule. If any payment is made before the payment due date, the finance charges will be calculated as of the date of your prepayment, and any over payment will be applied to the amounts owed under this Agreement. Time is of the essence, which means that there are no grace periods for when payments must be made.

**PREPAYMENT:** You may prepay all or part of the amount you owe us at any time without penalty. If you prepay in full, you must pay the finance charges accrued on your loan and all other amounts due up to the date of the prepayment. If you wish to prepay your loan, then you must contact a customer service representative at (844) 446-4686 to obtain an accurate payoff amount and either provide us with authorization to effect a debit entry to your Bank Account for the prepayment, or otherwise advise us of your intended method of prepayment. If you prepay all or part of the principal amount due on your loan, your finance charges on the amount prepaid will be calculated as of the date of your prepayment.

**ASSIGNMENT:** This Agreement may not be assigned by you. We may assign or transfer this Agreement and our related rights and obligations without notice to you and your consent is not required if we make such an assignment or transfer.

**VERIFICATION:** You authorize us to verify the information you provided to us in connection with your loan application. You give us consent to obtain information about you from consumer reporting agencies or other sources at any time. We reserve the right to withhold funding of the loan, at any time prior to disbursement, to allow us to verify the information you have provided to us.

**CREDIT REPORTING:** We may report information about your loan to consumer reporting agencies. Late payments, missed payments, or other defaults on your loan may be reflected on your credit report.

**CANCELLATION:** You may cancel your payment obligations under this Agreement, without cost or finance charges, no later than 5:00 p.m. Alaska Time of the second business day immediately following the Disbursement Date ("Cancellation Deadline"). Your right to cancel your loan only applies if your loan either hasn't funded or, if it has, the funds are returned to us as explained below. To cancel your payment obligations on this loan, you must inform us in writing, by or before the Cancellation Deadline, by email to customerservice@mintomoney.com that you want to cancel the future payment obligations on this loan. If we timely receive your written notice of cancellation on or before the Cancellation Deadline but before the loan proceeds have been deposited into your Bank Account, then we will not debit your Bank Account and both your and our obligations under this Agreement will be rescinded. However, if we timely receive your written notice of cancellation on or before the Cancellation Deadline but after the loan proceeds have been deposited into your Bank Account, then you authorize us to effect a debit to your Bank Account you chose in your Payment Choice Authorization for the principal amount of this Agreement. If we receive payment of the principal amount via the debit, then both your and our obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount by debit to your Bank Account, then this Agreement will remain in full force and effect.

**CONSENT TO TEXT MESSAGES AND TELEPHONE CALLS:** You consent to receiving text messages relating to your loan, such as payment information, account information, due dates, delinquencies, and collection efforts, at any phone number you provided to us, from us or anyone acting on our behalf regarding your loan. You also consent to calls and text messages using an automatic telephone dialing system or an artificial or prerecorded voice. There is no fee for text messages but you are responsible for all charges imposed by your communications service provider.

**DEFAULT:** You will be in default under this Agreement if you do not pay us a scheduled payment or any other amounts you owe us when due or your payment is refused, stopped, denied or otherwise dishonored. If you default on your loan, we can choose to declare all principal, finance charges and other amounts that you owe us to be immediately due and payable in full.

**CONSEQUENCES OF DEFAULT:** Upon a default by you under this Agreement, we may, at our option, take any one or more of the following actions:

(a) Automatically and without further action or notice Accelerate Your Loan and require you to immediately pay us all amounts due and owing pursuant to such acceleration;

(b) Agree to permit you to cure a payment default before the loan goes into collection by modifying your Payment Schedule and/or payment amounts (a "Cure Arrangement"). This option is not available for all customers and/or all loan products. If we agree to a Cure Arrangement and you fail to honor its terms, then we will have the right, in our discretion, to terminate the Cure Arrangement and immediately and without notice declare the entire unpaid principal balance and all accrued unpaid finance charges and fees immediately due under your loan ("Accelerate Your Loan");

(c) If you authorized debits from your Bank Account, you agree that we can debit your Bank Account for the full amount that you owe us after providing you with any required notice;

(d) Submit your loan to a collection agency and we may also report the default to a consumer reporting agency database. This may negatively impact your ability to write checks or to receive loans or advances from other companies; or

(e) Pursue all legally available means to collect what you owe us.

