**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUSTIN FAHY,<br>JENNENE STOICESCU,<br>KIMBERLY ADAMS,<br>and WILLIAM NORTHCUTT,<br>on behalf of Plaintiffs and the class<br>members described herein,<br><br>Plaintiffs,<br><br>v.<br><br>MINTO DEVELOPMENT<br>CORPORATION;<br>BENHTI ECONOMIC<br>DEVELOPMENT CORPORATION;<br>DOUGLAS WILLIAM ISAACSON;<br>MINTO FINANCIAL d/b/a Minto Money;<br>and JOHN DOES 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:23-cv-03590<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS', BENHTI ECONOMIC DEVELOPMENT CORPORATION,
MINTO FINANCIAL d/b/a MINTO MONEY,
MINTO DEVELOPMENT CORPORATION, AND DOUGLAS WILLIAM ISAACSON,
<u>AMENDED ANSWER AND AFFIRMATIVE DEFENSES</u>**

NOW COME Defendants Benhti Economic Development Corporation, Minto Financial d/b/a Minto Money, Minto Development Corporation ("MDC") and Douglas William Isaacson ("Isaacson")[1], (collectively, "Defendants") and for their Answer and Affirmative Defenses to Plaintiffs' Class Action Complaint ("Complaint"), state as follows:

1.      Plaintiffs, Justin Fahy, Jennene Stoicescu, Kimberly Adams and William Northcutt, bring this action to secure redress against the making of usurious loans to Plaintiffs

---

[1] Defendants maintain that neither MDC nor Isaacson are named as proper parties in this lawsuit because neither served in the capacities alleged in the Complaint at the time Plaintiffs entered into the loans at issue and they have ceased all involvement with Minto Financial.

(Exhibits A-D) and other Illinois residents by Defendants Minto Development Corporation ("MDC"), Benhti Economic Development Corporation ("BEDCO"), Douglas William Isaacson ("Isaacson"), Minto Financial d/b/a Minto Money ("Minto Money"), and John Does 1-20.

**RESPONSE TO COMPLAINT NO. 1:** Defendants admit that Plaintiffs purport to bring claims against Defendants related to Plaintiffs' loans but deny that they violated any laws, deny that they are liable to Plaintiffs, and deny that Plaintiffs suffered any injury or are entitled to any damages or relief as a result of Defendants' alleged acts or omissions. Defendants also deny that MDC or Isaacson have any relevance to the allegations in Paragraph 1 because neither MDC nor Isaacson served the capacities alleged herein at the time Plaintiffs entered into the loans at issue and have ceased all involvement with Minto Money. The remaining allegations in Paragraph 1 are denied.

2. Plaintiffs seek a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq*., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count IV).

**RESPONSE TO COMPLAINT NO. 2:** Defendants admit that Plaintiffs seek relief pursuant to Illinois Interest Act, 815 ILCS 205/6, Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq*., the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*., and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, but deny that they violated those or any other laws, deny that they are liable to Plaintiffs, and deny that Plaintiffs suffered

any injury or are entitled to any damages or relief as a result of Defendants' alleged acts or omissions. The remaining allegations in Paragraph 2 are denied.

### JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367.

**RESPONSE TO COMPLAINT NO. 3:** Defendants deny that subject matter jurisdiction exists. As set forth in Defendants' Motion to Transfer Venue and Motion to Compel Arbitration filed contemporaneously herewith, Defendants submit that this action should be transferred to the District of Alaska and/or compelled to arbitration on an individual basis.[2] Defendants also deny that subject matter exists on the basis that both Minto Money and BEDCO are organized under the laws of the Native Village of Minto ("Minto Tribe") and thus are immune from suit in federal court under the doctrine of tribal sovereign immunity. Defendants reserve the right to file a dispositive motion on the basis of Tribal sovereign immunity. The remaining allegations in Paragraph 3 are denied.

4.      This Court also has jurisdiction original jurisdiction over this lawsuit under 28 U.S.C. § 1332(d) because Plaintiffs and Defendants are citizens of different states; there are more than 100 members of the classes (as defined herein); and the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest and costs.

**RESPONSE TO COMPLAINT NO. 4:** The allegations in Paragraph 4 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

---

[2] Defendants filed this Answer and Affirmative Defenses concurrently with their Motion to Transfer Venue and Motion to Compel Arbitration to satisfy the requirements of Rule 12 and the responsive pleading deadline.

5.      This Court has personal jurisdiction over each Defendant because they:

a.      Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

**RESPONSE TO COMPLAINT NO. 5a:** The allegations in Paragraph 5a constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

b.      Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group*, *LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

**RESPONSE TO COMPLAINT NO. 5b:** The allegations in Paragraph 5b constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

6.      Venue is proper because acts to obtain and collect the loans impacted Plaintiffs in the Northern District of Illinois.

**RESPONSE TO COMPLAINT NO. 6:** The allegations in Paragraph 6 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

7.      Article III of the Constitution of the United States is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

**RESPONSE TO COMPLAINT NO. 7:** The allegations in Paragraph 7 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

## PARTIES

### Plaintiffs

8.      Plaintiff Justin Fahy is a natural person residing in Wheaton, Illinois.

**RESPONSE TO COMPLAINT NO. 8:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 8 concerning Plaintiff Justin Fahy. Accordingly, they are denied.

