**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN FAHY,<br>JENNENE STOICESCU,<br>KIMBERLY ADAMS,<br>and WILLIAM NORTHCUTT,<br>on behalf of Plaintiffs and the class<br>members described herein, | )<br>)<br>)<br>)<br>)<br>) | 1:23cv03590 |
| | )<br>) | Judge Matthew F. Kennelly |
| Plaintiffs, | )<br>) | |
| v. | )<br>)<br>) | |
| MINTO DEVELOPMENT<br>CORPORATION;<br>BENHTI ECONOMIC<br>DEVELOPMENT CORPORATION;<br>DOUGLAS WILLIAM ISAACSON;<br>MINTO FINANCIAL d/b/a Minto Money;<br>and JOHN DOES 1-20, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... ii

I.  INTRODUCTION........................................................................................................ 1

II.  SUMMARY OF THE ARGUMENT............................................................................ 2

III.  LEGAL STANDARD................................................................................................... 3

IV.  THE DELEGATION PROVISION IS UNENFORCABLE......................................... 3

  A.  An Arbitration Agreement that Disclaims State and Federal Law
      is Unenforceable................................................................................................ 3

  B.  The Arbitration Agreement Disclaims State and Federal Law......................... 4

V.  THE ARBITRATION PROVISION IS UNENFORCEABLE AS IT
    PROSPECTIVELY WAIVES PLAINTIFFS' STATE AND FEDERAL
    STATUTORY RIGHTS AND
    REMEDIES.................................................................................................................. 6

  A.  An Arbitration Agreement that Waives Federal Rights is Unenforceable........ 8

  B.  Federal and State Rights and Remedies Cannot be Vindicated Under Tribal Law...... 9

VI.  THE ARBITRATION AGREEMENT IS UNENFORCEABLE AS IT IS
     UNCONSCIONABLE AND VIOLATIVE OF ILLINOIS PUBLIC POLICY............... 11

  A.  The Arbitration Agreement is Substantively Unconscionable.......................... 11

    1.  The Illinois Predatory Loan Prevention Act Applies to a Predatory
        792.76% Loan Made by an Unlicensed, Out of State Lender to
        an Illinois Consumer Over the Internet............................................... 12

    2.  The Predatory Loan Prevention Act Expressly Prevents Consumers
        From Giving Up Their Rights Under the Act........................................ 14

    3.  Other Illinois Lending Statues Relied Upon by Plaintiffs Apply......... 16

    4.  The Underlying Agreement is Unenforceable as it is Violative of Public
        Policy................................................................................................... 16

  B.  The Arbitration Agreement is Procedurally Unconscionable........................... 17

VII.  THE CLASS ACTION WAIVER IS UNENFORCABLE............................................. 18

VIII.  CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*American Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ............................................................................................ 6, 7

*Arthur Andersen L.L.P. v. Carlisle*,
556 U.S. 624 (2009) ................................................................................................. 3

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................. 4

*Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*,
216 Ill. 2d 366, 837 N.E.2d 48 (2005) ................................................................ 17

*Dillon v. BMO Harris Bank, N.A.*,
856 F.3d 330 (4th Cir. 2017) ........................................................................ 6, 7, 8

*First Nat'l Bank v. Malpractice Research*,
179 Ill. 2d 353, 688 N.E.2d 1179 (1997) ............................................................ 15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ................................................................................................. 4

*Fitzgerald v. Wildcat*, 3:20cv00044,
2023 U.S. Dist. LEXIS 145245 (W.D. Va. Aug. 18, 2023) ................................ 7

*Gibbs v. Haynes Invs., LLC*,
967 F.3d 332 (4th Cir. 2020) ...................................................................... 7, 9, 10

*Gibbs v. Sequoia Capital Operations, LLC*,
966 F.3d 286 (4th Cir. 2020) ................................................................................. 7

*Gibbs v. Stinson*,
421 F. Supp. 3d 267 (E.D. Va. 2019) .................................................................. 5

*Gibbs v. Stinson*, 3:18cv676,
2021 U.S. Dist. LEXIS 198680 (E.D. Va. Oct. 14, 2021) ................................ 18

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019) ........................................................................ *passim*

*Harris v. FSST Mgmt. Servs., LLC*, 22cv01063,
2023 U.S. Dist. LEXIS 138601 (N.D. Ill. Aug. 9, 2023) .................... 2, 7, 11, 17

*Hayes v. Delbert Servs. Corp.*,
811 F.3d 666 (4th Cir. 2016) ...................................................................... 7, 9, 11

*Hengle v. Asner*,
433 F. Supp. 3d 825 (E.D. Va. 2020) ............................................................ 7, 11

*Hengle v. Treppa,*
  19 F.4th 324 (4th Cir. 2021) ................................................................................. *passim*

*Jackson v. Payday Fin., LLC,*
  79 F. Supp. 3d 779 (N.D. Ill. 2015) ...................................................................... 16

*Jackson v. Payday Fin., LLC,*
  764 F.3d 765 (7th Cir. 2014) ............................................................... 1, 10, 11, 17

*Kemph v. Reddam,* 13cv6785,
  2015 U.S.Dist. LEXIS 38861, 2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) .................................. 5

