**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN FAHY, | ) | |
| JENNENE STOICESCU, | ) | |
| KIMBERLY ADAMS, | ) | |
| and WILLIAM NORTHCUTT, | ) | 1:23cv03590 |
| on behalf of Plaintiffs and the class | ) | |
| members described herein, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MINTO DEVELOPMENT | ) | |
| CORPORATION; | ) | |
| BENHTI ECONOMIC | ) | |
| DEVELOPMENT CORPORATION; | ) | |
| DOUGLAS WILLIAM ISAACSON; | ) | |
| MINTO FINANCIAL d/b/a Minto Money; | ) | |
| and JOHN DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO TRANSFER VENUE</u>**

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Plaintiffs Justin Fahy, Jennene Stoicescu, Kimberly Adams, and William Northcutt ("Plaintiffs") submit the following response in opposition to the Motion to Transfer Venue (Dkt. 23) filed by Defendants Benhti Economic Development Corporation ("BEDCO"), Minto Financial d/b/a Minto Money ("Minto Financial"), Minto Development Corporation ("MDC"), and Douglas William Isaacson ("Isaacson") (collectively, "Defendants").

## I.  INTRODUCTION

"This case, and the tribe-payday lending partnership it challenges, is not unique." *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). Indeed, "[c]ourts across the country have confronted" these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Id.* High-interest lenders use supposed "Native American tribal entities" as "the nominal lender in an effort to cloak the payday lenders in the sovereign immunity of Native American tribes, and, in doing so, to preclude enforcement of the interest rate caps in state usury laws." *Williams v. Big Picture Loans, LLC*, 3:17cv461, 2020 U.S. Dist. LEXIS 216792, 2020 WL 6784352, at *2 (E.D. Va., Nov. 18, 2020).

All of these arrangements follow the same basic pattern with minor variations:  a purported tribal lending entity is held out as the lender making loans in violation of state usury law, but contractually relinquishes control over key aspects of the lending business to "investors" and "servicers" and allows the "investors" and "servicers" to conduct the critical operations of the lending business, such as origination, credit approval, servicing and collection. The non-Native American "investors" and "servicers" obtain the vast majority of the revenue from the lending operation – 97% is typical.

A lawyer named Shane Think Elk signed the license purportedly authorizing Minto Money to make loans (Cmplt., Ex. K).  Shane Thin Elk appears to be a partner in a law firm called Lochen Thin Elk Denton (Exhibit A), successor to Lochen Law Offices. The firm appears to have addresses in Minnesota, Wisconsin, and Iowa. (Exhibits A-B) Mr. Thin Elk lists a Wisconsin address. (Exhibit

C) Its activities include "Tribal lending questions." (Exhibit D) Defendants admit that "Thin Elk is not a member of the Minto Tribe…" (Dkt. 33 at p. 17). The law firm put together many of the deals between tribes and non-Native American "investors" and "servicers" on a "turnkey" basis, using standardized documents.

In the present case, Plaintiffs contend that the arrangement between the Tribe and the "investors" and "servicers" followed the same pattern as in other cases, with the "investors" and "servicers" getting all except a trivial amount of the revenue.

Plaintiffs, all residents of Illinois, obtained high interest Internet loans for personal, family or household purposes, and not business purposes, from Minto Money, at rates exceeding the maximum permitted in Illinois.

Defendants have requested that the action be transferred to the District of Alaska, where the Tribe is located. The motion is ill-founded.

## II.    STANDARD OF DECISION

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The moving party bears the burden of establishing that the transferee forum is "clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Venue should be transferred only if there is a clear balance of inconvenience in the transferor district over the transferee district. *Weller v. Calvin Gilmore Prods.*, 95cv1962, 1995 U.S. Dist. LEXIS 8769, at *5 (N.D. Ill. June 19, 1995); *Overton & Sons Tool and Die Co. v. Precision Tool, Die & Machine Co.*, 1:13cv1302, 2014 U.S. Dist. LEXIS 58451, 2014 WL 1669863, at *5 (S.D. Ind. Apr. 28, 2014). Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *GT Performance Group, LLC v. Koyo USA, Corp.*, 4:12cv83, 2013 U.S. Dist. LEXIS 127298, 2013 WL

4787329, at *4 (S.D. Ind. Sept. 6, 2013); *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 986 (S.D. Ind. 2016).

