IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN FAHY, JENNENE STOICESCU, KIMBERLY ADAMS, and WILLIAM NORTHCUTT, on behalf of Plaintiffs and the class members described herein,<br><br>Plaintiffs,<br><br>v.<br><br>MINTO DEVELOPMENT CORPORATION; BENHTI ECONOMIC DEVELOPMENT CORPORATION; DOUGLAS WILLIAM ISAACSON; MINTO FINANCIAL d/b/a Minto Money and JOHN DOES 1–20,<br><br>Defendants. | Case No. 1:23-cv-03590<br><br>Judge: Matthew F. Kennelly |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

This case should be transferred to Alaska. Although Plaintiffs purport to tell a different story in their response, Plaintiffs' Complaint centers on a tribal lending operation based in Alaska, created by an Alaska tribe, and managed and operated by Alaska residents. Because Defendants do not controvert the allegations in the Complaint for the purposes of this motion, the Court must accept them as true. And once accepted as true, Plaintiffs' allegations show that transferring this matter to Alaska would clearly convenience the parties and the witnesses as well as serve the interests of justice. Defendants' motion should be granted.[1]

---

[1] Also pending is Defendants' Motion to Compel Arbitration. (ECF No. 25.) In the interest of judicial economy, the Court should rule on the Motion to Transfer Venue (ECF No. 23) first. *See Smith v. Gen. Info. Sols., Inc.*, No. 18-230, 2018 WL 4019463, at * (S.D. Ohio Aug. 23, 2018) (finding "it appropriate and in the interest of judicial economy" consider motion to transfer venue before motion to compel arbitration).

## BACKGROUND

In their opening brief, Defendants present how heavily Alaska residents and Alaska entities feature in the Complaint. (*See* Mem. Supp. Mot. 2–4, ECF No. 24.) Plaintiffs try to walk back these allegations in their response (*see* Pl. Opp. at 1–2, 5, 9–10, ECF No. 40), so Defendants reprise the key allegations here. According to the Complaint:

- Minto exists under the laws of the Native Village of Minto ("Minto Tribe"), a federally recognized tribe based in Minto, Alaska. (Compl. ¶¶ 21, 71.) Minto operates from the Minto Tribe reservation, where it makes loans under Minto tribal law. (*Id.* ¶¶ 38–39.)

- Minto's loan-approval process includes final review from a Minto Tribe representative, who must give final approval from the Minto Tribe reservation in Alaska. (*Id.* ¶ 35.)

- MDC is an Alaska corporation based in Fairbanks. (*Id.* ¶ 13.) MDC uses a portion of loan proceeds to fund tribal projects and support tribal members. (*Id.* ¶ 36.)

- Minto is a subsidiary of BEDCO, an economic development corporation organized under the laws of the Minto Tribe. (*Id.* ¶¶ 12, 21, 25.) BEDCO shares an office with Minto on the Minto Tribe reservation in Alaska. (*Id.* ¶ 12, 38–39.)

- Minto and BEDCO hold a tribal lending license signed by commissioner of the Minto Financial Services Licensing & Regulatory Commission (*Id.* ¶ 72.) The Commission operates from Minto, Alaska and issued the license under the Tribal Credit Code of the Minto Tribe. (*Id.* Ex. N, ECF No. 1-1.)

- Isaacson, a resident of North Pole, Alaska, is the Chief Executive Officer of MDC, acts as an agent of Minto, and controls BEDCO. (*Id.* ¶¶ 16, 24–25.)

All these allegations concern only Alaska entities, Alaska residents, and an Alaska Native American tribe. Although Plaintiffs assert that Minto mainly benefits Isaacson and other nontribal

members, the Complaint does not identify who those purported nontribal beneficiaries are. (*Id.* ¶ 78.) In fact, the only nontribal members and non-Alaskans identified in the Complaint are Plaintiffs themselves and Shane Thin Elk. (*See generally id.*)