By electing any one of these options, we do not waive or release our right to subsequently elect and apply any other options to collect the amounts due and owing to us.

**GOVERNING LAW:** The laws of the Tribe will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute.

**SOVEREIGN IMMUNITY AND PRESERVATION OF SOVEREIGN IMMUNITY:** This Agreement and all related documents are being submitted by you to us as an economic development arm and instrumentality of the Tribe. The Tribe is a federally recognized Indian Tribe and enjoys sovereign immunity. Nothing in this Agreement constitutes a waiver of the Tribe's sovereign immunity and the Tribe's immunity is fully preserved and is not waived either in whole or in part by this Agreement and the Tribe expressly maintains all rights, titles, privileges, and immunities, to which the Tribe is entitled. To protect and preserve the rights of the parties, no person may assume a waiver of sovereign immunity. No waiver of the Tribe's immunity is or can be made except by express written declaration of the Tribe's Tribal Council specifically authorizing a waiver for the matter in question. No such waiver has been made with respect to either your Agreement (except to the extent described in the Arbitration Provision below) or your Disbursement and Payment Choice Authorization. As set forth below, the Tribe expressly preserves its sovereign immunity and you may not assert any claims against the Tribe. As an economic development arm and instrumentality of the Tribe, we are entitled to sovereign immunity to the same extent as the Tribe. We do not have the authority to waive sovereign immunity of any third parties, including, but not limited to, BEDCO or the Tribe. To encourage resolution of consumer complaints, a complaint may be submitted by you or on your behalf as provided in the Dispute Resolution Procedure and Arbitration Provision below and the complaint is limited by the Dispute Resolution Procedure and Arbitration Provision.

**DISPUTE RESOLUTION PROCEDURE AND ARBITRATION PROVISION**

**DISPUTE RESOLUTION PROCEDURE:** As an accommodation to consumers, we have established the following Dispute Resolution Procedure to receive, review, and consider any and all types of complaints made by or on behalf of our consumers. A consumer who, in the course of his or her otherwise lawful and proper use of our business, has concerns about the operation of any part of us or who otherwise believes himself or herself to be aggrieved by some aspect of any part of our operation shall direct his or her concerns in the first instance to our management, in writing at customerservice@mintomoney.com or contact us by mail at P.O. Box 58112, Minto, AK 99758. A consumer's complaint to us shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights. We will investigate the consumer's complaint and provide our initial determination as soon as is reasonably practicable. If the dispute is not resolved to your satisfaction, you and we agree that we shall arbitrate that dispute in accordance with the terms of the below Arbitration Provision.

**ARBITRATION PROVISION:** PLEASE READ THE FOLLOWING CAREFULLY AS IT IMPACTS YOUR LEGAL RIGHTS.

**WE, AS A WHOLLY OWNED ECONOMIC DEVELOPMENT ARM AND INSTRUMENTALITY, AND LIMITED LIABILITY COMPANY OF THE TRIBE, AND OUR DIRECTORS, OFFICERS, AND EMPLOYEES ACTING WITHIN THE SCOPE OF THEIR AUTHORITY, ARE NOT SUBJECT TO SUIT IN ANY COURT IN ANY JURISDICTION, OR ANY OTHER FORUM, ABSENT A WAIVER OF SOVEREIGN IMMUNITY.** In order to resolve a dispute that we cannot resolve to your satisfaction as set forth above, we consent to a limited waiver of sovereign immunity as expressly authorized by our Tribal Council in the Tribal Credit Code set forth below, which is expressly limited by the Arbitration Provision in this Agreement. This limited waiver is strictly limited to individual arbitration claims set forth below and judicial actions to enforce such individual arbitration awards as strictly limited herein.