9.      Plaintiff Jennene Stoicescu is a natural person residing in Arlington Heights, Illinois.

5

**RESPONSE TO COMPLAINT NO. 9:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 9 concerning Plaintiff Jennene Stoicescu. Accordingly, they are denied.

10.     Plaintiff Kimberly Adams is a natural person residing in Chicago, Illinois.

**RESPONSE TO COMPLAINT NO. 10:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 10 concerning Plaintiff Kimberly Adams. Accordingly, they are denied.

11.     Plaintiff William Northcutt is a natural person residing Bloomington, Illinois.

**RESPONSE TO COMPLAINT NO. 11:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 11 concerning Plaintiff William Northcutt. Accordingly, they are denied.

<u>**Defendants**</u>

<u>**BEDCO**</u>

12.     Defendant BEDCO is an economic development corporation purportedly organized under the laws of the Native Village of Minto, and uses the address of 205 Lakeview Dr., Suite 7, Minto, AK 99758.

**RESPONSE TO COMPLAINT NO. 12:** Admit.

<u>**MDC**</u>

13.     Defendant MDC is an Alaska corporation with a registered mailing address of 615 Bidwill Ave., Suite 303, Fairbanks, AK 99701. MDC's Alaska registered agent is Roxanne Frank, 938 Dennis Rd., North Pole, AK 99705.

**RESPONSE TO COMPLAINT NO. 13:** Admit. Further responding, Defendants state that MDC did not serve in the capacities alleged herein at the time Plaintiffs entered into the loans at

issue and have ceased all involvement with Minto Money. Therefore, MDC is improperly named in this action.

14.     MDC claims to be the owner of online payday lending website Minto Money, which operates from www.mintomoney.com.

**RESPONSE TO COMPLAINT NO. 14:** Deny.

15.     The Minto Money website is used to make loans to consumers, including consumers in Illinois, at annual percentage rates in excess of 500%.

**RESPONSE TO COMPLAINT NO. 15:** Defendants admit that www.mintomoney.com is used to make loans to consumers at lawful interest rates. The remaining allegations of Paragraph 15 are denied.

### Isaacson

16.     Defendant Douglas William Isaacson ("Isaacson") is the Chief Executive Officer of MDC and maintains an office at 615 Bidwill Ave., Suite 303, Fairbanks, AK 99701. He may be found at 1003 Shirley Turnaround, North Pole, AK 99705.

**RESPONSE TO COMPLAINT NO. 16:** Admit. Further responding, Defendants state that Isaacson did not serve in the capacities alleged herein at the time Plaintiffs entered into the loans at issue and has ceased all involvement with Minto Money.

17.     Isaacson was born in 1957 in Seattle, Washington, and is not a member of the Minto Tribe.

**RESPONSE TO COMPLAINT NO. 17:** Admit. Further responding, Defendants state that Isaacson did not serve in the capacities alleged herein at the time Plaintiffs entered into the loans at issue and has ceased all involvement with Minto Money.

18.     Isaacson currently lives in North Pole, Alaska, about twelve miles south of Fairbanks. Isaacson formerly served as mayor of North Pole.

7

**RESPONSE TO COMPLAINT NO. 18:** Admit.

19.     Isaacson is a past president of Credit Services, Inc., which was an affiliate of Trans Union LLC ("Trans Union").

**RESPONSE TO COMPLAINT NO. 19:** Deny. To the extent this Paragraph purports to summarize Exhibit E to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 19 are denied.

20.     According to Isaacson's online resume on LinkedIn, his job as CEO entails overseeing engagement in "innovative growth sectors" which include "lending." (Exhibit E)

**RESPONSE TO COMPLAINT NO. 20:** To the extent this Paragraph purports to summarize Exhibit E to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 20 are denied.

21.     Defendants BEDCO, MDC and Isaacson claim that "Minto Financial d/b/a Minto Money" is "a wholly owned subsidiary of Benhti Economic Development Corporation ('BEDCO')" and a legal entity existing under the laws of the Native Village of Minto. Plaintiff therefore names it as a Defendant.

**RESPONSE TO COMPLAINT NO. 21:** Defendants admit that Minto Money is a wholly owned subsidiary of BEDCO, and that both entities exist under the laws of the Native Village of Minto. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 21 and therefore deny the same.

### John Does 1-20

22.     Defendants John Does 1-20 are other natural and artificial persons involved in the lending activities described herein.

**RESPONSE TO COMPLAINT NO. 22:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 22.

8

## OPERATION OF MINTO MONEY

23.     The primary beneficiary of the loans made through the Minto Money website is Isaacson.

**RESPONSE TO COMPLAINT NO. 23:** Deny.

24.     Isaacson, via one or more entities controlled by him, acts as an agent or "authorized service provider" for Minto Money and obtains credit reports regarding consumers, purportedly for the exclusive end-use by Minto Money. Isaacson then contracts with outside, non-tribal members who perform underwriting analytics, customer service, collection duties, and all other related business functions.

**RESPONSE TO COMPLAINT NO. 24:** Deny.

25.     BEDCO, the purported parent company of MDC, is also controlled by Isaacson. Isaacson claims on his LinkedIn profile to be the CEO of MDC.

**RESPONSE TO COMPLAINT NO. 25:** Deny.

26.     Domain Name Registration records show that BEDCO's only website, www.bedco.us, is registered to Isaacson. (Exhibit F).

**RESPONSE TO COMPLAINT NO. 26:** To the extent this Paragraph purports to summarize Exhibit F to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 26 are denied.