*Korean Am. Broad. Co. v. Korean Broad. Sys.,* 09cv6665,
  2012 U.S. Dist. LEXIS 44353 (N.D. Ill. Mar. 29, 2012) ................................... 15

*MacDonald v. CashCall, Inc.,* 16cv2781,
  2017 U.S.Dist. LEXIS 64761, 2017 WL 1536427 (D.N.J. Apr. 28, 2017) ........................................ 5

*MacDonald v. CashCall, Inc.,*
  883 F.3d 220 (3d Cir. 2018) ............................................................................. 3, 9

*Maher & Assocs., Inc. v. Quality Cabinets,*
  267 Ill.App.3d 69, 640 N.E.2d 1000 (2d Dist. 1994) ......................................... 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ........................................................................................ 6, 7

*Montana v. United States,*
  450 U.S. 544 (1981) ...................................................................................... 2, 17

*Morgan v. Sundance, Inc.,*
  142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) ..................................................... 3, 4

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,*
  769 F.3d 105 (2d Cir. 2014) ......................................................................... 1, 17

*Plains Commerce Bank v. Long Family Land & Cattle Co.,*
  554 U.S. 316 (2008) ............................................................................................ 2

*Razor v. Hyundai Motor Am.,*
  854 N.E.2d 607 (2006) ............................................................................... 11, 17

*Rico Indus. v. TLC Grp., Inc.,*
  2018 IL App (1st) 172279, 123 N.E.3d 567 .......................................................... 16

*Rideout v. CashCall, Inc.,* 16cv3817,
  2018 U.S. Dist. LEXIS 37908, 2018 WL 1220565 (D.Nev. March 7, 2018) .................................... 8

*Ryan v. Delbert Servs. Corp.,* 15cv05044,
  2016 U.S.Dist. LEXIS 121246, 2016 WL 4702352 (E.D. Pa. Sept. 8, 2016) ............................... 5, 8

*Smith v. W. Sky Fin., LLC,*
    168 F. Supp. 3d 778 (E.D. Pa. 2016) .................................................................. 4, 5, 7

*Tinder v. Pinkerton Sec.,*
    305 F.3d 728 (7th Cir. 2002) ................................................................................. 3

*Titus v. ZestFinance, Inc.,* 18cv5373,
    2018 WL 5084844 (W.D. Wash. Oct. 18, 2018) ................................................. 8

*Townsend v. Sears, Roebuck & Co.,*
    227 Ill. 2d 147, 879 N.E.2d 893 (2007) ............................................................ 12

*Viking River Cruises, Inc. v. Moriana,*
    142 S.Ct. 1906, 1919 and n. 5, 213 L.Ed.2d 179 (2022) ................................. 6, 7

*Williams v. Martorello,*
    59 F.4th 68 (4th Cir. 2023) .................................................................................. 18

*Williams v. Medley Opportunity Fund II, LP,*
    965 F.3d 229 (3d Cir. 2020) .............................................................................. 7, 9

*Wright-Moore Corp. v. Ricoh Corp.,*
    908 F.2d 128 (7th Cir. 1990) .......................................................................... 14, 15

## Statutes

9 U.S.C. § 2 ..................................................................................................................... 3, 4
18 U.S.C. § 1961, 1962 ........................................................................................................ 8
720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*) ...................................................... 17
815 ILCS 123 ............................................................................................................. *passim*
815 ILCS 205 ...................................................................................................................... 16
815 ILCS 505/10c ......................................................................................................... 14, 15

## Other

*Restatement 2d, Conflict of Laws,* § 6 .............................................................................. 12

Plaintiffs Justin Fahy, Jennene Stoicescu, Kimberly Adams, and William Northcutt ("Plaintiffs") submit the following response in opposition to the Motion to Compel Arbitration (Dkt. 25) filed by Defendants Benhti Economic Development Corporation ("BEDCO"), Minto Financial d/b/a Minto Money ("Minto Financial"), Minto Development Corporation ("MDC"), and Douglas William Isaacson ("Isaacson") (collectively, "Defendants").

## I.    INTRODUCTION

This case concerns predatory and unlawful loans made to Plaintiffs via the website www.mintomoney.com. By way of example, Mr. Fahy's loan charged an interest rate of 792.76%, requiring him to pay $5,742.53 in finance charges on a $1,200 loan. Plaintiffs are among thousands of Illinois residents to whom Defendants have made similar loans. All of the loans at issue are civilly and criminally usurious under Illinois law.

The illegal loans—with interest rates often exceeding 700%—are made in the name of Minto Money, which purports to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the purported "tribal" lending entity is a facade for the illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe. Over the last decade, "[c]ourts across the country have confronted" these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).

The arbitration agreement Defendants seek to enforce requires the application of the law of a Native American tribe—the Native Village of Minto (the "Tribe")—that has no substantive jurisdiction over this matter. A tribe's substantive jurisdiction to enact laws is essentially coterminous with its adjudicative jurisdiction and does not extend to dealings between non-Indians off the reservation. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014); *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014); *Harris v. FSST Mgmt.*

-1-

*Servs., LLC*, 22cv1063, 2023 U.S. Dist. LEXIS 138601 (N.D. Ill. Aug. 9, 2023); see generally, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 329 (2008); *Montana v. United States*, 450 U.S. 544 (1981).