In reviewing convenience and the interests of justice, the court must consider the private interests of the parties and the public interest. *Technical Concepts v. Zurn Industries*, 02cv5150, 2002 U.S. Dist. LEXIS 21020, 2002 WL 31433408 (N.D. Ill. Oct. 31, 2002). Factors for assessing private interests include: (i) plaintiff's choice of forum; (ii) situs of material events; (iii) relative ease and access to sources of proof; (iv) convenience of the parties; and (v) convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp.2d 958, 960 (N.D. Ill. 2000). Public interest factors include (i) the court's familiarity with the applicable law; (ii) the speed at which the case will be resolved, and (iii) the desirability of resolving controversies in their locale. *Von Holdt v. Husky Injecting Molding System Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).

In considering a motion to transfer, the court accepts all well-pleaded allegations in the complaint as true unless controverted by defendants' affidavits. *QSN Indus., Inc. v. Sanderson*, 95cv3356, 1995 U.S. Dist. LEXIS 18446, 1995 WL 743751, at *1 (N.D. Ill. Dec. 13, 1995); *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). For example, assertions as to the location and importance of witnesses must be disregarded unless supported by an affidavit identifying such persons and stating what they have to say. *Twilight Transp. v. General Motors LLC*, 19cv1253, 2019 U.S. Dist. LEXIS 241292, at *6-7 (N.D. Ill. June 26, 2019); *Celotex Asbestos Settlement Trust v. International Ins. Co.*, 98cv8300, 1999 U.S. Dist. LEXIS 6531, at *7-8, 1999 WL 284783 (N.D. Ill. Apr. 22, 1999); *Paul v. Comair, Inc.*, 80cv736, 1982 U.S. Dist. LEXIS 11079 (S.D. Ind. Mar. 2, 1982).

Defendants assert that their motion is based on the allegations of the complaint, but this is inconsistent with both the law and the allegations of the complaint. Legally, "the movant must support the motion with an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and general statement of the substance of their testimony." *Mpower Communs. Corp. v.*

-3-

*Voipled.com, Inc.*, 304 F. Supp. 2d 473, 475 (W.D.N.Y. 2004). "In meeting its burden of showing that a transfer is justified by the convenience of the witnesses, the moving party must, at a minimum set out in an affidavit the names of the key witnesses to be called and the subject matter of their testimony." *Firkus v. Soo Line R.R.*, 96cv3714, 1996 U.S. Dist. LEXIS 14494, at *5 (N.D. Ill. Oct. 2, 1996). A complaint is not required to identify all material witnesses and their location.

Here, the complaint alleges that the actual lending operations were carried out, and continue to be carried out, in locations other than tribal lands by non-tribal persons. (Cmplt., Dkt. 1, ¶¶24, 30, 32-34, 40). And even Defendants admit in their Amended Answer that "third-party vendors assist in the loan process." Dkt. 33, p. 10. Nowhere do they state where such persons and entities are located. They further admit that "Minto Money has lent money to consumers in Illinois, transferred money to the accounts of Illinois consumers via banks located in Illinois, and electronically debited those same Illinois accounts." *Id.* at pp. 12-13. Plaintiffs allege that no member of the Tribe participates in significant lending operations. (Dkt. 1 at ¶24).[1] In contrast, Defendants assert that Isaacson, the Alaska non-tribal defendant, is no longer involved (Dkt. 24 at p. 1) and claim that "Plaintiffs submit no information about the other nontribal members who purportedly benefit from Minto's lending operation." (*Id.* at p. 3).