In their response, Plaintiffs try to amplify their allegations about Shane Thin Elk's involvement in Minto's lending operation seemingly to argue that the action should not be transferred because Thin Elk is not located in Alaska.[2] (*See* Pl. Opp. at 1–2, 5, 9–10; *id.* Exs. A–D, ECF No. 40-1.) *See also Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (holding that plaintiff may not "unilaterally amend a complaint at will" "simply by raising a point in a brief"). But in the Complaint, Thin Elk plays only a minor role. There, Plaintiffs only allege that he (1) signed Minto and BEDCO's tribal lending license in his capacity as the Commissioner of the Minto Financial Services Licensing & Regulatory Commission, and (2) is a lawyer practicing American Indian law in Wisconsin. (Compl. ¶¶ 72, 76, 77.) Those allegations are afterthoughts in a Complaint revolving around a consumer lending business involving Minto, BEDCO, MDC, and Isaacson and loans made to the Plaintiffs. (*See generally id.*). Plaintiffs do not allege that Thin Elk played any role in the business or the loans at issue.

## **ARGUMENT**

This case should be transferred to the District of Alaska under 28 U.S.C. § 1404(a). Section 1404(a) grants this Court with the authority to transfer a matter to another district court "[f]or the convenience of the parties and witnesses, in the interest of justice." *Id.* Transferring a matter under § 1404(a) has four requirements: "(1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the

---

[2] In their response, Plaintiffs also quote other tribal lending cases to describe Minto's lending operation. (*See* Pl. Opp. 1.) There is no basis to assume that this tribal lending case resembles any other. Plaintiffs must produce evidence to prove their theory of the case. Relying on cherry-picked quotes from opinions in other cases will not do.

3

parties and witnesses; and (4) the transfer would serve the interest of justice." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (alteration in original) (quoting *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007)).

Plaintiffs do not contest the first two requirements, so only convenience and the interest of justice remain at issue. (*See generally* Pl. Opp.) Those interests would be furthered by transferring this case to Alaska.

I.  **Alaska Is More Convenient For the Parties and Witnesses.**

Alaska is by far the more convenient forum. Convenience has five components: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 22-1422, 2023 WL 4106067, at *14 (N.D. Ill. June 21, 2023) (quoting *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017)). Because these factors all favor transferring this matter to Alaska, the District of Alaska is "clearly more convenient" than this district. *Kahn v. Target Corp.*, No. 22-4178, 2023 WL 2306940, at *1 (N.D. Ill. Mar. 1, 2023) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

A.  **Nearly All The Witnesses Are In Alaska.**

Starting with the convenience of witnesses, this factor focuses on the location of nonparty witnesses. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009); *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007). To resolve this and all other issues on a motion to transfer venue, the Court must "accept[] all well-pleaded allegations in the complaint as true unless controverted by defendant's affidavit." *Sickman v. Asset Recovery*

4

*Sols., LLC*, No. 14-9748, 2015 WL 1911431, at *1 n.1 (N.D. Ill. Apr. 27, 2015) (quoting *QSN Indus., Inc. v. Sanderson*, No. 95-3356, 1995 WL 743751, at *3 (N.D. Ill. Dec. 13, 1995)).

As Defendants' opening brief made clear, the allegations in the Complaint establish that nearly all the nonparty witnesses are in Alaska, while the Complaint suggests that none are in Illinois. (*See* Mem. Supp. Mot. at 7–8.) Litigating in this Court would impose an inconvenience on these nonparty Alaska witnesses and will cause obstacles to securing key testimony that would not be present if this case was transferred to Alaska. And if these witnesses do not testify, Defendants would be prejudiced. Thus, contrary to Plaintiffs' assertion, litigating in this Court poses an inconvenience on Defendants and critical nonparty witnesses. (*See* Pl. Opp. at 10.)