**Definitions:** The words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision, the validity and scope of this Provision and any claim or attempt to set aside this Arbitration Provision? (b) all tribal, U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Agreement or Agreements between you and us? (c) all counterclaims, cross-claims and third-party claims? (d) all common law claims, based upon contract, tort, fraud, or other intentional acts? (e) all claims based upon a violation of any tribal, federal or state constitution, statute or regulation? (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us? (g) all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, "related third parties"), including claims for money damages and/or equitable or injunctive relief? (h) all claims asserted on your behalf by another person? (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims")? and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

**Notice:** Any party to a dispute, including you, us and/or related third parties, may send the other party or parties written notice by certified mail-return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, the arbitration shall occur before the American Arbitration Association (http://www.adr.org). However, the parties may mutually agree to select a different arbitrator who is an attorney, retired judge, or arbitrator registered and in good

standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration shall respond in writing by certified mail return receipt requested within 20 calendar days. All parties to such dispute will be governed by the rules and procedures of the American Arbitration Association applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of the Agreement,  this Arbitration Provision, including the limitations on the arbitrator below, or our Tribal Code. You may obtain a copy of the rules and procedures by contacting the American Arbitration Association (http://www.adr.org).

Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his, her or its own attorneys' fees and expenses, such as witness and expert witness fees, except as expressly provided in this Arbitration Provision. The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA") and applicable statutes of limitation and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, unless you agree to a different location. In conducting the arbitration proceeding, the arbitrator shall not apply any tribal, federal or state rules of civil procedure or evidence. If the arbitrator renders a decision or an award in your favor resolving the dispute, the arbitrator shall award you reasonable attorneys' fees. If the arbitrator renders a decision or an award in your favor resolving the dispute then you will not be responsible for reimbursing us for your portion of the Arbitration Fees and we will reimburse you for any Arbitration Fees you have previously paid. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees and we are not entitled to an award of attorneys' fees. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having competent jurisdiction.

This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. This Arbitration Provision survives the termination of the relationship between you and us, and continues in full force and effect, even if your obligations have been cancelled by prepayment or paid or discharged through bankruptcy. This Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

**YOU ACKNOWLEDGE AND AGREE THAT BY EXECUTING THE AGREEMENT (INCLUDING THE TERMS OF THIS ARBITRATION PROVISION), SUBMITTING IT TO US, AND ACCEPTING THE LOAN PROCEEDS WITHOUT CANCELLING YOUR LOAN:**

**NO RIGHT TO COURT RESOLUTION: YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**

**WAIVER OF JURY TRIAL: YOU ARE WAIVING ANY RIGHT YOU MAY OTHERWISE HAVE TO A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR AGAINST A RELATED THIRD PARTY.**

**CLASS-ACTION/REPRESENTATIVE WAIVER:  YOU ARE WAIVING ANY RIGHT YOU MAY HAVE TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

**DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION**

| DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION for Minto Financial d/b/a Minto Money | Loan#: ▮▮▮▮▮19 |
|---|---|
| REVIEW VERY CAREFULLY BEFORE EXECUTING THE LOAN AGREEMENT | |

**Your Electronic Credit Disbursement Authorization**

By electronically signing this Disbursement and Payment Choice Authorization below, you voluntarily authorize us to initiate disbursement credits you have authorized if a loan is made to you. This Disbursement and Payment Choice Authorization is a part of and relates to the Agreement. The words "you" and "your" mean the borrower who has electronically signed this Disbursement and Payment Choice Authorization. The words "we," "us" and "our" mean Minto Financial d/b/a Minto Money and our successors and assigns.