27.     When aggrieved consumers complain about Minto Money to organizations such as the Better Business Bureau ("BBB"), Isaacson responds personally to the complaints, identifying himself as the "General Manager" of Minto Financial. (Exhibit G).

**RESPONSE TO COMPLAINT NO. 27:** To the extent this Paragraph purports to summarize Exhibit G to the Complaint, this document speaks for itself, and any characterization is expressly denied. Responding further, Isaacson was terminated from all service related to Minto Money

prior to Plaintiffs taking out the loans at issue and has ceased all involvement with Minto Money. The remaining allegations in Paragraph 27 are denied.

28.     The Minto Tribe receives a 2% "fee" or "commission" on loan revenues.

**RESPONSE TO COMPLAINT NO. 28:** Deny.

29.     The website www.mintomoney.com is currently held via a proxy (Exhibit H).

**RESPONSE TO COMPLAINT NO. 29:** To the extent this Paragraph purports to summarize Exhibit H to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 29 are denied.

30.     The servers used to host www.mintomoney.com are nowhere near Minto, Alaska (Exhibit I).

**RESPONSE TO COMPLAINT NO. 30:** To the extent this Paragraph purports to summarize Exhibit I to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 30 are denied.

## HOW MINTO MONEY UNDERWRITING IS PERFORMED

31.     Defendants obtain data on consumers from credit bureau reports ("CBRs") provided by consumer reporting agencies ("CRAs").

**RESPONSE TO COMPLAINT NO. 31:** Defendants admit that Minto Money obtains data on consumers from CBRs provided by CRAs. The remaining allegations in Paragraph 31 are denied.

32.     Once obtained, data in the CBRs is analyzed by software produced by outside, non-tribal vendors. The vendors' sophisticated algorithms crunch the CRAs data and assign a proprietary risk score to the applicant.

**RESPONSE TO COMPLAINT NO. 32:** Defendants admit that third-party vendors assist in the loan process. Defendants deny the remaining allegations in Paragraph 32.

33.     Isaacson and his non-tribal investors unilaterally determine the minimum qualifying score for a loan approval, the interest rate, repayment terms, and all other meaningful aspects of the loan.

**RESPONSE TO COMPLAINT NO. 33:** Deny.

34.     The Minto Tribe has no say in these matters.

**RESPONSE TO COMPLAINT NO. 34:** Deny.

35.     If a consumer is approved and elects to take out a loan, then completed loan documents and details are transmitted to a Minto Tribe representative who may be physically located in Minto. The representative then electronically "reviews" the documents and provides "final approval" to the loan while, supposedly, on the Minto Tribe's soil.

**RESPONSE TO COMPLAINT NO. 35:** Defendants admit that a Minto Tribe representative who is physically located in Minto, Alaska, reviews loan documents and details and, as warranted, provides final approval to the loan. The remaining allegations in Paragraph 35 are denied.

36.     After the pro forma review by the Minto Tribe, the loan is funded with money under the express and direct control of Isaacson and his non-tribal investors. The Minto Tribe itself has no access to the bank accounts containing the working capital used to fund Minto Money loans. Isaacson then pays roughly 2% of the loan revenues to MDC, which, conveniently, he also controls. While MDC then uses these funds for tribal projects and provides assistance to tribal members, 98% of revenues are kept by Isaacson and his investors.

**RESPONSE TO COMPLAINT NO. 36:** Deny.

37.     However, because of the rubber-stamp approval occurring in Minto, Isaacson, BEDCO, MDC and the Minto Tribe claim the Minto Money loans are made on the Minto Tribe reservation and subject exclusively to Minto tribal law.

11

**RESPONSE TO COMPLAINT NO. 37:** Defendants admit that the Minto Money loans are reviewed and approved in accordance with and subject exclusively to Minto Tribal law. Any characterization of Minto Money's loan-approval process as "rubber-stamp" is expressly denied. The remaining allegations in Paragraph 37 are denied.

38.     The purported address of Minto Money, is 205 Lakeview Dr., Ste 7, Minto, AK 99758. It also uses PO Box 58112, Minto, AK 99758.

**RESPONSE TO COMPLAINT NO. 38:** Admit.

39.     The Lakeview Drive address is a building on tribal lands, albeit a building with no individual suites or suite numbers.

**RESPONSE TO COMPLAINT NO. 39:** Defendants admit that the Lakeview Drive address is a building on Tribal lands, but deny that there are no individual suites or suite numbers.

40.     The address is a building used for school and senior lunch programs, community meetings, and village council operations. The idea that any company relying on e-commerce to facilitate large numbers of transactions is operating at 205 Lakeview Drive in Minto is dubious, at best, since the area lacks any high-speed internet service providers. DSL service is available, albeit at speeds of only 2 megabits per second.

**RESPONSE TO COMPLAINT NO. 40:** Defendants admit that Minto Money's offices are in a multiuse building. The remaining allegations in Paragraph 40 are denied.

41.     Isaacson, BEDCO, and MDC, doing business as Minto Money, frequently lend money to consumers in Illinois, transfer money to the accounts of Illinois consumers via banks located in Illinois, and then electronically debit those same Illinois accounts.

**RESPONSE TO COMPLAINT NO. 41:** Defendants admit that Minto Money has lent money to consumers in Illinois, transferred money to the accounts of Illinois consumers via banks

located in Illinois, and electronically debited those same Illinois accounts. The remaining allegations in Paragraph 41 are denied.