Against this backdrop, Defendants invoke an arbitration provision that applies tribal law—to the express exclusion of all state law—to a transaction where the tribal interest is fraudulent. The construction is flawed, however, as the effect of preventing a party from exercising or vindicating statutory rights and remedies renders unenforceable both the arbitration agreement and delegation provision, both of which Plaintiffs challenge. An arbitration agreement that disclaims state and federal law and prevents the effective vindication of statutory rights and remedies is simply unenforceable.

A few months ago, a court in this district found a similar arbitration provision in a "tribal" loan agreement was invalid because it contained a choice-of-law clause that operated as a prospective waiver of federal and state rights. *See FSST Mgmt. Servs., LLC*, *supra*, 2023 U.S. Dist. LEXIS 138601. Defendants' motion to compel arbitration should be denied.

## II.    SUMMARY OF THE ARGUMENT

First, the delegation provision is unenforceable—and Plaintiffs specifically challenge it—as it places the arbitrator in the impossible position of deciding the validity and enforceability of an arbitration agreement without a body of contract law to draw upon. Accordingly, this Court must determine Plaintiffs' challenge to the provision. Second, the arbitration agreement Defendants seek to enforce is unenforceable as matter of law: it provides for the application of tribal law, to the exclusion of state and federal law, resulting in an impermissible prospective waiver of state and federal statutory rights and remedies. Third, the arbitration agreement is substantively and procedurally unconscionable—among other things, it strips Illinois borrowers of their rights under the Illinois Predatory Loan Prevention Act (the "PLPA"), the Illinois Interest Act, the Illinois Consumer Fraud Act, and the Racketeer Influenced and Corrupt Organizations Act's ("RICO") "unlawful debt" provision which is predicated on Defendants' collection of usurious debts in

violation of state law. The waiver of state and federal rights and remedies violates Illinois public policy and longstanding federal precedent. Fourth, the purported class action waiver is part of the illegal arbitration agreement and is not severable. Defendants' motion should be denied.

## III.    LEGAL STANDARD

Courts review motions to compel arbitration under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Accordingly, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

## IV.    THE DELEGATION PROVISION IS UNENFORCABLE

While parties may delegate gateway questions of arbitrability, a "party may contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement. *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021) (*citing Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291-292 (4th Cir. 2020)); *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018).

"[I]f a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (*quoting Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). Plaintiffs specifically challenge the enforceability of the delegation provision—as well as the arbitration agreement as a whole—because it disclaims state contract law and as a prospective waiver of their rights to vindicate federal and state statutory rights and remedies. The issue of arbitrability is therefore for this Court to decide.

### A.    An Arbitration Agreement that Disclaims State and Federal Law is Unenforceable.

The Supreme Court has made clear that an arbitration clause depends on state law for its validity and that the only effect of the Federal Arbitration Act ("FAA") is to prohibit states from discriminating against arbitration. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022); *see also Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009) (state law is applicable to determine

which contracts are binding under FAA §2 and enforceable under §3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally).

The validity and enforceability of any arbitration clause must be determined "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The "grounds as exist" to determine contract formation, validity and contract defenses are creatures of state law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Accordingly, state contract law must be applied to determine the enforceability of an arbitration clause. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (effect of FAA §2 is to preserve generally applicable state law contract defenses); *Morgan*, 142 S. Ct. at 1713.

## B.     The Arbitration Agreement Disclaims State and Federal Law.

The arbitration agreement Defendants seek to enforce disclaims state and federal law in favor of the law of a tribe that lacks legislative and adjudicative authority to regulate the transaction. The loan agreement's "Governing Law" provision states that tribal law shall exclusively apply to a dispute:

> The laws of the Tribe will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute. Dkt. 1-1, p. 5.

The arbitration provision provides that "[t]he arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above…" *Id.* at 6. In addition, the first page of Plaintiffs' loan agreements state that "[t]his Agreement is governed by the laws of the Tribe." *See, e.g.*, Dkt. 1-1, p. 2. The only reasonable way to interpret the contract is that tribal law applies to the exclusion of federal and state law. *See Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 785 (E.D. Pa. 2016) (categorically refusing to enforce tribal-arbitration clause in case alleging federal and state-law claims).

The arbitration agreement takes the forbidden step of expressly disclaiming state law. The waiver of state law deprives the arbitrator from applying the body of law necessary to determine arbitrability. The Fourth Circuit has affirmed a ruling that a ban on state law in a tribal loan contract rendered both the arbitration clause and the delegation clause unenforceable. *Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021), *cert. dismissed sub nom. Asner v. Hengle*, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022). In *Hengle*, the loan agreement, as here, expressly disclaimed the application of any state law, but stated that the contract was governed by the FAA. The Fourth Circuit held that the ban on state law was fatal. *Id.* at 340. Reference to the FAA did not save the clause because the FAA requires application of state law and the clause prohibited the arbitrator from applying state law. *Id.*

Numerous district courts have reached similar conclusions. *See, e.g., Gibbs v. Stinson*, 421 F. Supp. 3d 267, 291 (E.D. Va. 2019) *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ("Defendants' approach would require an arbitrator to determine whether a valid and enforceable arbitration agreement exists absent the federal or state law tools necessary to do so."); *MacDonald v. CashCall, Inc.*, 16cv2781, 2017 U.S.Dist. LEXIS 64761, 2017 WL 1536427, at *4 (D.N.J. Apr. 28, 2017), *aff'd,* 883 F.3d 220 (3d Cir. 2018) ("[I]f the question of the enforceability of the arbitration clause were sent to an arbitrator, he or she would be categorically prohibited from applying any federal or state law to arrive at an answer."); *Smith*, 168 F. Supp. 3d at 786 ("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding the enforceability of the agreement *without* authority to apply any applicable federal or state law") (emphasis in original); *Ryan v. Delbert Servs. Corp.*, 5:15cv05044, 2016 U.S.Dist. LEXIS 121246, 2016 WL 4702352, at *5 (E.D. Pa. Sept. 8, 2016) ("The wholesale waiver of federal and state law thus dooms both the delegation provision and the arbitration clause, but for different reasons.").