Defendants provide no affidavits addressing such matters as "the convenience to the witnesses, especially the non-party witnesses, which is one of the most important factors, providing no specifics as to their identities or testimony." *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945-46 (N.D. Ill. 2015). Instead, Defendants make conclusory assertions in their motion that are flatly contrary to the allegations of the complaint. Thus, Defendants assert, citing nothing, that the lending operation is "based" in Alaska, that the loans were "approved and extended" in Alaska, and

---

[1] Defendants also argue that only if this case is transferred will these "potential witnesses" be within the court's subpoena power. Minto, Alaska is over one hundred miles from Fairbanks, Alaska, the seat of the nearest federal district court.

that Alaska is where "all the witnesses reside[.]" (Dkt. 24, p. 2)

Defendants assert, citing nothing, that "all witnesses reside" in Alaska (Dkt. 24, p. 2) and that "relevant witnesses will be located in Alaska" which supposedly include unnamed tribal members. (*Id.* at p. 8).

Similarly, Defendants assert that Minto Money is an "economic development arm and instrumentality of the Tribe." (Dkt. 1-1, p. 25). The complaint alleges that while Minto Money purports to be an entity created and owned by BEDCO, an entity purportedly owned by the Tribe, it is not a tribal enterprise. (*See generally*, Cmplt., Dkt. 1) The profits from the lending activities are received by non-members of the Tribe. (Cmplt., ¶36)

Shane Thin Elk's law firm, which was involved in setting up the lending arrangement and whose partner authorized the actions of Minto Money, appears to be located primarily in Wisconsin and Minnesota. In addition, Defendants know where the relevant documents are located but do not actually represent that such documents are in Alaska. In any event, the documents can be readily transported, especially where, as here, all relevant business operations are conducted electronically. *Powell v. Sparrow Hosp.*, 09cv3239, 2010 U.S. Dist. LEXIS 13665, at *9 (N.D. Ill. Feb. 12, 2010) ("When documents are easily transferable, access to proof is a neutral factor.").

Plaintiffs and each class member, on the other hand, are located in Illinois.

Based on the record, there is no basis for concluding that a transfer of this case would serve the convenience of parties and witnesses. A case where witnesses are "all over the map" is not one for transfer. *Celotex Asbestos Settlement Trust v. International Ins. Co., supra,* 1999 U.S. Dist. LEXIS 6531, at *11.

## III.   THE CHOICE OF LAW AND CHOICE OF VENUE CLAUSE IS ILLEGAL

Defendants insist that the loans at issue are "governed by the laws of the Tribe" (Dkt 1-1 p. 2) "without regard to the laws of any state or other jurisdiction" (*Id.* at p. 5). This is false.

Federal choice-of-law rules require application of the choice-of-law rules of the state where the federal court sits, here Illinois. A federal court sitting in diversity uses the forum state's choice-of-law rule, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U. S. 487, 496 (1941), and this also applies where a federal statute adopts state law, as is the case with the RICO prohibition of "unlawful debt." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1505 (2022) (Foreign Sovereign Immunities Act).

State statutes expressly addressing choice of law issues displace any common law rules. Restatement Second, Conflict of Laws, § 6(1): "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. . . ." *Barclays Disc. Bank, Ltd. v. Levy*, 743 F.2d 722, 725 (9th Cir. 1984).

The Predatory Loan Prevention Act (the "PLPA") specifies the geographic facts requiring its application. Section 15-1-15, 815 ILCS 123/15-1-15, entitled "Applicability," provides:

> (a) Except as otherwise provided in this Section, this Act applies to any person or entity that **offers or makes a loan to a consumer in Illinois.**

> (b) The provisions of this Act apply to any person or entity that seeks to evade its applicability by any device, subterfuge, or pretense whatsoever. . . .  (Emphasis added)

Thus, the Illinois General Assembly has specified that offering or making a "loan" to a "consumer" in Illinois makes the PLPA applicable. 815 ILCS 123/15-1-10 contains definitions. "Consumer" is defined to mean "any natural person." "Loan" is defined to include "closed-end and open-end credit, retail installment sales contracts, motor vehicle retail installment sales contracts, and any transaction **conducted via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone**." (Emphasis added) Furthermore, 815 ILCS 123/15-5-15, "No evasion," provides that:

-6-

(a) No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act, including, . . . making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act **through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State.**" (Emphasis added)

Thus, an out of state lender that makes a loan to a natural person in Illinois via the Internet or other remote means, but has no physical location in Illinois, is expressly covered.