Rather than grapple with the inconvenience facing Defendants and nonparty witnesses, Plaintiffs charge Defendants with contradicting the Complaint. (*See id.* at 4–5, 10.) But Plaintiffs' own words betray that charge. For example, Plaintiffs allege that "completed loan documents and details are transmitted to a Minto Tribe representative who may be physically located in Minto." (Compl. ¶ 35.) This representative, Plaintiffs also allege, "electronically 'reviews' the documents and provides 'final approval' to the loan while, supposedly, on the Minto Tribe's soil." (*Id.*) Defendants do not controvert these allegations for the purposes of this motion, and so the Court should accept them as true. *Sickman*, 2015 WL 1911431, at *1 n.1. And what these allegations show is that a Minto Tribe representative reviews and approves loan applications from the Minto Tribe reservation in Minto, Alaska. Thus, it is reasonable to conclude from Plaintiffs own words that the nonparty witnesses to Minto's loan-approval process are in the District of Alaska.[3]

---

[3] In their response, Plaintiffs claim that these and other nonparty witnesses in Minto will be beyond the court's subpoena power because Minto is over one hundred miles from Fairbanks. (Pl. Opp. at 4 n.1.) But that claim contradicts their Complaint, where Plaintiffs allege that Minto is "about 75 miles northwest of Fairbanks." (Compl. ¶ 71.) For purposes of this motion, the Court must accept as true Plaintiffs' allegations that the non-party witnesses in Minto are "about 75 miles" from Fairbanks and therefore within the subpoena power of the federal court in Fairbanks. *Sickman*, 2015 WL 1911431, at *1 n.1; *see also* Fed. R. Civ. P. 45(c)(1)(A). In any event, Minto is less than sixty miles from Fairbanks as the crow flies.

To take one more example, Plaintiffs allege that Minto and BEDCO operate under a "tribal lending license" issued by "the Minto Financial Services Licensing & Regulatory Commission." (Compl. ¶ 72.) They also allege that "the Minto Financial Services Licensing & Regulatory Commission was created immediately before issuing" Minto and BEDCO's license. (*Id.* ¶ 74.) Exhibits attached to the Complaint show that the Minto Financial Services Licensing & Regulatory Commission operates from a Minto, Alaska address. (*Id.* Ex. N.) Taken together, these allegations support the reasonable conclusion that the nonparty witnesses involved in the creation and operation of the Minto Financial Services Licensing & Regulatory Commission are in Minto, Alaska. They also support the reasonable conclusion that the nonparty witnesses involved in Minto and BEDCO's licensure reside in or around Minto, Alaska as well.

Given their own allegations, Plaintiffs are incorrect that this case involves witnesses "all over the map." (Pl. Opp. at 5.) Quite the opposite is true. This is a case with witnesses concentrated in a single district, the District of Alaska, and Plaintiffs identify precisely zero nonparty witness residing in Illinois. *See Amorose*, 521 F. Supp. 2d at 737 (finding transfer more convenient for witnesses when plaintiffs "identified no witnesses who reside in this district"). Thus, the convenience of the witnesses favors transferring this action to Alaska.

      **B.**      **Alaska Is The Source of Nearly All The Proof.**

Plaintiffs do not seriously dispute that the most significant sources of evidence are in Alaska. Instead, they submit that a law firm affiliated with Thin Elk and unnamed "investors" and "servicers" "may well" have relevant documents. (Pl. Opp. at 10.) But just because *some* relevant documents might be found in other districts does not mean that *nearly all* the proof will not be found in Alaska. And make no mistake, the allegations in the Complaint revolve around Minto and BEDCO (which both exist in and operate from Alaska) and Isaacson (who lives and works in

6

Alaska). (Compl. ¶¶ 12–21, 23–43.) Because these are alleged to be the key decisionmakers with respect to the lending operation at issue in the Complaint, it is reasonable to conclude that the most significant sources of evidence are in Alaska. *See Jaramillo*, 664 F. Supp. 2d at 914.

Plaintiffs point out that documents may be transported. (Pl. Opp. at 5.) But they do not dispute that these documents are more accessible in Alaska, nor do they identify "any evidence or potential witnesses, besides the named Plaintiffs, available in Illinois but not [Alaska]." *Jaramillo*, 664 F. Supp. 2d at 914. Thus, there is no question that the proof is more accessible in Alaska than Illinois. This factor favors transfer. *See id.* (phrasing this factor as the "[r]elative ease of access to proof"); *Williams*, 2023 WL 4106067, at *14 (same).