**Disbursements to your Bank Account. Unless otherwise agreed, disbursement credits of your loan proceeds will be made to the following bank account (your "Bank Account").**

| Bank Name: | ▮▮▮▮▮ |
|---|---|

| Transit ABA Number: | ▮▮▮▮ |
|---|---|
| Deposit Account Number: | ▮▮▮▮ |

We will make these disbursement credits by Automated Clearing House (ACH) entries or other electronic transfer.

<u>Your Payment Choice Authorization:</u>

| ☑ **Automatic Payment from Your Bank Account.** | ☐ **Payments You will Make Directly.** |
|---|---|
| By electronically signing this Payment Choice Authorization below, you voluntarily authorize us to initiate debits you have authorized if a loan is made to you. You authorize us (and our successors and assigns) to process payment debit entries out of your Bank Account using any commercially reasonable payment methods we choose, such as (but not limited to) ACH entries, remotely created checks or transactions through your debit card accessing your Bank Account.<br><br>You specifically authorize us to use any of these methods to process debit entries on each payment due date from your Bank Account for each scheduled payment detailed in the Truth in Lending Disclosures in the Agreement. You also authorize us to process debit entries for the amount of any late fee and any refused instrument charge as provided in the Agreement. You authorize us to reprocess debit entries for the same amounts if any attempted payment transaction is dishonored.<br><br>If you are in default, you authorize us to process one or more debit entries to pay all principal, finance charges and other amounts due to us as provided in the Agreement.<br><br>We will provide you with at least 10 days' notice prior to processing a preauthorized debit entry that varies from the scheduled amounts, unless the variance results from your request and your new authorization for us to change the amount of your payments going forward.<br><br>**You are not required to authorize this payment choice authorization option in order to be approved for a loan from us.** | You agree to make each of your scheduled payments in your payment schedule by cashier's check or money order that we receive no later than 5:00 pm Alaska Time on or before the payment due date to:<br><br>Minto Financial d/b/a/<br>Minto Money<br>PO Box 58112<br>Minto, AK<br>99758 |

If you have chosen to authorize payment from your Bank Account, you may revoke your authorization to automatic payments at any time by contacting us directly at (844)446-4686 or <u>customerservice@mintomoney.com</u>. Your revocation must be received no less than 3 business days prior to your scheduled payment date. if your scheduled payment has already been submitted to your financial institution at the time of revocation, it may be necessary for us to wait until that payment posts before we can refund you that payment amount. However, when possible, at the time of revocation, we will void any pending payments. You understand that revoking your authorization does not relieve you of the responsibility of timely paying all amounts due in full that are owed by you under the Agreement.

**BY TYPING YOUR NAME AND CLICKING THE "YOU AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION AND AGREEING TO ALL TERMS OF THIS AUTHORIZATION.**

**YOU ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION FOR YOUR RECORDS.**

[YOU AGREE]
NAME: Justin Fahy

| **CONSENT TO RECEIVE ADVERTISING OR TELEMARKETING TEXT MESSAGES AND TELEPHONE CALLS** |
|---|
| By signing this section, you consent to our sending you advertising and telemarketing text messages to the mobile phone number you have provided below. You also consent to our making advertising or telemarketing calls to you at your mobile phone number using automatic telephone dialing system or an artificial or prerecorded voice calls or texts.<br><br>**You are not required to consent to advertising or telemarketing text messages or calls to obtain credit or other services from us.** At any time, you may withdraw your consent to receive advertising or telemarketing text messages or marketing calls to the mobile number that you provided by calling us at (844) 446-4686 or emailing us at <u>customerservice@mintomoney.com</u>. |

You understand that any advertising and telemarketing text messages we send you may be accessed by anyone with access to your text messages and that your mobile phone service provider may charge you fees for advertising and telemarketing text messages that we send you.