42. At all times relevant, Isaacson, BEDCO, and MDC, doing business as Minto Money, operated an interactive website that was frequently accessed by consumers in Illinois relating to their high interest loans.

**RESPONSE TO COMPLAINT NO. 42:** Defendants admit that Minto Money operated a lending website that Illinois consumers accessed. The allegations as to BEDCO, MDC, and Isaacson are denied. The remaining allegations in Paragraph 42 are denied.

43. The website stated that loans would not be made to persons in certain states. Illinois was not one of those states.

**RESPONSE TO COMPLAINT NO. 43:** Defendants lack information sufficient to admit or deny the allegations in Paragraph 43, and therefore deny the same.

## FACTS RELATING TO PLAINTIFF FAHY

44. On September 7, 2022, Plaintiff Fahy obtained a $1200 loan from "Minto Money" at an annual percentage rate of 792.76%. (Exhibit A).

**RESPONSE TO COMPLAINT NO. 44:** To the extent this Paragraph purports to summarize Exhibit A to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 44 are denied.

45. Plaintiff made payments on the loan, including interest.

**RESPONSE TO COMPLAINT NO. 45:** Admit.

46. The loan was made via the Internet to Plaintiff while Plaintiff was located in Illinois, where Plaintiff resided.

**RESPONSE TO COMPLAINT NO. 46:** Defendants admit that the loan to Plaintiff Fahy was made via the internet. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 46, and therefore deny the same.

47.    The loan was obtained for personal purposes and not for business purposes.

**RESPONSE TO COMPLAINT NO. 47:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 47, and therefore deny the same.

## FACTS RELATING TO PLAINTIFF STOICESCU

48.    On January 15-17, 2023, Plaintiff Stoicescu obtained a $2730 loan from "Minto Money" at an annual percentage rate of 466.66%. (Exhibit B).

**RESPONSE TO COMPLAINT NO. 48:** To the extent this Paragraph purports to summarize Exhibit B to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 48 are denied.

49.    Plaintiff made payments on the loan, including interest.

**RESPONSE TO COMPLAINT NO. 49:** Admit.

50.    The loan was made via the Internet to Plaintiff while Plaintiff was located in Illinois, where Plaintiff resided.

**RESPONSE TO COMPLAINT NO. 50:** Defendants admit that the loan to Plaintiff Stoicescu was made over the internet. Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 50, and therefore deny the same.

51.    The loan was obtained for personal purposes and not for business purposes.

**RESPONSE TO COMPLAINT NO. 51:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 51, and therefore deny the same.

## FACTS RELATING TO PLAINTIFF ADAMS

52.     On April 6, 2022, Plaintiff Adams obtained a $2,100 loan from "Minto Money" at an annual percentage rate of 472.45%. (Exhibit C).

**RESPONSE TO COMPLAINT NO. 52:** To the extent this Paragraph purports to summarize Exhibit C to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 52 are denied.

53.     Plaintiff made payments on the loan, including interest.

**RESPONSE TO COMPLAINT NO. 53:** Admit.

54.     The loan was made via the Internet to Plaintiff while Plaintiff was located in Illinois, where Plaintiff resided.

**RESPONSE TO COMPLAINT NO. 54:** Defendants admit that the loan to Plaintiff Adams was made via the internet. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 54, and therefore deny the same.

55.     The loan was obtained for personal purposes and not for business purposes.

**RESPONSE TO COMPLAINT NO. 55:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 55, and therefore deny the same.

### FACTS RELATING TO PLAINTIFF NORTHCUTT

56.     On or about August 18, 2022, Plaintiff Northcutt obtained a $300 loan from "Minto Money." While Mr. Northcutt does not have a copy of the agreement, on information and belief, the annual percentage rate exceeded 500%. Minto Money subsequently contacted Mr. Northcutt and offered to provide an additional $400. To that end, on October 3, 2022, Minto Money refinanced Plaintiff Northcutt's loan, such that the principle balance owed was $593.88 loan with an annual percentage rate of 521.39%. (Exhibit D).

**RESPONSE TO COMPLAINT NO. 56:** To the extent this Paragraph purports to summarize Exhibit D to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 56 are denied.

57.     Plaintiff made payments on the loan, including interest. The loan is still outstanding.

**RESPONSE TO COMPLAINT NO. 57:** Admit.

58.     The loan was made via the Internet to Plaintiff while Plaintiff was located in Illinois, where Plaintiff resided.

**RESPONSE TO COMPLAINT NO. 58:** Defendants admit that the loan to Plaintiff Northcutt was made via the internet. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 58, and therefore deny the same.

59.     The loan was obtained for personal purposes and not for business purposes.

**RESPONSE TO COMPLAINT NO. 59:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 59, and therefore deny the same.

**FACTS – GENERAL**

60.     Typical "Minto Money" loans are made at an annual percentage rate exceeding 700%. (Exhibits J-K).

**RESPONSE TO COMPLAINT NO. 60:** To the extent this Paragraph purports to summarize Exhibits J and K to the Complaint, those documents speak for themselves, and any characterization is expressly denied. The remaining allegations in Paragraph 60 are denied.


61.     None of the Defendants has ever had a lending license from the Illinois Department of Financial and Professional Regulation.

16

**RESPONSE TO COMPLAINT NO. 61:** Defendants admit that they did not have a lending license from the Illinois Department of Financial and Professional Regulation and deny that they were required to have such license.