Defendants' reliance on *Kemph v. Reddam*, 13cv6785, 2015 U.S.Dist. LEXIS 38861, 2015 WL 1510797, at *5 (N.D. Ill. Mar. 27, 2015), is unavailing. In *Kemph*, the district court held that the plaintiff's failure to specifically challenge the delegation provision was "sufficient ground for us to grant Defendants' motion." *Id.* at *10. Here, unlike in *Kemph*, Plaintiffs specifically challenge the

delegation clause. "A delegation clause that requires an arbitrator to determine whether a valid and enforceable arbitration agreement exists" without access to federal or state laws "necessary to make that determination," is "unenforceable as a violation of public policy." *Hengle*, 19 F.4th at 339.[1] The delegation provision, like the arbitration clause, is unenforceable.

## V.     THE ARBITRATION PROVISION IS UNENFORCEABLE AS IT PROSPECTIVELY WAIVES PLAINTIFFS' STATE AND FEDERAL STATUTORY RIGHTS AND REMEDIES

An arbitration clause that operates as a prospective waiver of either federal or state statutory rights is invalid. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (federal statutory rights); *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1919 and n. 5, 213 L.Ed.2d 179 (2022) (state statutory rights); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("a court first must examine whether, as a matter of law, the 'choice-of-forum and choice-of-law clauses operate in tandem as a prospective waiver of a party's right to pursue statutory remedies.'"). This is because –

> an arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.

*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. at 1919.

The arbitration agreement Defendants seeks to enforce waives Plaintiffs' statutory rights and remedies under state and federal law. While the FAA has broad reach, "courts will not enforce a prospective waiver" of statutory rights in *any* contract. *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 241 (2013).

---

[1] Defendants do not ask the Court to sever the offending provisions, and for good reason. A tribal arbitration contract's "errant provisions" are not severable as they go to the core of the arbitration agreement—the animating purpose is to "ensure that [the Tribal lender] and its allies could engage in lending and collection practices free from the strictures of any federal law." *Hayes*, 811 F.3d at 666; *see also Dillon*, 856 F.3d at 336; *Rideout v. CashCall, Inc.*, 2:16cv3817, 2018 U.S. Dist. LEXIS 37908, 2018 WL 1220565 (D.Nev. March 8, 2018).

In *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. at 1919 n.5 (2022), the Supreme Court rejected the notion that the prospective waiver doctrine is limited to a provision waiving substantive rights under federal law. The Supreme Court held that there "is not anything unique about federal statutes" for the application of the prospective waiver doctrine. *Id.* "That is why," the Court added, it had previously considered the application of the doctrine in a case concerning "claims arising under state law." *Id.* (*citing Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (enforcing an arbitration agreement because it did not relinquish substantive rights under California law)).

An arbitration agreement is unenforceable, pursuant to the "prospective waiver" doctrine, if it "prospective[ly] waived" a "party's right to pursue statutory remedies." *Mitsubishi Motors*, 473 U.S. at 637 n. 19; *Am. Express Co.*, 570 U.S. at 235 (noting that the prospective waiver/ effective vindication exception "serves to harmonize competing federal policies" by allowing courts to invalidate arbitration agreements that "operate as a waiver of a party's right to pursue statutory remedies.").

The Second, Third, and Fourth Circuit Courts of Appeals, as well as the overwhelming majority of federal district courts, have refused to enforce "arbitration agreements that limit a party's substantive claims to those under tribal law, and hence forbid federal claims from being brought." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020); *see also Hengle v. Treppa*, 19 F.4th 324, 343 (4th Cir. 2021); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 339-45 (4th Cir. 2020) (Agee, Gregory, Motz, JJ. (unanimous)); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 292-94 (4th Cir. 2020) (unanimous); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 at 333-37 (4th Cir. 2017) (Keenan, Duncan, Thacker, JJ. (unanimous)); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 673-76 (4th Cir. 2016) (Wilkinson, Keenan, Harris, JJ., (unanimous)); *Gingras*, 922 F.3d at 126-128 (2d Cir. 2019) (Hall, Leval, Chin, JJ. (unanimous)); *Harris v. FSST Mgmt. Servs., LLC*, 22cv01063, 2023 U.S. Dist. LEXIS 138601 (N.D. Ill. Aug. 9, 2023); *Fitzgerald v. Wildcat*, 3:20cv00044, 2023 U.S. Dist. LEXIS 145245, at *25 (W.D. Va. Aug. 18, 2023); *Smith v. Western Sky Fin., LLC*, 168 F. Supp. 3d 778 (E.D. Pa. 2016); *Hengle v. Asner*, 433 F. Supp. 3d 825 (E.D. Va. 2020); *Titus v. ZestFinance, Inc.*,