Furthermore, the PLPA *expressly* negates the ability of consumers to waive its protections. 815 ILCS 123/15-10-25. The provision titled "No waivers," states that "[t]here shall be no waiver of any provision of this Act." *Id.* In addition, 815 ILCS 123/15-10-5 provides that "(b) Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act." The Consumer Fraud Act also prohibits waiver: "[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable." 815 ILCS 505/10c. The PLPA cannot be avoided by contract.

A choice-of-law clause by which an Illinois consumer purports to agree that a loan which is covered by and violates the PLPA shall be governed by the law of a less protective state is on its face:

(1)     a prohibited "waiver," 815 ILCS 123/15-10-25,

(2)     a "waiver or modification of the rights, provisions or remedies of this Act," 815 ILCS 505/10c, and

(3)     a "device, subterfuge, or pretense to evade the requirements of this Act, including, . . . making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State." 815 ILCS 123/15-5-15(a).

The complaint alleges that Defendants solicited loans from Illinois residents via the Internet and made the loans over the Internet. Therefore, this Court must apply Illinois law, including Illinois' PLPA.

## IV. PLAINTIFFS' CHOICE OF AN ILLINOIS FORUM IS ENTITLED TO CONTROLLING WEIGHT

This action is brought on behalf of an Illinois class to enforce Illinois statutes that have no exact counterpart in any other state. Defendants misleadingly insist that "Plaintiffs' choice of forum merits little weight because Plaintiffs bring a putative class action." (Dkt. 24, p. 5) However, the cases cited by Defendants deal with **nationwide** class actions. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) ("nationwide class of consumers"); *Kahn v. Target Corp.*, 22cv4178, 2023 U.S. Dist. LEXIS 33935, at *3 (N.D. Ill. Mar. 1, 2023) ("nationwide class of persons"); *Jasper v. Danone N. Am. Pub. Ben. Corp.*, 22cv7122, 2023 U.S. Dist. LEXIS 119285, at *7 (N.D. Ill. July 12, 2023) ("Since Jasper seeks to represent residents of eleven different states, her choice of forum carries less weight.")

A correct statement of the law is that "[w]hile a plaintiff's choice of forum is normally given substantial deference where he or she is a resident of the district where the action is brought, the choice is given less deference where it is a class action that implicates many different class members of different states." *Aboltin v. Jeunesse, LLC*, 16cv02574, 2017 U.S. Dist. LEXIS 148342, at *9 (D. Ariz. Sep. 11, 2017).

Where, as here, only a statewide class is sought or likely to be certified, Plaintiffs' choice to bring suit in the state where Plaintiffs and 100% of the class members reside and engaged in their transactions **is** given substantial weight. *AL and PO Corp. v. American Healthcare Capital, Inc.*, 14cv1905, 2015 U.S. Dist. LEXIS 19922, *3, 2015 WL 738694 (N.D. Ill. Feb. 19, 2015); *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015). It is no different from a case where one borrower sues an out-of-state lender for usury violations. The borrower is entitled to sue in his or her home state.

Defendants cite *Jasper*, 2023 WL 4492354, at *3, for the proposition that "the situs of material events is in Alaska, not Illinois." (Dkt. 24, p. 6) But *Jasper* dealt with a plaintiff seeking to

represent a multistate class of consumers in an action against a Delaware corporation headquartered in New York regarding misrepresentations concerning the labeling and marketing of a coffee creamer. The decisions about the labeling and marketing occurred in New York.