### C. Alaska Is The Situs of Material Events.

Plaintiffs maintain that the situs of material events is in Illinois because this is where Defendants collected the loans. (Pl. Opp. at 9.) But in this type of case where the claims center upon the making of loans at issue, where Defendants made their operating decisions is more material to this case than where Plaintiffs applied for and repaid their loans. *See Gingras v. Rees*, No. 15-101, 2020 WL 13421138 (D. Vt. Apr. 28, 2020). In *Gingras*, a tribal lending case, the court granted a § 1404(a) motion after finding the "locus of operative facts" in Texas rather than Vermont because that was where "the scheme's alleged mastermind . . . and his company . . . were both located." *Id.* at *18. Plaintiffs have alleged the same thing here: Plaintiffs allege that Isaacson is the mastermind behind the Minto lending operation and its primary beneficiary. (Compl. ¶¶ 23–27, 33, 36, 78–79.) Because Isaacson and Minto are both in Alaska, Alaska is "a much more plausible locus" than Illinois in this case. *Gingras*, 2020 WL 13421138, at *18; *see also Preston v. Am. Honda Motor Co., Inc.*, No. 17-3549, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017) ("where a claim revolves around" alleged "large-scale misrepresentations or statements to

7

consumers, the situs of material events is where the defendant made the underlying business decisions") (collecting cases).

Moreover, Plaintiffs have not alleged that Defendants collected the loans in Illinois, only that Defendants' collection "impacted Plaintiffs in the Northern District of Illinois." (Compl. ¶ 6.) More importantly, Plaintiffs rely on inapt caselaw to argue that the situs of material events is where collection occurs. (*See id.* (citing *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 306 n.61 (E.D. Va. 2019); *Hengle v. Curry*, No. 18-100, 2018 WL 3016289, at *6 (E.D. Va. June 15, 2018).) In *Gibbs*, the court noted the location of collection, but it did so in the context of denying a motion to dismiss for improper venue. 421 F. Supp. 3d at 306 n.61. Likewise, in *Hengle*, the court reasoned that venue was proper in a different division because collection occurred there. 2018 WL 3016289, at *6. No one disputes that venue is proper in Alaska and Illinois, so the reasoning from *Gibbs* and *Hengle* is irrelevant.

**D.     Plaintiffs' Choice Of Forum Should Be Discounted.**

Plaintiffs' choice of forum merits little weight because Alaska has a much stronger relationship to this dispute than Illinois. *See Amorose*, 521 F. Supp. 2d at 735 ("a plaintiff's choice of forum is afforded less deference when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events."). Alaska is where Defendants made critical marketing and loan-approval decisions. (Compl. ¶¶ 12–13, 16, 35, 37–39.) *See Jasper*, 2023 WL 4492354, at *2 (finding strong relationship between transferee forum and plaintiffs' claims because that was where defendant was headquartered and made relevant decisions). Illinois, on the other hand, is only where Plaintiffs applied for and repaid their loans. (Compl. ¶¶ 46, 50, 54, 58.) *See Jasper*, 2023 WL 4492354, at *2 (finding weak relationship

between Illinois and plaintiff's claims because that was only where plaintiff resided and purchased the product at issue).

Plaintiffs' assertion that they have an interest in litigating in Illinois with counsel of their choosing in part because they are "not in a position to take off work and participate in litigation in Alaska" merits little consideration. (Pl. Opp. at 11.)

*First*, Defendants are amenable to deposing Plaintiffs in Illinois (*see* Mem. Supp. Mot. at 8), so Plaintiffs will not be inconvenienced by transfer of this action to Alaska. *Jaramillo*, 664 F. Supp. 2d at 915 ("Because Defendants have agreed to take Plaintiffs' depositions in Illinois, they will not be inconvenienced by a transfer of this action to Kansas."). Moreover, the local rules in the District of Alaska provide that the court "may allow parties, counsel, or witnesses, to participate telephonically in any court proceeding, including trial, for good cause and in the absence of substantial prejudice to any party." *See* Local Rule 7.2(i) for the District of Alaska. Thus, Plaintiffs will have the opportunity to actively participate in the litigation in Alaska.