Your electronic signature below to this section will be deemed to be your signature acknowledging your consent to receive advertising and telemarketing text messages and telephone calls as described above to your mobile phone at ▮▮▮▮▮▮▮▮▮▮

Your Electronic Signature Below
 **NAME: Justin Fahy**

**QUESTIONS OR CONCERNS:** If you have questions or concerns and need assistance, please telephone us at (844) 446-4686.

<strong><u>SIGNATURE AND ACCEPTANCE OF ALL TERMS AND CONDITIONS</u></strong>

**BY ENTERING YOUR NAME AND CLICKING THE "YOU AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS LOAN AGREEMENT AND AGREEING TO ALL THE TERMS OF THIS AGREEMENT.**

**YOU ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS AGREEMENT AND THE ATTACHED PRIVACY POLICY FOR YOUR RECORDS.**

**[YOU AGREE]**
**DATE: 9/7/2022**
▮▮▮▮▮▮▮▮▮▮
**NAME:  Justin Fahy**

# PRIVACY POLICY

Rev. April 2022

| FACTS | WHAT DOES MINTO FINANCIAL d/b/a MINTO MONEY DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| | |
|---|---|
| **Why?** | **Financial companies choose how they share Your personal information. Consumers have the right to limit some but not all sharing. This notice tells You how We collect, share, and protect Your personal information. Please read this notice carefully to understand what We do.** |
| **What?** | **The types of personal information We collect and share depend on the product or service You have with Us. This information can include:**<br><br>**\* Social Security number and checking account information**<br>**\* Payment history and income**<br>**\* Employment information and wire transfer instructions** |
| **How?** | **All financial companies need to share customers' personal information to run their everyday business. In the section below, We list the reasons financial companies can share their customers' personal information; the reason Minto Financial d/b/a Minto Money chooses to share; and whether You can limit this sharing.** |

| Reasons We can share Your personal information | Does Minto Financial share? | Can You limit this sharing? |
|---|---|---|
| **For Our everyday business purposes** – such as to process Your transactions, maintain Your account(s), respond to court orders and legal investigations, or report to credit bureaus | **YES** | **NO** |
| **For Our marketing purposes** – to offer Our products and services to You | **YES** | **NO** |
| **For joint marketing with other financial companies** | **NO** | **WE DO NOT SHARE** |

| | | |
|---|---|---|
| For Our affiliates' everyday business purposes – information about Your transactions and experiences | YES | NO |
| For Our affiliates' everyday business purposes – information about Your creditworthiness | YES | YES |
| For Our affiliates to market to You | YES | YES |
| For nonaffiliates to market to You | YES | YES |

| | |
|---|---|
| To limit Our sharing | * Call (844) 446-4686 our menu will prompt you through your choices or<br>* Contact us via email at **customerservice@mintomoney.com**<br>**Please note:**<br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we can share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
| Questions? | Call (844) 446-4686 or go to **www.mintomoney.com** |

| Who We are | |
|---|---|
| Who is providing this notice? | Minto Financial d/b/a Minto Money, a wholly owned subsidiary of Benhti Economic Development Corporation ("BEDCO"), a tribally chartered economic arm and instrumentality of a sovereign American Indian tribe in Alaska, is providing this privacy policy. |

| What We do | |
|---|---|
| How does Minto Financial protect my personal information? | To protect Your personal information from unauthorized access and use, We use security measures. These measures include computer safeguards and secured files and buildings. |
| How does Minto Financial collect my personal information? | We collect Your personal information, for example, when You<br><br>* Apply for a loan<br>* Give Us Your income information<br>* Tell Us where to send the money<br>* Provide account information<br>* Provide employment information<br><br>We also collect Your personal information from others, such as credit bureaus, affiliates or other companies. |
| Why can't I limit all sharing? | You have the right to limit only<br>* sharing for affiliates' everyday business purposes – information about Your creditworthiness<br>* affiliates from using Your information to market to You<br>* sharing for nonaffiliates to market to You |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on Your account. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>- *Our affiliates include other business entities of the Native Village of Minto, a sovereign American Indian tribe, and its economic development arm Benhti Economic Development Corporation* |

| | |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Non-affiliates we share with include service providers and data processors.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to You.<br><br>• *Minto Financial does not jointly market.* |