62. None of the Defendants has ever had a state or federal banking or credit union charter.

**RESPONSE TO COMPLAINT NO. 62:** Defendants admit that they did not have a state or federal banking or credit union charter and deny that they were required to have such charters.

63. Without a lending license or bank or credit union charter, Defendants were not entitled to make loans to Illinois residents at more than 9% interest.

**RESPONSE TO COMPLAINT NO. 63:** The allegations in Paragraph 63 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

64. "Minto Money" nevertheless advertises and makes loans to Illinois residents at rates greatly exceeding 9%.

**RESPONSE TO COMPLAINT NO. 64:** Defendants admit that Minto Money has advertised and made loans to Illinois residents at rates exceeding 9% and deny that such loans were unlawful. The remaining allegations in Paragraph 64 are denied.

65. "Minto Money" sought out Illinois residents for such loans.

**RESPONSE TO COMPLAINT NO. 65:** Defendants admit that Minto Money has advertised loans to Illinois residents. The remaining allegations in Paragraph 65 are denied.

66. All loans made by "Minto Money" were made at an annual percentage rate exceeding the 9% which a non-bank lender which does not have a license from the Illinois Department of Financial and Professional Regulation may charge for a loan made to an Illinois resident.

**RESPONSE TO COMPLAINT NO. 66:** Defendants admit that Minto Money made loans at an annual percentage rate exceeding 9% and deny that such loans were unlawful. The remaining allegations in Paragraph 66 constitute conclusions of law to which no response is required. To the extent a response is required, the remaining allegations in Paragraph 66 are denied.

67.     Defendants nevertheless contend and represent on their website that the "Minto Money" loans are valid and enforceable loans ("Minto Money" FAQs, Exhibit L).

**RESPONSE TO COMPLAINT NO. 67:** Defendants admit that the Minto Money loans are valid and enforceable. To the extent this Paragraph otherwise purports to summarize Exhibit L to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 67 are denied.

68.     Defendants also represent on their website (Exhibit M) that "Minto Money" is a "trusted loan lender, abiding by Federal Laws."

**RESPONSE TO COMPLAINT NO. 68:** Defendants admit that Minto Money is a trusted lender, abiding by federal law. To the extent this Paragraph otherwise purports to summarize Exhibit M to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 68 are denied.

69.     Plaintiffs dispute that the loans are valid and enforceable.

**RESPONSE TO COMPLAINT NO. 69:** To the extent this Paragraph purports to summarize the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 69 are denied.

70.     Minto Money makes loans to consumers at interest rates that vastly exceed the maximum legal rate in Illinois.

**RESPONSE TO COMPLAINT NO. 70:** Defendants admit that Minto Money has made loans to consumers in Illinois and deny that such loans are unlawful. The remaining allegations in

Paragraph 70 constitute conclusions of law to which no response is required. To the extent a response is required, the remaining allegations in Paragraph 70 are denied.

71.     The Native Village of Minto (the "Minto Tribe") is a small, isolated, financially strapped American Indian tribe located about 75 miles northwest of Fairbanks, Alaska. It has approximately 223 enrolled members.

**RESPONSE TO COMPLAINT NO. 71:** Defendants deny that Minto, Alaska is 75 miles from Fairbanks, Alaska, but otherwise admit the allegations in Paragraph 71.

72.     Minto Financial and BEDCO operate under a "tribal lending license" signed by Shane Thin Elk ("Thin Elk"), the "commissioner" of the Minto Financial Services Licensing & Regulatory Commission. (Exhibit N).

**RESPONSE TO COMPLAINT NO. 72:** To the extent this Paragraph purports to summarize Exhibit N to the Complaint, this document speaks for itself, and any characterization is expressly denied. The remaining allegations in Paragraph 72 are denied.

73.     On information and belief, the "commission" has issued only one license in its existence: the one granted to operate Minto Money.

**RESPONSE TO COMPLAINT NO. 73:** Deny.

74.     The Minto Financial Services Licensing & Regulatory Commission was created immediately before issuing this single license.

**RESPONSE TO COMPLAINT NO. 74:** Deny.

75.     The "commission" places no restrictions on interest rates charged to consumers, unlike Alaska state law which limits payday loans to $500 and caps fees at $75 for such a loan.

**RESPONSE TO COMPLAINT NO. 75:** Defendants respond that Alaska law pertaining to payday loans speaks for itself and denies any allegations inconsistent therewith. The remaining allegations of Paragraph 75 are denied.

76.     Thin Elk is an attorney who previously lived in Omaha, Nebraska, and formerly practiced law with (a) Fredericks Peebles & Morgan LLP, a law firm with a significant practice devoted to, per its website, "PROTECTING Tribal Sovereignty," and (b) Lochen Law Offices, PLLC, when he conducted seminars on "partnering with non-Tribal entities for commercial enterprises." (Exhibit O) He is now the owner of Thin Elk Law in Green Bay, Wisconsin, where he lives.

**RESPONSE TO COMPLAINT NO. 76:** To the extent this Paragraph purports to summarize Exhibit O to the Complaint, this document speaks for itself, and any characterization is expressly denied. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 76.

77.     On information and belief, Thin Elk is not a member of the Minto Tribe; rather, he is an enrolled member of a different Native American tribe located thousands of miles from Alaska.

**RESPONSE TO COMPLAINT NO. 77:** Admit.

78.     Minto Money is not beneficially owned or operated by the Minto Tribe, but rather, it operates primarily for the benefit of non-tribal members like Isaacson.