18 cv 5373 2018 WL 5084844, at *5 (W.D. Wash. Oct. 18, 2018), *vacated on other grounds by Titus v. BlueChip Fin.*, 786 F. App'x 694 (9th Cir. 2019); *Ryan v. Delbert Servs. Corp.*, 5:15 cv 05044, 2016 U.S.Dist. LEXIS 121246, 2016 WL 4702352, at *4 (E.D. Pa. Sept. 8, 2016); *Rideout v. CashCall, Inc.*, 2:16cv3817, 2018 U.S. Dist. LEXIS 37908, 2018 WL 1220565, *6 (D.Nev. March 7, 2018).

Here, Plaintiffs cannot vindicate their statutory rights and remedies under the PLPA, the Illinois Interest Act, the Illinois Consumer Fraud Act, or RICO as the arbitration agreement disclaims all state and federal law. Plaintiffs' RICO claim (Count IV) is brought under the "unlawful debt" provision of 18 U.S.C. § 1962(c). Plaintiffs allege that:

> All loans made in the name of Minto Money to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%)….The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6). (Dkt. 1, pp. 18-19).

State law is the *sine qua non* of a RICO "unlawful debt" claim under 18 U.S.C. § 1962(c). Because the underlying agreement disclaims all state law, the agreement operates as a prospective waiver of Plaintiffs' federal statutory rights.

### A. An Arbitration Agreement that Waives Statutory Rights is Unenforceable.

The underlying contract cannot be enforced. Doing so would require finding that an arbitration provision requiring Illinois residents to prospectively waive their statutory rights must be enforced. An arbitration agreement that "attempt[s] to apply tribal law to the exclusion of federal and state law" is "unenforceable as a matter of law." *Dillon*, 856 F.3d at 336.

The agreement Defendants seeks to enforce states that Tribal law applies to the exclusion of state and federal law. Defendants do not contend otherwise. Nevertheless, they argue that "[t]he existence of a valid and enforceable Arbitration Provision is indisputable" (Dkt. 26, p. 7) and contend that Plaintiffs' claims must be arbitrated because the arbitration provision's definition of disputes subject to arbitration include "U.S. federal or state law claims." *Id.* at p. 8.

-8-

Defendants are wrong. Because the agreement provides that only Tribal law applies in arbitration, "federal law does not. As a result, the arbitration agreement effects as an impermissible prospective waiver of statutory rights." *Williams*, 965 F.3d at 240.

It does not matter that the arbitration agreement purports to require that federal claims be sent to arbitration because the arbitration agreement prevents effective vindication of those very federal statutory claims. As the Fourth Circuit noted in *Hengle*, 19 F.4th at 343, "such language highlights the arbitration provision's impermissible tactic of compelling arbitration of federal claims only to then nullify those claims by precluding application of federal law"; *see also Hayes*, 811 F.3d at 673-674 ("With one hand, the arbitration agreement offers an alternative dispute resolution procedure in which aggrieved persons may bring their claims, and with the other, it proceeds to take those very claims away.").

"Reading the arbitration provision as encompassing disputes it does not empower the arbitrator to resolve is far from fanciful. As another example, the provision requires that all class claims be sent to arbitration but, a few paragraphs later, explicitly forbids class arbitration." *Hengle*, 19 F.4th at 343. So too here.

The Second and Third Circuits have invalidated arbitration agreements in tribal lending contracts for similar reasons. *See, e.g.*, *Gingras*, 922 F.3d at 117; *MacDonald*, 883 F.3d at 227; *Williams*, 965 F.3d at 244.

### B. Federal and State Rights Cannot be Vindicated Under Tribal Law.

In response to Plaintiffs' request to take discovery (Dkts. 30, 32), Defendants produced a document called the "Tribal Credit Code of the Minto Tribe" (the "Code") (Exhibit A). In addition to the prospective waiver of state and federal law, the arbitration agreement is unenforceable because the Code prospectively waives a borrowers' rights and deprives them of any meaningful opportunity to vindicate their claims. *See Haynes Investments*, 967 F.3d at 343 (finding that the arbitration agreements were unenforceable because the "relevant tribal codes would not permit" a borrower "to effectively vindicate the federal protections and remedies they seek.").

-9-

First, section 2.2.20 of the Code defines "Tribal law" as "all laws of the Minto Tribe, including, but not limited to, its Constitution, laws, rules, regulations, Tribal Council resolutions, and this Code." *Id.* at p. 3. The "Scope" of the Code purportedly extends to "all Financial Services made or offered from the Minto Indian Reservation or otherwise subject to Minto Tribal jurisdiction." *Id.* at p. 3. It further states that "…the Commission shall have exclusive jurisdiction over all violations of this Code." *Id.* at p. 18.