Here, Plaintiffs allege that Defendants violated RICO by collecting on usurious loans. As one Court found, this collection "necessarily occurred wherever the class member was located when the payment was made." *Hengle,* 2018 U.S. Dist. LEXIS 100939, 2018 WL 3016289, at *6. Because a "substantial part of the events" that form the basis of Plaintiffs' claims occurred in Illinois, Defendants' motion should be denied. *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 306 n.61 (E.D. Va. 2019). The collection of interest at unlawful rates is also the focus of Plaintiffs' state law usury and consumer protection claims.

In addition, Minto Money specifically targeted Illinois residents. Plaintiffs allege that Minto Money's "website stated that loans would not be made to persons in certain states. Illinois was not one of those states." (Cmplt., ¶43) The Seventh Circuit has held that this sort of specification of the states from which transactions would be accepted amounts to "targeting." *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

Still further, Defendants admit in their Amended Answer that "Minto Money has advertised and made loans to Illinois residents at rates exceeding 9%..." (Dkt. 33 at p. 17) and that "Minto Money has lent money to consumers in Illinois, transferred money to the accounts of Illinois consumers via banks located in Illinois, and electronically debited those same Illinois accounts." *Id.* at pp. 12-13.

The cases cited by Defendants do not bear on the rights of Illinois plaintiffs to enforce unique Illinois usury statutes on behalf of a class of Illinois residents against defendants who sought out Illinois residents for loans.

## V.  DEFENDANTS HAVE NOT SHOWN THAT THE CONVENIENCE OF WITNESSES OR PARTIES JUSTIFIES TRANSFER

Defendants make the analysis regarding this issue simple—they fail to identify *any* inconvenience imposed on the parties or any witnesses.

Since Defendants provide no affidavits and repeatedly contradict the allegations of the complaint concerning where the lending activity took place, they completely fail to show that convenience of the parties and, especially, witnesses who are neither parties nor employees of parties warrants transfer. There is no evidence, for example, that Alaska "is where nearly all the evidence is and all the material events occurred." Given the role of Lochen Thin Elk Denton and the non-tribal "investors" and "servicers," discovery may well be concentrated in Minnesota and Wisconsin.

What is clear is that Plaintiffs and the entire class are located in Illinois. Plaintiffs and the class members are also witnesses, who can testify to the manner in which they obtained loans. Plaintiffs have a legitimate interest in being able to litigate in their own state, where they can testify, assist counsel at trial by attending court, and enjoy representation by counsel of their choice in whom they repose trust and confidence, rather than some as yet unidentified Alaska attorney (if one can be found). Furthermore, the purpose of usury laws is to protect the borrower against the lender, and persons who obtained loans at triple-digit interest rates are clearly not in a position to take off work and participate in litigation in Alaska.

## VI.  THE INTERESTS OF JUSTICE REQUIRE THAT THIS CASE PROCEED IN ILLINOIS

Illinois has expressed a very strong public policy in favor of allowing Illinois residents injured by predatory lending to bring suit in a court located in Illinois. Laws protecting consumers against usury generally express a compelling public policy, *Hengle v. Asner,* 433 F. Supp. 3d 825, 866-67 (E.D. Va. 2020), and the Illinois PLPA is stronger than most usury statutes, in that it expressly prescribes its territorial applicability, prohibits borrowers from agreeing to any other venue, jurisdiction or law, and prohibits waiver. Usury laws "protect impoverished debtors from

improvident transactions drawn by lenders and brought on by dire personal financial stress." *Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services,* 769 F.3d 105, 110 (2d Cir. 2014).

The Illinois General Assembly expressly stated that the purpose of the PLPA is to protect Illinois consumers from predatory loans, 815 ILCS 123/15-1-5, and that "[t]his Act shall be construed as a consumer protection law for all purposes. This Act shall be liberally construed to effectuate its purpose." *Id.* To stamp out predatory loans, the PLPA imposes (815 ILCS 123/15-5-5) a 36% rate cap – grossly exceeded by Defendants loans. "Notwithstanding any other provision of law, for loans made or renewed on and after the effective date of this Act, a lender shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a loan. . . ." (815 ILCS 123/15-5-5) "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." (815 ILCS 123/15-5-10).