*Second*, Plaintiffs will not need to replace class counsel if this case is transferred. They may need to retain local counsel, but any inconvenience to class counsel or the need to retain local counsel is irrelevant on a motion to transfer. *Bland v. Edward D. Jones & Co., L.P.*, No. 18-3673, 2020 WL 7027595, at *9 (N.D. Ill. Nov. 30, 2020) ("consideration of the convenience of Plaintiffs' counsel is not an appropriate factor to consider when evaluating transfer.") (internal quotations and citation omitted); *Ambrose v. Steelcase, Inc.*, No. 02-2753, 2002 WL 1447871, at *2 (N.D. Ill. July 3, 2002) ("Where the convenience of counsel pertains only to local counsel, whose responsibilities for the litigation are limited to 'receiving service of notices, pleadings, and other documents and promptly notifying the nonresident attorney of their receipt and contents,' . . . rather

than 'substantive aspects of the litigation,' . . . this expense is not likely to be substantial.") (citation omitted).[4]

Because this dispute bears a much closer relationship to Alaska than Illinois, the Court should discount Plaintiffs' choice of forum and transfer this case to the more convenient forum. *See Amorose*, 521 F. Supp. 2d at 735.

**II.  Transferring This Matter Would Serve The Interests Of Justice.**

Litigating in Alaska would also serve the interests of justice. Relevant public interest factors include "each court's relative familiarity with the relevant law, docket congestion and likely speed to trial, the relationship of each community to the controversy, and the respective desirability of resolving controversies in each locale." *Kahn*, 2023 WL 2306940, at *3. Plaintiffs do not contest that transferring this case to Alaska will accelerate the speed to trial and ultimate disposition of this case. (*See generally* Pl. Opp.) Instead, they urge the Court to resolve subject matter jurisdiction and invalidate the choice-of-law provision in the parties' loan agreements. (*Id.* at 6–7, 12–13.) They also argue that Illinois has an interest in a local court resolving Illinois consumer claims under the Predatory Loan Prevention Act ("PLPA") and other state laws. (*Id.* at 10–12.) These arguments miss the mark.

    **A.  Neither Subject Matter Jurisdiction Nor The Enforceability of the Choice-of-Law Provision Need Resolution On This Motion.**

In an effort to avoid transfer, Plaintiffs argue that the Court must resolve subject matter jurisdiction and invalidate the choice-of-law provision. (Pl. Opp. 6–7, 12–13.) These are red herrings. Neither issue is properly before the Court or requires resolution to transfer this case.

---

[4] Plaintiffs' assertion that local counsel in Alaska may not be available is unfounded and thus should not be considered. (Pl. Opp. at 10 (noting potential need for Alaska attorney "if one can be found")).

10

Plaintiffs conflate subject matter jurisdiction with tribal sovereign immunity. (*See id.* at 12–13.) Defendants intend to assert tribal sovereign immunity if forced to resolve this dispute in court rather than in arbitration. Although this defense will foreclose Plaintiffs' claims, it "is not synonymous with subject matter jurisdiction." *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 170 (2d Cir. 2020). As the Second Circuit explained in *Oneida Indian Nation*, tribal sovereign immunity is waivable, while subject matter jurisdiction is not. *Id.* And tribal sovereign immunity operates as a defense to a cause of action, while subject matter jurisdiction is "fundamentally preliminary" and an "absolute stricture[]" on the court. *Id.* (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

Thus, Defendants are not trying to have it both ways. They are not trying to transfer this matter to another court only to then attack the court's subject matter jurisdiction. Rather, Defendants are trying to transfer this matter to the District of Alaska because Alaska has a far greater interest in resolving tribal sovereign immunity than Illinois does—a point Plaintiffs do not oppose. (*See generally* Pl. Opp.) And because tribal sovereign immunity is not "fundamentally preliminary," the Court should withhold judgment on this critical issue until it is properly raised, fully briefed, and ripe for disposition. *Oneida Indian Nation*, 981 F.3d at 170 (quoting *Leroy*, 443 U.S. at 180); *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 907 (9th Cir. 2021), *cert. denied sub nom. Acres Bonusing, Inc. v. Martson*, 142 S. Ct. 2836, 213 L. Ed. 2d 1065 (2022) ("Tribal sovereign immunity is quasi-jurisdictional, in the sense that we do not raise the issue on our own.") (internal quotation marks and citation omitted).