**RESPONSE TO COMPLAINT NO. 78:** Deny.

79.     The main function of the Minto Tribe is to appear, on paper at least, to control the lending operation so that Isaacson and his investors may use the specter of sovereign immunity as a way to ward off the consumers they victimize, as well as state and federal regulatory authorities.

**RESPONSE TO COMPLAINT NO. 79:** Deny.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

80.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq*. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

**RESPONSE TO COMPLAINT NO. 80:** The allegations in Paragraph 80 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

81.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

**RESPONSE TO COMPLAINT NO. 81:** The allegations in Paragraph 81 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

82.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

**RESPONSE TO COMPLAINT NO. 82:** The allegations in Paragraph 82 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

83.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer

Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan

shall be null and void and the person who made the loan shall have no right to collect, receive, or

retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h)

Notwithstanding any other provision of this Section, if a lender who does not have a license

issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois

consumer, then the loan shall be null and void and the lender who made the loan shall have no

right to collect, receive, or retain any principal, interest, or charges related to the loan.").

**RESPONSE TO COMPLAINT NO. 83:** The allegations in Paragraph 83 constitute

conclusions of law to which no response is required. To the extent a response is required, the

allegations are denied.

84.    Any loans to Illinois residents at more than 9% that are made by unlicensed

lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815

ILCS 205/6.

**RESPONSE TO COMPLAINT NO. 84:** The allegations in Paragraph 84 constitute

conclusions of law to which no response is required. To the extent a response is required, the

allegations are denied.

85.    Illinois has a criminal usury statute which defines the making of a loan by

unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS

5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own

conduct or that of another for which he is legally accountable," engages in conduct that amounts

to an offense if "the offense is committed either wholly or partly within the State". 720 ILCS

5/1-5.

**RESPONSE TO COMPLAINT NO. 85:** The allegations in Paragraph 85 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

86.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018).

**RESPONSE TO COMPLAINT NO. 86:** The allegations in Paragraph 86 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

87.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC*, No. 12 CC 569; *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

**RESPONSE TO COMPLAINT NO. 87:** The allegations in Paragraph 87 constitute conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

## RENT-A-TRIBE SCHEMES

88.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

**RESPONSE TO COMPLAINT NO. 88:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 88. To the extent the allegations purport to characterize Minto Money's business as a "rent-a-tribe" scheme, the allegations are expressly denied.

89.     Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

**RESPONSE TO COMPLAINT NO. 89:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 89. To the extent the allegations purport to characterize Minto Money's business as a "rent-a-tribe" scheme, the allegations are expressly denied.

90.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

**RESPONSE TO COMPLAINT NO. 90:** Defendants admit that Minto Financial and BEDCO enjoy tribal sovereign immunity. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 90. To the extent the allegations purport to

characterize Minto Money's business as a "rent-a-tribe" scheme, these allegations are expressly denied.

91.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

**RESPONSE TO COMPLAINT NO. 91:** Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 91. To the extent the allegations purport to characterize Minto Money's business as a "rent-a-tribe" scheme, the allegations are expressly denied.

92.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

**RESPONSE TO COMPLAINT NO. 92:** The allegations in Paragraph 92 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

93.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

**RESPONSE TO COMPLAINT NO. 93:** The allegations in Paragraph 93 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

94.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

**RESPONSE TO COMPLAINT NO. 94:** The allegations in Paragraph 94 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

95.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

**RESPONSE TO COMPLAINT NO. 95:** The allegations in Paragraph 95 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

96.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

**RESPONSE TO COMPLAINT NO. 96:** The allegations in Paragraph 96 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

97.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

**RESPONSE TO COMPLAINT NO. 97:** The allegations in Paragraph 97 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

**COUNT I - DECLARATORY AND INJUNCTIVE
RELIEF AGAINST ILLEGAL CONDUCT**

98.     Plaintiffs incorporate paragraphs 1-97.

**RESPONSE TO COMPLAINT NO. 98:** Defendants incorporate paragraphs 1–97 of their Amended Answer to Plaintiffs' Complaint.

99.     This claim is against all Defendants.

**RESPONSE TO COMPLAINT NO. 99:** The allegations in Paragraph 99 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

100.     There is a controversy between Plaintiffs and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs and the class members must repay the loans made to them.

**RESPONSE TO COMPLAINT NO. 100:** The allegations in Paragraph 100 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

101.    Declaratory relief will resolve such controversy.

**RESPONSE TO COMPLAINT NO. 101:** The allegations in Paragraph 101 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

102.    An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

**RESPONSE TO COMPLAINT NO. 102:** The allegations in Paragraph 102 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are expressly denied, including the allegation that Plaintiffs' loans are void.

<u>**CLASS ALLEGATIONS**</u>

103.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

**RESPONSE TO COMPLAINT NO. 103:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 103 are denied.

104.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Minto Money at more than 9% interest (c) which loan has not been paid in full.

**RESPONSE TO COMPLAINT NO. 104:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 104 are denied.

105.    Plaintiffs may alter the class definition to conform to developments in the case and discovery.

**RESPONSE TO COMPLAINT NO. 105:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 105 are denied.

106.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

**RESPONSE TO COMPLAINT NO. 106:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 106 are denied.

107.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

**RESPONSE TO COMPLAINT NO. 107:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint.  The remaining allegations of Paragraph 107 are denied.

108.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

**RESPONSE TO COMPLAINT NO. 108:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint.  The remaining allegations of Paragraph 108 are denied.