The Code says *nothing* about a consumer's ability to vindicate their federal and state statutory rights. Section 1.2.13 states that "[t]he Tribe would like to ensure that all Tribal activities, including lending activities, follow the spirit of federal regulations and the Tribe seeks to provide sufficient control and protection for both lenders and Borrowers through its own sovereign governmental regulation and oversight[.]" Exhibit A, p. 3. The Code only permits recourse against a "Tribal Enterprise." *Id.* at p. 17

This constitutes an impermissible waiver rendering the arbitration and delegation provisions unenforceable. *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 338-40 (4th Cir. 2020) ("As the borrowers correctly point out, the relevant tribal codes would not permit them to effectively vindicate the federal protections and remedies they seek—that is, the borrowers could not assert a RICO claim seeking treble damages against the entities and individuals who comprise the Haynes Defendants."). The agreement Defendants seeks to enforce is "a sham from stem to stern." *Jackson* 764 F.3d at 779.

The Code requires "Consumer Financial Services Licensees" to "comply with the spirit of the following federal laws…" *Id.* at p. 3. RICO is noticeably absent from the list of statutes to which a lender is supposedly subject. In considering a similar provision, the Fourth Circuit in *Hengle*, 19 F.4th at 343, concluded that a "claimant proceeding under tribal law would be unable to assert a RICO claim against individuals associated with a tribal lender and certainly could not pursue RICO's treble damages remedy." *See also Gingras*, 922 F.3d at 127 (invalidating tribal lending arbitration

-10-

clause which "purports to offer neutral dispute resolution but appears to disallow claims brought under federal and state law").

As in *Hengle, Gingras, and Gibbs*, the Code "precludes consumers from vindicating their federal statutory rights by replacing the remedial and deterrent remedies selected by Congress with the Tribe's own remedial scheme—the exact concern that gave rise to the prospective waiver doctrine." *Hengle v. Asner*, 433 F. Supp. 3d 825, 859 (E.D. Va. 2020). The agreement is unenforceable, and Defendants' motion to compel arbitration should be denied.

## VI. THE ARBITRATION AGREEMENT IS UNENFORCEABLE AS IT IS UNCONSCIONABLE AND VIOLATIVE OF ILLINOIS PUBLIC POLICY

Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds, or a combination of both. *Jackson v. Payday Fin.*, 764 F.3d 765, 777 (7th Cir. 2014) (*citing Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (2006)).

### A.    The Arbitration Agreement is Substantively Unconscionable.

The arbitration agreement is substantively unconscionable under Illinois law because it disclaims all rights under state law. *Harris v. FSST Mgmt. Servs., LLC*, 2023 U.S. Dist. LEXIS 138601, at *19 (finding tribal arbitration agreement substantively unconscionable and thus unenforceable because it waived the protections of the PLPA).

Illinois enacted the Predatory Loan Prevention Act in 2021 to (1) outlaw loans like those made in the name of Minto Money; (2) prohibit any and all devices for making such loans; and (3) prevent Illinois consumers from agreeing to such loans or waiving their rights.

"[P]arties are free within bounds to use a choice of law clause in an arbitration agreement to select which local law will govern the arbitration," the Fourth Circuit explained in *Hayes*, "[b]ut a party may not underhandedly convert a choice of law clause into a choice of no law clause—it may not flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject." *Hayes*, 811 F.3d at 675.

1.   **The Illinois Predatory Loan Prevention Act Applies to a Predatory 792.76% Loan Made by an Unlicensed, Out of State Lender to an Illinois Consumer Over the Internet.**

In determining the enforceability of the arbitration provision, a court should determine whether a statute of the forum state – Illinois – expressly addresses the choice-of-law issue. Under the *Restatement 2d, Conflict of Laws*, § 6(1), "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Comment b to § 6 points out that a statute which provides that it applies to transactions with a specified geographic nexus to the enacting state is such a directive:

> b. Intended range of application of statute. A court will rarely find that a question of choice of law is explicitly covered by statute. That is to say, a court will rarely be directed by statute to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue. On the other hand, the court will constantly be faced with the question whether the issue before it falls within the intended range of application of a particular statute. The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. *If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid.* On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application. *Sometimes a statute's intended range of application will be apparent on its face, as when it expressly applies to all citizens of a state including those who are living abroad.* When the statute is silent as to its range of application, the intentions of the legislature on the subject can sometimes be ascertained by a process of interpretation and construction. Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles. (Emphasis added)

Illinois follows § 6. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 159, 879 N.E.2d 893, 900 (2007).

The PLPA specifies the geographic facts that require its application. Section 15-1-15, 815 ILCS 123/15-1-15, entitled "Applicability," provides:

> (a) Except as otherwise provided in this Section, this Act applies to any person or entity that **offers or makes a loan to a consumer in Illinois.**

> (b) The provisions of this Act apply to any person or entity that seeks to evade its applicability by any device, subterfuge, or pretense whatsoever. . . . (Emphasis added)

Thus, the Illinois General Assembly has specified that offering or making a "loan" to a "consumer" in Illinois makes the Predatory Loan Prevention Act applicable. 815 ILCS 123/15-1-10 contains definitions. "Consumer" is defined to mean "any natural person." "Loan" is defined to include "closed-end and open-end credit, retail installment sales contracts, motor vehicle retail installment sales contracts, and any transaction **conducted via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone**." (Emphasis added) Furthermore, 815 ILCS 123/15-5-15, "No evasion," provides that:

> (a) No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act, including, . . . making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act **through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State.**" (Emphasis added)

Thus, an out of state lender that makes a loan to a natural person in Illinois via the Internet or other remote means, but has no physical location in Illinois, is expressly covered. The PLPA could not be clearer.