The PLPA clearly states a fundamental public policy of Illinois when it specifies what contracts it applies to, declares contracts for interest in excess of 36% void, and goes to elaborate lengths to outlaw any waiver or evasion of its provisions. Here, Illinois law and Illinois consumers are involved, and Illinois has a significant interest. *Rudy v. D.F. Stauffer Biscuit Co.,* 21cv03938, 2023 U.S. Dist. LEXIS 54989, at *10 (N.D. Ill. Mar. 30, 2023).[2]

Plaintiffs assert Illinois state law claims and one federal claim under the "unlawful debt" section of RICO (18 U.S.C. § 1962(c)). RICO defines "unlawful debt" as a debt incurred in "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). As there is no federal

---

[2] One such interest is "in having trial in a forum that is at home with the law that must govern the action." *Pogue v. Principal Life Ins. Co.,* 14cv00599, 2015 U.S. Dist. LEXIS 128888, at *10 (W.D. Ky. Sep. 24, 2015)

interest rate cap, the RICO claims are dependent upon determining whether Defendants' loans are twice the enforceable rate based on the laws of a plaintiff's home state, Illinois.

A judge in the Northern District of Illinois would likely have more familiarity with the relevant law than a judge sitting in Alaska. As for knowledge of sovereign immunity related issues, Defendants cannot on the one hand claim that "sovereign immunity is not currently before the court" (Dkt. 34 at pp. 4-5) and on the other argue that this case should be transferred to Alaska because their courts have more familiarity with sovereign immunity issues while all the while seeking to compel Plaintiffs to arbitrate their claims. As Defendants have not—and may not ever—sought dismissal on sovereign immunity grounds, this court should not transfer the case on that basis.

## VII. SUBJECT MATTER JURISDICTION SHOULD BE SETTLED BEFORE TRANSFER

Defendants contend that "Plaintiffs' claims do not belong in federal court. They must either be brought in arbitration or should be dismissed based on Defendants' tribal sovereign immunity." Dkt. 26, p. 2. In addition, Defendants have denied that the court has personal jurisdiction over them and have denied that venue in this district is proper. *See* Defendants' Amended Answer and Affirmative Defenses, Dkt. 33, pp. 4-5. The authority of a tribe to apply tribal law to a transaction is a matter of subject matter jurisdiction. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 786, n. 42, 45. (7th Cir. 2014).

Subject matter jurisdiction should be decided before transfer is considered. Indeed, if a court has no subject matter jurisdiction over a case "it has no power to transfer it to another district." *Arends v. Mitchell Sav. Bank*, 97cv4078, 1997 U.S. Dist. LEXIS 11984, at *5-6 (N.D. Ill. Aug. 12, 1997) citing *First Natl Bank of Chicago v. United Airlines,* 190 F.2d 493, 496 (7th Cir. 1951), rev'd on other grounds, 342 U.S. 396 (1952).

*Defendants cannot have it both ways—they cannot seek to transfer to a forum where they will ultimately attack subject matter jurisdiction. In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983). If the federal

courts lack subject matter jurisdiction, there's no basis to transfer this case to a federal court in Alaska.

## VIII. CONCLUSION

Defendants' motion is entirely unsupported and improperly seeks to contradict the complaint. At best, Defendants seek to transfer the burden of inconvenience from themselves to Plaintiffs. It should be denied.

Respectfully submitted,

*/s/ Matthew J. Goldstein*
Matthew J. Goldstein

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
tgoodwin@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com

-13-

## CERTIFICATE OF SERVICE

I, Matthew J. Goldstein, certify that on Monday, November 6, 2023, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

/s/ Matthew J. Goldstein
Matthew J. Goldstein

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
tgoodwin@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com

-14-