The choice-of-law provision in the parties' loan agreements is another distraction because its enforceability has zero bearing on this motion. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). In *Coffey*, the Seventh Circuit found unpersuasive the suggestion that the

11

interest-of-justice analysis on a § 1404(a) motion "bears upon" choice-of-law issues. *Id.* This is so because the interest-of-justice analysis relates "to the efficient functioning of the courts, not to the merits of the underlying dispute." *Id.* In any event, transferring this case to Alaska will not prevent Plaintiffs from attacking the choice-of-law provision under Illinois choice-of-law rules. "If a case is transferred from one federal district court to another pursuant to § 1404, the transferee court applies the transferor court's choice of law rules, so whether or not this case is transferred, Illinois choice of law rules will apply." *S. Capitol Bridgebuilders v. Lexington Ins.*, No. 20-3894, 2021 WL 1426888, at *4 (N.D. Ill. Apr. 15, 2021) (citing *Coffey*, 796 F.2d at 221). Because transfer will not prejudice Plaintiffs' choice-of-law argument, there is no need to resolve it on this motion.

**B.      Plaintiffs' Can Pursue Their State Law Claims in Alaska.**

The rest of Plaintiffs' interest-of-justice analysis focuses on Illinois's interest in their ability to pursue claims under the PLPA and other state laws. (Pl. Opp. at 10–12.) But as the court explained in *Jaramillo*, "federal courts have experience applying the law of foreign states." *Jaramillo*, 664 F. Supp. 2d at 917. Plus, Plaintiffs' Illinois claims are predicated on a rather simple theory of usury—i.e., on whether there is a loan of money for an amount repayable exceeding the lawful rate of interest. *Gen. Motors Acceptance Corp. v. Kettelson*, 219 Ill. App. 3d 871, 874 (1991). These issues "are not subtle or confusing so this Court's familiarity with Illinois law is not a significant reason to favor the Illinois forum." *Miller v. SKF USA, Inc.*, No. 10-6191, 2010 WL 5463809, at *6 (N.D. Ill. Dec. 29, 2010) (discussing breach of contract and state employment law claims).

Alaska, by contrast, has a compelling interest in resolving tribal sovereign immunity. (*See* Mem. Supp. Mot. 10.) Plaintiffs concede as much, arguing instead that Defendants have waived their tribal sovereign immunity. (Pl. Opp. at 12 ("Defendants have not—and may not ever—sought dismissal on sovereign immunity grounds").) Yet Plaintiffs do not explain how Defendants have

waived this defense, nor do they offer any authority for their position. In fact, relevant authority makes clear that Defendants have preserved their tribal sovereign immunity by asserting it as an affirmative defense. (*See* Answer 45, ECF No. 33.) *See also Murphy v. Smith*, 844 F.3d 653, 657 (7th Cir. 2016), *aff'd*, 138 S. Ct. 784, 200 L. Ed. 2d 75 (2018) (finding no waiver of statutory sovereign immunity when defendants raised it at least five times, including in their answer); *Acres Bonusing*, 17 F.4th at 907 ("Tribal sovereign immunity may be forfeited where the sovereign fails to assert it and therefore may be viewed as an affirmative defense.") (internal quotation marks and citation omitted).

In the end, transferring this case to the District of Alaska would serve the interests of justice. Alaska courts serve a community with a compelling interest in tribal matters, they can ably handle Plaintiffs' claims, and they have capacity on their dockets to adjudicate this case quickly.

## CONCLUSION

For all the above reasons, Defendants request that the Court transfer this matter to the District of Alaska.

Dated: November 29, 2023      Respectfully submitted,

By: */s/ Sarah A. Zielinski*

Sarah A. Zielinski (IL 6294156)
Amy Starinieri Gilbert (IL 6317954)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 849-8100
Facsimile: (312) 84903690
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Counsel for Defendants Minto Development Corporation, Benthi Economic Development Corporation, Douglas William Isaacson, and Minto Financial d/b/a Minto Money*

13