109.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE TO COMPLAINT NO. 109:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are

entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 109 are denied.

110. Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

**RESPONSE TO COMPLAINT NO. 110:** Deny.

111. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

**RESPONSE TO COMPLAINT NO. 111:** Deny.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

        i.     Injunctive relief;

**RESPONSE TO COMPLAINT NO. 111.i:** Deny.

        ii.     Declaratory relief;

**RESPONSE TO COMPLAINT NO. 111.ii:** Deny.

        iii.     Restitution of all amounts collected on the loans from members of the class;

**RESPONSE TO COMPLAINT NO. 111.iii:** Deny.

        iv.     Costs of suit; and

**RESPONSE TO COMPLAINT NO. 111.iv:** Deny.

        v.     Such other and further relief as the Court deems proper.

RESPONSE TO COMPLAINT NO. 111.v: Deny.

## COUNT II – ILLINOIS INTEREST ACT

112. Plaintiffs incorporate paragraphs 1-97.

31

**RESPONSE TO COMPLAINT NO. 112:** Defendants incorporate paragraphs 1–97 of their Amended Answer to Plaintiffs' Complaint.

113.    This claim is against all Defendants.

**RESPONSE TO COMPLAINT NO. 113:** The allegations in Paragraph 113 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

114.    Defendants contracted for and collected loans at more than 9% interest from Plaintiffs and the class members, in violation of 815 ILCS 205/4.

**RESPONSE TO COMPLAINT NO. 114:** Deny.

115.    Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

**RESPONSE TO COMPLAINT NO. 115:** Deny.

<u>**CLASS ALLEGATIONS**</u>

116.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

**RESPONSE TO COMPLAINT NO. 116:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint.  The remaining allegations of Paragraph 116 are denied.

117.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Minto Money at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

**RESPONSE TO COMPLAINT NO. 117:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 117 are denied.

118. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

**RESPONSE TO COMPLAINT NO. 118:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 118 are denied.

119. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

**RESPONSE TO COMPLAINT NO. 119:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 119 are denied.

120.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

**RESPONSE TO COMPLAINT NO. 120:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint.  The remaining allegations of Paragraph 120 are denied.

121.  Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

**RESPONSE TO COMPLAINT NO. 121:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint.  The remaining allegations of Paragraph 121 are denied.

122.  Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE TO COMPLAINT NO. 122:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are

34

entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 122 are denied.

123. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

**RESPONSE TO COMPLAINT NO. 123.a:** Deny.

      b.     Members of the class are likely to be unaware of their rights.

**RESPONSE TO COMPLAINT NO. 123.b:** Deny.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.     Damages as provided in 815 ILCS 205/6;

**RESPONSE TO COMPLAINT NO. 123.i:** Deny.

      ii.     Attorney's fees, litigation expenses and costs of suit; and

**RESPONSE TO COMPLAINT NO. 123.ii:** Deny.

      iii.     Such other and further relief as the Court deems proper.

**RESPONSE TO COMPLAINT NO. 123.iii:** Deny.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

124. Plaintiffs incorporate paragraphs 1-97.

**RESPONSE TO COMPLAINT NO. 124:** Defendants incorporate paragraphs 1–97 of their Amended Answer to Plaintiffs' Complaint.

125. This claim is against all Defendants.

**RESPONSE TO COMPLAINT NO. 125:** The allegations in Paragraph 125 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

126. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

**RESPONSE TO COMPLAINT NO. 126:** Deny.

127. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

**RESPONSE TO COMPLAINT NO. 127:** The allegations in Paragraph 127 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## CLASS ALLEGATIONS

128. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

**RESPONSE TO COMPLAINT NO. 128:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 128 are denied.

129. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Minto Money at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

**RESPONSE TO COMPLAINT NO. 129:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are

entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 129 are denied.

130.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

**RESPONSE TO COMPLAINT NO. 130:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 130 are denied.

131.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

**RESPONSE TO COMPLAINT NO. 131:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 131 are denied.

132.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

**RESPONSE TO COMPLAINT NO. 132:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 132 are denied.

133.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

**RESPONSE TO COMPLAINT NO. 133:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 133 are denied.

134.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE TO COMPLAINT NO. 134:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 134 are denied.

135.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

**RESPONSE TO COMPLAINT NO. 135.a:** Deny.

      b.      Members of the class are likely to be unaware of their rights;

**RESPONSE TO COMPLAINT NO. 135.b:** Deny.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.      Compensatory damages;

**RESPONSE TO COMPLAINT NO. 135.i:** Deny.

      ii.      Punitive damages;

**RESPONSE TO COMPLAINT NO. 135.ii:** Deny.

      iii.      Attorney's fees, litigation expenses and costs of suit; and

**RESPONSE TO COMPLAINT NO. 135.iii:** Deny.

      iv.      Such other and further relief as the Court deems proper

**RESPONSE TO COMPLAINT NO. 135.iv:** Deny.

## COUNT IV – RICO

136.    Plaintiffs incorporate paragraphs 1-97.

**RESPONSE TO COMPLAINT NO. 136:** Defendants incorporate paragraphs 1–97 of their Amended Answer to Plaintiffs' Complaint.