The Illinois General Assembly expressly stated that the purpose of the PLPA is to protect Illinois consumers from predatory loans, 815 ILCS 123/15-1-5, and that "[t]his Act shall be construed as a consumer protection law for all purposes. This Act shall be liberally construed to effectuate its purpose." *Id.* To stamp out predatory loans, the PLPA imposes (815 ILCS 123/15-5-5) a 36% rate cap – grossly exceeded by Defendants loans. "Notwithstanding any other provision of law, for loans made or renewed on and after the effective date of this Act, a lender shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a loan. . . ." (815 ILCS 123/15-5-5) "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." (815 ILCS 123/15-5-10).

2.    **The Predatory Loan Prevention Act Expressly Prevents Consumers From Giving Up Their Rights Under the Act.**

Count III of Plaintiffs' complaint seeks damages under the PLPA and the Illinois Consumer Fraud Act. *See* Dkt. 1 at p. 2. The PLPA *expressly* negates the ability of consumers to waive its protections. 815 ILCS 123/15-10-25. The provision titled "No waivers," states that "[t]here shall be no waiver of any provision of this Act." *Id.* In addition, 815 ILCS 123/15-10-5 provides that "(b) Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act." The Consumer Fraud Act also prohibits waiver: "[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable." 815 ILCS 505/10c. The PLPA cannot be avoided by contract.

The PLPA also states that it was intended to protect consumers from their own improvidence. 815 ILCS 123/15-1-5 states that "Illinois families pay over $500,000,000 per year in consumer installment, payday, and title loan fees," "nearly half of Illinois payday loan borrowers earn less than $30,000 per year, and [that] the average annual percentage rate of a payday loan is 297%." The General Assembly responded to this situation by effectively disabling Illinois consumers from entering into agreements to pay more than 36% interest.

As a general proposition, even without reference to the PLPA, choice-of-law clauses by which a protected party agrees that a transaction subject to a statute will be governed by the law of a less protective state constitute waivers of the statutory rights. For example, in *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990), an Indiana franchise statute made it unlawful to require a franchisee "to prospectively assent to a release or waiver which purports to relieve any person from liability to be imposed by this chapter" or to "enter into an agreement limiting litigation brought for breach of the agreement in any manner whatsoever." (cleaned up). The Seventh Circuit held that this barred a choice of law provision specifying the law of a less protective state:

> The public policy, articulated in the nonwaiver provisions of the statute is clear: a franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protections, whether directly through waiver provisions or

-14-

indirectly through choice of law. This public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement. (*Id.*)

The same result was reached under the Illinois franchise statute. *Korean Am. Broad. Co. v. Korean Broad. Sys.*, 09cv6665, 2012 U.S. Dist. LEXIS 44353, at *6-7, (N.D. Ill. Mar. 29, 2012).

This principle is codified in the PLPA. A choice-of-law clause by which an Illinois consumer purports to agree that a loan which is covered by and violates the PLPA shall be governed by the law of a less protective state is on its face:

(1) a prohibited "waiver," 815 ILCS 123/15-10-25,

(2)    a "waiver or modification of the rights, provisions or remedies of this Act," 815 ILCS 505/10c, and

(3)    a "device, subterfuge, or pretense to evade the requirements of this Act, including, . . . making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State." 815 ILCS 123/15-5-15(a).

If a non-Illinois lender that conducts business over the Internet could immunize itself from the PLPA by simply inserting a choice-of-law clause specifying the law of some jurisdiction that does not protect consumers, the PLPA would be a dead letter.

Even without an express statutory prohibition of waiver, Illinois courts held that contractual choice-of-law and forum selection clauses cannot be enforced if the contract containing it was invalid or the clause contravened Illinois' fundamental public policy. *Maher & Assocs., Inc. v. Quality Cabinets,* 267 Ill.App.3d 69, 640 N.E.2d 1000 (2d Dist. 1994). "As a preliminary matter, we reject the defendants' suggestion that we apply Virginia law in determining the validity of the parties' contract [pursuant to a contract clause]. One cannot rely on foreign law to enforce a contract that is illegal in the forum, and Illinois has the stronger interest in the outcome of the controversy." *First Nat'l Bank v. Malpractice Research*, 179 Ill. 2d 353, 358-59, 688 N.E.2d 1179, 1182 (1997). The fact that an Illinois statute declares violative contracts to be void shows that it expresses the fundamental public policy of the State. *Maher*, 267 Ill.App.3d at 76. A statutory prohibition of waiver also shows that it

expresses the fundamental public policy of Illinois. *Rico Indus. v. TLC Grp., Inc.*, 2018 IL App (1st) 172279, ¶ 66, 123 N.E.3d 567, 588.

Here, the PLPA clearly states a fundamental public policy of Illinois when it specifies what contracts it applies to, declares contracts for interest in excess of 36% void, and goes to elaborate length to outlaw any waiver or evasion of its provisions. A waiver of the PLPA is unconscionable.

### 3. Other Illinois Lending Statues Relied Upon by Plaintiffs Apply.

The PLPA also requires compliance with other Illinois laws regulating the loans it regulates. 815 ILCS 123/15-5-5 states that "[n]othing in this Act shall be construed to permit a person or entity to contract for or receive a charge exceeding that permitted by the Interest Act or other law."