137.    This claim is against Isaacson, who is the RICO "person."

**RESPONSE TO COMPLAINT NO. 137:** The allegations in Paragraph 137 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

138.    All loans made in the name of Minto Money to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

**RESPONSE TO COMPLAINT NO. 138:** Deny.

139.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

**RESPONSE TO COMPLAINT NO. 139:** Deny.

140.    Minto Money is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

**RESPONSE TO COMPLAINT NO. 140:** The allegations in Paragraph 140 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

141.    Defendant Isaacson is associated with this enterprise.

**RESPONSE TO COMPLAINT NO. 141:** Deny.

142.    Defendant Isaacson conducted or participated in the conduct of the affairs of Minto Money through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

**RESPONSE TO COMPLAINT NO. 142:** Deny.

143.    Plaintiffs were deprived of money as a result.

**RESPONSE TO COMPLAINT NO. 143:** Deny.

## CLASS ALLEGATIONS

144.    Plaintiffs bring this claim on behalf of a class.

**RESPONSE TO COMPLAINT NO. 144:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 144 are denied.

145. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Minto Money at more than 18% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

**RESPONSE TO COMPLAINT NO. 145:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 145 are denied.

146. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

**RESPONSE TO COMPLAINT NO. 146:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 146 are denied.

147.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

**RESPONSE TO COMPLAINT NO. 147:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 147 are denied.

148.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

     a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

**RESPONSE TO COMPLAINT NO. 148.a:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 148.a are denied.

     b.     Whether Minto Money is an "enterprise."

     **RESPONSE TO COMPLAINT NO. 148.b:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs

42

or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 148.b are denied.

   c.  Whether Defendant Isaacson is associated with Minto Money.

   **RESPONSE TO COMPLAINT NO. 148.c:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 148.c are denied.

   d.  Whether Defendant Isaacson conducted or participated in the affairs of Minto Money through a pattern of making and collecting unlawful loans.

   **RESPONSE TO COMPLAINT NO. 148.d:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 148.d are denied.

   149.  Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

**RESPONSE TO COMPLAINT NO. 149:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are

entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 149 are denied.

150. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE TO COMPLAINT NO. 150:** Defendants admit that Plaintiffs purport to bring an action individually and as a class action on behalf of consumers similarly situated, but deny that Plaintiffs have the right to participate in a class action, deny that the proposed class is suitable for certification pursuant to Fed. R. Civ. P. 23, and deny that Plaintiffs or the putative class are entitled to the damages claimed or relief sought in the Complaint. The remaining allegations of Paragraph 150 are denied.

151. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

**RESPONSE TO COMPLAINT NO. 151.a:** Deny.

    b. Members of the class are likely to be unaware of their rights.

**RESPONSE TO COMPLAINT NO. 151.b:** Deny.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i. Treble damages;

**RESPONSE TO COMPLAINT NO. 151.i:** Deny.

    ii. Attorney's fees, litigation expenses and costs of suit; and

**RESPONSE TO COMPLAINT NO. 151.ii:** Deny.

    iii. Such other or further relief as the Court deems proper.

**RESPONSE TO COMPLAINT NO. 151.iii:** Deny.

## JURY DEMAND

Plaintiffs demand trial by jury.

**RESPONSE TO JURY DEMAND:** Defendants deny that Plaintiffs have a right to try their

claims by jury. Accordingly, the allegations in this paragraph are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim on which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Minto Development Corporation and Douglas William Isaacson were improperly named

in this suit. Neither MDC nor Isaacson served in the capacities alleged in the Complaint at the

time Plaintiffs entered into the loans at issue and they have ceased all involvement with Minto

Financial. Thus, MDC and Isaacson are not proper parties and the court lacks personal

jurisdiction.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by tribal sovereign immunity.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are subject to arbitration, as set forth in Defendants' Motion to Compel

Arbitration (Doc. 25), and thus Plaintiffs should be required to arbitrate their claims on an

individual basis.

### FIFTH AFFIRMATIVE DEFENSE

This action may not properly proceed as a class action because Plaintiffs waived their

right to serve as representatives in a class action and participate in a class action in their contracts

with Minto Money.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the alleged injuries or damages alleged in the Complaint, if any, were in whole or in part caused by conduct, acts, omissions, and/or fault of third parties other than Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

This action may not properly proceed as a class action under Federal Rule of Civil Procedure 23 for, among other reasons, Plaintiffs' claims are not typical of the claims of each putative class member; questions of law and fact allegedly common to the putative class do not predominate over the numerous questions affecting only putative class members; a class action is not superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims and any claims of putative class members; and there are insurmountable difficulties that would be encountered in any attempt to proceed as a class action.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are unable to meet the requirements for declaratory and injunctive relief.

## NINTH AFFIRMATIVE DEFENSE

At all relevant times, Defendants acted in good faith and in a lawful manner, in conformity with all applicable laws and regulations.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

Consistent with Federal Rule of Civil Procedure 15, Defendants reserve the right to amend this Amended Answer to assert any additional affirmative defenses that may be uncovered or made known during this litigation.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor on all of Plaintiffs' causes of action, award fees and costs, including reasonable attorneys' fees, incurred in defending against Plaintiffs' causes of action, and grant all other relief as this Court deems just.

Dated: September 7, 2023

Respectfully submitted,

By: */s/ Sarah A. Zielinski*

Sarah A. Zielinski (IL 6294156)
Amy Starinieri Gilbert (IL 6317954)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 849-8100
Facsimile: (312) 84903690
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Counsel for Defendants Minto Development Corporation, Benhti Economic Development Corporation, Douglas William Isaacson, and Minto Financial d/b/a Minto Money*