In addition, the Interest Act also expressly addresses the permissible rate where a lender in another state contracts with an Illinois borrower. 815 ILCS 205/8 provides:

> Sec. 8. When any written contract, wherever payable, shall be made in this State, or between citizens or corporations of this State, **or a citizen or a corporation of this State and a citizen or corporation of any other State, territory or country** (or shall be secured by mortgage or trust deed on lands in this State), **such contract may bear any rate of interest allowed by law to be taken or contracted for by persons or corporations in this State, or allowed by law on any contract for money due or owing in this State.** (Emphasis added)

Again, the statute expressly provides that a loan made by an out of state lender to an Illinois consumer is subject to Illinois law. It does not require that the lender have any physical presence in Illinois. *Jackson v. Payday Fin., LLC*, 79 F. Supp. 3d 779, 786 (N.D. Ill. 2015).

### 4. The Underlying Agreement is Unenforceable as it is Violative of Public Policy.

The PLPA addresses the subject of interstate transactions and specifies the transactions to which it applies. It expressly applies to Defendants' transaction with Plaintiffs. In short, there is no basis for disregarding controlling Illinois law.

Loans made by an unlicensed lender to an Illinois resident at more than 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6. A contract by an unlicensed lender to make a consumer loan at more than 20% is a felony. 720 ILCS

5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). The interest rate of the underlying loan to Mr. Fahy was 792.76%. *See* Dkt. 1-1 at p. 3. Illinois courts will not aid a litigant who seeks to enforce an illegal contract. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48, 56 (2005). Both the claimed arbitration agreement and delegation provision are contrary to public policy and unconscionable, in that they have the effect of exculpating a lender engaged in criminal usury from effective redress for its felonious conduct.

**B.    The Arbitration Agreement is Procedurally Unconscionable.**

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor*, 854 N.E.2d at 622.

The entire purpose of Defendants' arbitration agreement is to prevent any remedy from being exercised whatsoever by way of evading federal and state law. The agreement is replete with false representations which rise to the level of fraud. For example, there is no basis for the application of tribal law to the underlying transactions. The lending operation is run by non-Native Americans off the reservation. *Otoe-Missouria.*, 769 F.3d at 115.

Native American tribes do not have legislative or judicial jurisdiction with respect to tortious or criminal acts committed by nonmembers against other nonmembers off the reservation. *Jackson*, 764 F.3d at 783; *Montana*, 450 U.S. at 566. Furthermore, such jurisdiction cannot be conferred by consent. *Jackson*, 764 F.3d at 783 ("a nonmember's consent to tribal authority is not sufficient to establish the jurisdiction of a tribal court," and the legislative jurisdiction of a tribe is coextensive with its adjudicatory jurisdiction).

Here, Defendants have not established a colorable claim to tribal jurisdiction. *Harris v. FSST Mgmt. Servs., LLC*, 2023 U.S. Dist. LEXIS 138601, at *21. Defendants' contract disclaims state and federal law, and there is no basis for the application of tribal law, so what law authorizes the arbitration provision? This underscores the fact that the provision simply strings together legal

concepts for the improper purpose of depriving the borrower of all rights. The arbitration

agreement is procedurally unconscionable as it purports to apply tribal law which cannot be applied.

## VII.     THE CLASS ACTION WAIVER IS UNENFORCABLE

Defendants have also invoked a purported class action waiver in their illegal contracts,

suggesting that it has independent force. Defendants misleading state that the "loan agreement

contains an explicit class action waiver." (Dkt. 26, p. 4.). That's not the case. The class action waiver

is not, as Defendants suggest, a standalone provision separate from the arbitration agreement. *See*

Dkt. 1-1 at pp. 5-6. Rather, the waiver is part of, and premised upon the applicability of, the

arbitration agreement. On its face, it cannot be invoked by anyone who is not entitled to compel

arbitration. Since none of the Defendants have the right to compel arbitration, it has no effect here.

The class action waiver is part of the illegal arbitration provision and is not severable. *See Williams v.*

*Martorello*, 59 F.4th 68, 81 (4th Cir. 2023) (finding that the prospective waiver doctrine renders

the class-action waiver unenforceable); *Gingras*, 922 F.3d at 128 ("as the district court recognized,

Plaintiffs' substantive challenges to the loan agreements are based on federal and state consumer

protection laws. The challenge to the arbitration provisions is based on unconscionability, which we

have analyzed above. We find no basis therefore to sever any particular provision of the

arbitration agreement because, given the pervasive, unconscionable effects of the

arbitration agreement interwoven within it, nothing meaningful would be left to enforce."); *Gibbs v.*

*Stinson,* 3:18cv676, 2021 U.S. Dist. LEXIS 198680, at *16 (E.D. Va. Oct. 14, 2021)

(class action waivers in the loan agreements were unenforceable because the waivers clearly

amounted to a substantive waiver of federally protected rights).

## VIII.     CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration should be denied.

Respectfully submitted,

/s/Matthew J. Goldstein
Matthew J. Goldstein

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
     **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
tgoodwin@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew J. Goldstein, certify that on Monday, November 6, 2023, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

*/s/Matthew J. Goldstein*
Matthew J. Goldstein

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
tgoodwin@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com