IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN FAHY, JENNENE STOICESCU, KIMBERLY ADAMS, and WILLIAM NORTHCUTT, on behalf of Plaintiffs and the class members described herein,<br><br>        Plaintiffs,<br><br>  v.<br><br>MINTO DEVELOPMENT CORPORATION; BENHTI ECONOMIC DEVELOPMENT CORPORATION; DOUGLAS WILLIAM ISAACSON; MINTO FINANCIAL d/b/a Minto Money and JOHN DOES 1–20,<br><br>        Defendants. | Case No. 1:23-cv-03590<br><br>Judge: Matthew F. Kennelly |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION**

  Plaintiffs do not dispute that there is a valid agreement to arbitrate or that their claims fall within the scope of the arbitration provision. Instead, they argue that the arbitration provision should not be enforced. Plaintiffs, however, have not provided any legitimate reason to ignore the parties' unequivocal agreement to arbitrate. Defendants' motion should be granted.[1]

  *First*, the delegation clause in the arbitration provision is enforceable and requires an arbitrator to resolve Plaintiffs' dispute regarding the enforceability of the arbitration provision. The delegation clause has its own force and effect distinct from the arbitration provision, but Plaintiffs have failed to raise any challenge to the delegation clause that is different from their challenges to the arbitration provision as a whole. Accordingly, the Court should enforce the

---

[1] Also pending is Defendants' Motion to Transfer Venue. (ECF No. 23.) In the interest of judicial economy, the Court should rule on the Motion to Transfer Venue first. *See Smith v. Gen. Info. Sols., Inc.*, No. 18-230, 2018 WL 4019463, at *2 (S.D. Ohio Aug. 23, 2018) (finding "it appropriate and in the interest of judicial economy" consider motion to transfer venue before motion to compel arbitration).

1

delegation clause and let the arbitrator decide whether the broader arbitration provision is enforceable.

*Second*, the prospective waiver doctrine does not apply. The arbitration provision selects the laws of the Native Village of Minto ("Minto Tribal Law") as the governing law which incorporates federal statutes, including RICO. As such, Plaintiffs can vindicate their federal statutory rights in arbitration. As for the waiver of state rights, that issue is beside the point because Defendants are not subject to state law consistent with the Indian Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8, cl. 3. Thus, Plaintiffs have no statutory rights to assert against Defendants under Illinois law.

*Third*, the arbitration provision is not unconscionable because it is neither confusing nor inconsistent and provides a legitimate forum for the adjudication of Plaintiffs' claims.

*Fourth*, the class-action waiver is enforceable on its own. If the Court does not compel individual arbitration, it should order that this case cannot proceed in court on a class basis.

*Finally*, Plaintiffs rely upon *Harris v. FSST Management Services, LLC*, No. 22-1063, 2023 WL 5096295 (N.D. Ill. Aug. 9, 2023), but that case is different in at least two critical respects. First, the arbitration provision there required the application of the "arbitration law of the tribe," but no such law existed. *Id.* at *4. Second, the provision granted tribal courts exclusive review of arbitration awards and empowered them to not apply the Federal Arbitration Act (FAA) "for any reason." *Id.* at *3. Those one-sided features guaranteed that the defendants would either win in arbitration or overturn an adverse award in tribal court. *See id.* at *7.

The one-sidedness central to the court's ruling in *Harris* is totally lacking here. Rather than apply nonexistent "tribal arbitration law," the parties' arbitration provision here applies both the FAA and Minto's Tribal Credit Code (which exists; Plaintiffs attach it to their response). (Compl.

Ex. A at 6, ECF No. 1-1.) The arbitration provision here also allows "any court having competent jurisdiction" to review arbitration awards. (*Id.*) That includes this Court because the arbitration provision contains a limited waiver of tribal sovereign immunity for "judicial actions to enforce . . . individual arbitration awards." (*Id.* at 5.) Thus, the arbitration provision provides a legitimate dispute-resolution mechanism subject to oversight by federal courts. *Harris* is of no moment.

## BACKGROUND

Minto is a lender organized under the laws of the Minto Tribe. (Compl. ¶¶ 21, 37, 71.) Minto is a subsidiary of the Benhti Economic Development Corporation ("BEDCO"), which is also organized under the laws of the Minto Tribe. (*Id.* ¶¶ 12, 21, 25.) Minto holds a Tribal lending license signed by the commissioner of the Minto Financial Services Licensing & Regulatory Commission. (*Id.* ¶ 72.) The commission issued the license "pursuant to and in accordance with the Tribal Credit Code of the Minto Tribe." (*Id.* Ex. N, ECF No. 1-1.) As a license holder, Minto must comply with the Tribal Credit Code, including its requirement "to comply at all times with . . . principles of federal law and regulations as applicable," including RICO. (Pl. Opp. Ex. A § 5.1, ECF No. 39-1.) Plaintiffs' repeated mischaracterization of Minto as an illegal lending scheme (Pl. Opp. at 1) is unsupported, and is frankly disparaging to a legitimate tribal business and the many tribal members who support its operation and benefit from it.

Plaintiffs each obtained loans from Minto in 2022 or 2023. (*See* Compl. Exs. A–D.) As with all its loans, Minto marketed the loans to Plaintiffs via its website, and reviewed, processed, and approved their loan applications from its office on Tribal land. (*Id.* ¶¶ 35, 37, 40.) When Plaintiffs took out their loans, they agreed to be bound by the terms set forth in Minto's loan agreement, including the binding arbitration provision. (*See id.*) Plaintiffs do not dispute that they formed a valid agreement to arbitrate or that their claims fall within its scope. Each loan agreement

3

disclosed that Minto was a wholly owned subsidiary of BEDCO, itself a wholly owned economic arm of the Minto Tribe, and that Minto Tribal law governed the agreement. (Compl. Exs. A–D.)

## ARGUMENT

Plaintiffs attempt to avoid arbitration by arguing that the parties' agreement to arbitrate is unfair and unconscionable, but Plaintiffs cannot escape a binding contract so easily, especially considering the strong federal policy favoring arbitration. *See, e.g.*, *Marmet Health Care Ctr. v. Brown*, 565 U.S. 530, 532 (2012). Defendants' motion should be granted.

**I.  The Delegation Clause Has Independent Effect and Is Enforceable.**

Plaintiffs argue that the delegation clause is unenforceable because the arbitration provision—not the delegation clause—purportedly disclaims state and federal law. (*See* Pl. Opp. at 3–6.) This alleged disclaimer comes from the choice-of-law provision, which is under a different section of the loan agreements than the delegation clause. (Compl. Ex. A. at 5.) The Supreme Court all but foreclosed such an indirect challenge to a delegation clause in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). A delegation clause, the Court held, is "severable from the remainder of the contract." *Id.* at 71. So, for an indirect challenge to work, an issue with the entire contract or one of its provisions must specifically affect the parties' antecedent agreement to delegate gateway issues to the arbitrator—i.e., an indirect challenge must still "go to the validity of the delegation provision." *Id.* at 70–74. Plaintiffs' indirect challenge here lacks this specificity because it fails to explain how the purported disclaimer of state and federal law specifically affects the validity of the delegation clause.

As in *Rent-A-Center*, a court in this district rejected a broad challenge to "the entire arbitration agreement, and in some respect the entire loan agreement" that did not specifically challenge the delegation clause. *Kemph v. Reddam*, No. 13-6785, 2015 WL 1510797 (N.D. Ill.

4

Mar. 27, 2015). To start, the *Kemph* court found that "the parties agreed to delegate the issue of arbitrability to the arbitrator," because their tribal loan agreements required arbitration of "any dispute," which was defined to include "any issues concerning the validity, enforceability, or scope of . . . the Arbitration agreement." *Id.* at *3–4. The court then found that plaintiffs failed to "specifically challenge the delegation provision," because they argued that the entire contracts were "against public policy" under Illinois' usury laws and that "the choice-of-law and choice-of-forum provisions" invalidated the arbitration provision. *Id.* Without a direct challenge to the delegation clause, the court enforced it and compelled arbitration. *Id.*

The Court should do the same here. First, the parties' arbitration provision unmistakably shows their intent to delegate all disputes—including threshold matters—to the arbitrator. Just as in *Kemph*, the provision defines "dispute" and "disputes" to have "the broadest possible meaning" and include "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision, the validity and scope of this Provision and any claim or attempt to set aside this Arbitration Provision." (Compl. Ex. A at 5.)[2]

Second, Plaintiffs have failed to challenge the delegation clause directly. They halfheartedly claim otherwise, but in the very next breath they contradict themselves. Indeed, in Plaintiffs' own words, they "challenge the enforceability of the delegation provision—*as well as the arbitration agreement as a whole*—because it disclaims state contract law and as a prospective waiver of their rights to vindicate federal and state statutory rights." (Pl. Opp. at 3 (emphasis added).) *Kemph* makes clear that Plaintiffs cannot use the same basis to attack both the delegation clause and the broader arbitration provision. Instead, they must dispute the clause's specific terms,

---

[2] The arbitration provision also incorporates AAA rules, underscoring that the delegation clause is enforceable under the "consensus view" of federal courts. *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (collecting cases).

which, like the plaintiffs in *Kemph*, they have not done. *See* 2015 WL 1510797, at *4; *see also Nanberg v. 21st Century Flooring, LLC*, No. 21-6623, 2022 WL 4482761, at *5 (N.D. Ill. Sept. 27, 2022) (enforcing delegation clause when plaintiffs' challenge "concern[ed] the arbitration provision . . . as a whole," not "the delegation provision specifically"); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1149 (11th Cir. 2015) (finding no specific challenge to delegation clause where plaintiff raised similar arguments regarding a tribal loan agreement as Plaintiffs do here).

Thus, under *Rent-A-Center* and *Kemph*, the Court must enforce the delegation clause, which ends the Court's inquiry because it is for the arbitrator to decide Plaintiffs' remaining challenges to the validity of the entire arbitration provision. *Id.* at 72.[3]

## II. The Prospective Waiver Doctrine Does Not Apply.

The choice-of-law provision's selection of Minto Tribal Law does not render the arbitration provision unenforceable under the prospective waiver doctrine. The Seventh Circuit has "repeatedly cautioned" that prospective waiver is "'rare' and applies only where the statutory language and the arbitration provision 'cannot be reconciled.'" *Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.*, No. 21-4626, 2022 WL 1591719, at *5 (N.D. Ill. May 19, 2022) (quoting *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 621–22 (7th Cir. 2021)). In other words, prospective waiver applies only if an "*express* conflict exists between the relevant statute and the agreement's arbitration provision." *Id*. (finding an express conflict when the arbitration provision explicitly prohibited the relief sought under ERISA). No such conflict exists here.

---

[3] Though Plaintiffs rely on *Harris* for the proposition that both the delegation clause and the arbitration provision may be challenged under the prospective waiver doctrine, 2023 WL 5096295, at *2, that decision conflicts with *Rent-A-Center* because it is not clear how the prospective waiver doctrine affects the validity of the delegation clause. *See* 561 U.S. at 70–74. Even if a general prospective waiver argument did suffice as a specific challenge, *Harris* is distinguishable because, for reasons explained below, the choice-of-law clause here does not amount to a prospective waiver, and so the delegation clause is not implicitly unenforceable. *See* 2023 WL 5096295, at *3.

6

A. **Minto Tribal Law Incorporates Federal Law.**

The tribal choice-of-law provision does not create an express conflict between the arbitration provision and Plaintiffs' federal statutory rights because Minto Tribal Law incorporates federal statutes. Indeed, Section 5.1 of the Minto Tribal Credit Code requires Minto "to comply at all times with . . . principles of federal law and regulations as applicable." (Pl. Opp. Ex. A § 5.1; *see also id.* § 1.2.13 ("The Tribe would like to ensure that all Tribal activities, including lending activities, follow the spirit of federal regulations . . . .").).

Plaintiffs contend that Minto Tribal Law does not embrace their RICO claim because the Minto Tribal Credit Code does not specifically list RICO. (Pl. Opp. at 10.) But this argument misconstrues Section 5.1 of the Code, which provides a non-exhaustive list of federal statutes and requires compliance with the principles of *all* applicable federal laws without limitation. (Pl. Opp. Ex. A § 5.1.) RICO is an applicable federal law routinely applied in claims involving consumer lenders; the many tribal lending cases in which consumers brought RICO claims make this clear. (Pl. Opp. at 7–8 (collecting cases).) Thus, RICO is incorporated into Minto Tribal Law.

Because the Minto Tribal Law incorporates applicable federal laws, including RICO, without limitation, it incorporates RICO's substantive rights *wholesale*, including its private right of action and treble-damages remedy. Plaintiffs thus have the same substantive rights under Minto Tribal Law as they have under RICO. Indeed, this wholesale incorporation of RICO sets this case apart from other tribal lending cases. *See, e.g.*, *Hengle v. Treppa*, 19 F.4th 324, 343 (4th Cir. 2021) ("the relevant tribal codes would not permit [plaintiffs] to effectively vindicate the federal protections and remedies they seek—that is, the borrowers could not assert a RICO claim seeking treble damages"); *Gibbs v. Sequoia Cap. Ops., LLC*, 966 F.3d 286, 293 (4th Cir. 2020) (similar).

7

These and other tribal lending cases are distinguishable and were not decided under Seventh Circuit law. (*See* Pl. Opp. at 7–11 (relying on out-of-circuit cases)).

Also distinguishable is *Harris*. In that case, the court found that consumers were unable to vindicate their federal statutory rights in an arbitral setting because the arbitration provision vested tribal courts with exclusive jurisdiction over arbitrator awards and then granted those courts the power to not apply the FAA "for any reason." *Harris*, 2023 WL 5096295, at *3, *5. For the *Harris* court, those features combined "to incorporate tribal law to the exclusion of federal and state law."[4] *Id.* at *3. Neither feature is present here, however. Rather than vest tribal courts with exclusive jurisdiction, the arbitration provision allows arbitrator awards to "be filed with any court having competent jurisdiction." (Compl. Ex. A at 6.) The arbitration provision also directs the arbitrator to apply "the [FAA]" and does not give a tribal court—or anyone else for that matter—the power to not apply that federal law. (*Id.*) Thus, *Harris* merits little weight.[5]

More persuasive is *Huntley v. Rosebud Economic Development Corp.*, No. 22-1172, 2023 WL 5186247 (S.D. Cal. Aug. 11, 2023). The court there found no prospective waiver because it

---

[4] Along with this explicit prospective waiver of federal statutory rights, the *Harris* court also found an implicit waiver because other terms in the loan agreement disavowed federal and state law. 2023 WL 5096295, at *4–5. For example, one provision disclaimed consent to the application of state or federal law from the agreement's inclusion of lending disclosures, and another provision disclaimed any usury violation under tribal law. *Id.* at *4. Here, by contrast, there are no provisions disavowing federal or state law, so there is no basis to infer implicit prospective waiver. Quite the opposite in fact, the parties' loan agreements establish a legitimate dispute-resolution procedure before a neutral arbitrator who must apply the FAA, tribal law, and AAA consumer-dispute rules, and all this is subject to judicial oversight at the arbitration-enforcement stage. (Compl. Ex. A at 5–6.)

[5] *Harris* also flipped the standard of review. In assessing the prospective waiver doctrine, the court noted that "nothing in the tribe's ordinance . . . *guarantees* parties' ability to pursue let alone vindicate federal and state statutory rights." *Harris*, 2023 WL 5096295, at *4 (emphasis added). But prospective waiver applies only when the arbitration provision *expressly forbids* the ability to pursue federal statutory rights, not when it *fails to guarantee* that ability. *Smith*, 13 F.4th at 621 (prospective waiver doctrine applies when the arbitration provision "cannot be reconciled" with federal statutory rights); *Tonkawa*, 2022 WL 1591719, at *6 ("*Smith* limited its holding to those situations where an express conflict exists between the relevant statute and the agreement's arbitration provision.") (cleaned up). The arbitration provision does not expressly forbid Plaintiffs' ability to pursue their RICO claim in arbitration, so the doctrine does not apply.

8

was "uncertain whether '[tribal] law would preclude otherwise applicable federal substantive statutory remedies.'" *Id.*, at *7; *see Tonkawa*, 2022 WL 1591719, at *6 (no prospective waiver when the contracts "do not expressly prohibit" federal statutory remedies). Here, the choice-of-law provision does not preclude federal statutory remedies and so there is no prospective waiver.

      **B.**      **The Waiver of State Law Has No Import.**

Contrary to Plaintiffs' arguments, the waiver of state law is irrelevant for at least two reasons. (*See* Pl. Opp. at 6–11.) *First*, prospective waiver is a federal doctrine that applies only to federal rights.[6] As far as Defendants can tell, only one court has addressed this issue in the tribal lending context, and that court refused to apply the doctrine to an arbitration provision that waived state but not federal law. *Dunn v. Glob. Tr. Mgmt., LLC*, 506 F. Supp. 3d 1214, 1235 (M.D. Fla. 2020) ("the waiver of federal rights was the precedential hook . . . relied on to strike down the agreements."). That is the precise situation here. Taken together, the arbitration provision and Minto Tribal Law allow Plaintiffs to vindicate their federal rights under RICO, but not their rights under any state law. (*See* Compl. Ex. D at 5 (waiving "the laws of any state"); Pl. Opp. Ex. A §§ 1.2.13 and 5.1 (incorporating applicable federal law only)). Under *Dunn*, this state-only waiver does not trigger the prospective waiver doctrine. *See Dunn*, 506 F. Supp. 3d at 1235.[7]

*Second*, even if the prospective waiver doctrine extended to state-law waivers, Plaintiffs have no statutory rights to assert against Defendants under Illinois law and therefore had nothing

---

[6] Plaintiffs' reliance on *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.5 (2022), is misplaced. (*See* Pl. Opp. at 7.) There, the Supreme Court held that the FAA preempts a California law insofar as it barred agreements to arbitrate certain California claims on an individual basis. *Moriana*, 142 S. Ct. at 1925. The court relegated its discussion of prospective waiver to a footnote—dicta "unnecessary to the result" in the case. *Moriana*, 142 S. Ct. 1906, 1926 (2022) (Barrett, J., concurring).

[7] *Dunn* nevertheless invalidated the arbitration provision as substantively unconscionable. 506 F. Supp. 3d at 1236. Not only did the choice-of-law provision waive state law, the court reasoned, but that waiver was unchallengeable because tribal law barred judicial review of arbitrator decisions. *Id.* The arbitration provision here avoids this "one-two combination" because it allows any court of competent jurisdiction—including this Court—to review arbitrator awards. (Compl. Ex. A at 6.)

9

to waive. For one, the Illinois Predatory Loan Prevention Act ("PLPA") does not apply to BEDCO or Minto because they are Tribal entities organized and licensed to do business under the laws of the Tribe, a federally recognized governmental entity. 815 ILCS 123/15-1-15. The PLPA explicitly exempts banks and other financial entities "organized, chartered, or holding a certificate of authority to do business under the laws of this State *or any other state* or under the laws of the United States." *Id*. (emphasis added). Thus, Minto and BEDCO are exempted under the PLPA.

Moreover, Minto, like many lenders, is not subject to Illinois law when it lends money to consumers, even those in Illinois. *See Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 1359, 1361, 1370 (D. Utah 2014) (explaining that FDIC-insured lenders are subject to federal law and the laws of the state where they are chartered). Minto is a Tribal entity and it received, processed, and approved Plaintiffs' loan applications on Tribal land. (Compl. ¶¶ 35, 37, 40.) Thus, when Minto lends money to consumers, it never crosses into Illinois, or any other state for that matter.[8]

By strictly engaging in conduct on Tribal land, Defendants are not subject to state law. The Supreme Court has repeatedly held that state law does not apply to tribal activities when "such application would interfere with reservation self-government." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148 (1973) (collecting cases); *see also FTC v. Payday Fin., LLC*, 935 F. Supp. 2d 926, 937–38 (D.S.D. 2013).[9] The Tribe founded BEDCO and Minto to develop its economy, create

---

[8] Plaintiffs posit without any support that the conduct at issue was undertaken by "nonmembers" of the Minto Tribe and directed "against other nonmembers off the reservation." (Pl. Opp. at 17.) This position cannot be credited. As arms of the Tribe, Minto and BEDCO are tribal entities. *Mestek v. LAC Courte Oreilles Cmty. Health Ctr.*, 72 F.4th 255, 257 (7th Cir. 2023) (holding that an "arm of the tribe" is "entitled to avail itself of the Tribe's sovereign immunity"). Nor do their lending activities take place "off the reservation" because all the critical contract formation events—including most importantly loan approval—occurred on the reservation. (Compl. ¶¶ 35, 37, 40.)

[9] In *Montana v. United States*, the Supreme Court stated generally that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. 544, 565 (1981). Yet the Court recognized two exceptions, including one applicable here: "A tribe may regulate through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* at 565.

10

jobs, and fund community projects. (*See* Pl. Opp. Ex. A §§ 1.2.1–1.2.14.) Because Illinois law would prevent these tribal entities from advancing those important Tribal goals, it does not apply. And because Illinois law does not apply, Plaintiffs have no state statutory rights to waive. Thus, the prospective waiver doctrine does not apply. The arbitration provision must be enforced.

**III.    The Arbitration Provision Is Not Unconscionable.**

       **A.    The Arbitration Provision Is Not Substantively Unconscionable.**

The arbitration provision is not substantively unconscionable because the procedures it establishes are not a sham. Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014). In *Jackson*, the court found the arbitration provision in a tribal loan agreement a sham because the provision mandated application of tribal arbitration rules before tribal arbitrators, even though neither those rules nor those arbitrators existed. *Id.* at 778–79.

Here, there are no illusory arbitral procedures. Under the arbitration provision, the parties agreed to use an arbitrator selected by themselves or AAA, and they agreed that AAA's consumer-dispute rules would apply. (*See* Compl. Ex. A at 5–6.) Thus, unlike in *Jackson*, the arbitral rules and forum exist. The arbitration provision also provides, among other things, that Minto will advance a consumer's portion of the expenses associated with arbitration, the arbitration hearing will be held, at the consumer's option, in the consumer's county of residence, and a consumer who prevails in arbitration will be entitled to recover attorney's fees and arbitration expenses from Minto, but under no circumstances will Minto be entitled to recover attorney's fees or arbitration expenses from the consumer, even if Minto prevails. *Id.* These terms are unquestionably fair. As a result, the court should compel arbitration and let the arbitrator resolve Plaintiffs' other arguments about the enforceability of the arbitration provision. *See Kemph*, 2015 WL 1510797, at *6 ("Since

11

Plaintiffs have not shown that the specified forum is unavailable or illusory, we must enforce the delegation provision and compel arbitration.").

Plaintiffs argue that the arbitration provision is substantively unconscionable because it waives the PLPA and other Illinois lending statutes. (Pl. Opp. at 11–17.) But as discussed above, BEDCO and Minto are exempted under the PLPA's plain terms, and Minto's Tribal lending activities are not subject to any Illinois law. *Mori v. E. Side Lenders, LLC*, No. 11-1324, 2015 WL 13654184, at *7 (N.D. Ill. Mar. 24, 2015) ("Before waiver may be considered, [plaintiff] must first show he is entitled to the protections of Illinois law and public policy.").

In any event, Plaintiffs have not shown that the choice-of-law provision amounts to an unconscionable waiver of state rights under Illinois's choice-of-law framework, which is their burden to prove. *In re Marriage of Haenisch*, 2021 IL App (2d) 200356-U, ¶ 21; *Mitchell v. Verizon Wireless*, No. 05-511, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006). For Illinois law to govern under the state's choice-of-law framework, Plaintiffs must establish that Illinois has "a *material* greater interest in the issue in dispute" than does the Minto Tribe. *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 727 (2008) (emphasis added). Plaintiffs establish no such thing. While Illinois may have a public policy against particular interest rates, Plaintiffs offer no reason why Illinois's interest in this dispute is materially greater than the Minto Tribe's. In fact, Plaintiffs do not even address the substantial tribal interest at stake. As arms of the Tribe organized under Tribal law, the Tribe created BEDCO and Minto to advance significant public policy goals: economic development, job growth, and community advancement. (*See* Pl. Opp. Ex. A §§ 1.2.1– 1.2.14.)[10]

---

[10] *Harris* does not compel a different result. The *Harris* court never resolved whether Illinois's interest was materially greater than that of the tribe. *See* 2023 WL 5096295, at *7.

### B. The Arbitration Provision Is Not Procedurally Unconscionable.

Plaintiffs do not seriously argue that the arbitration provision is procedurally unconscionable. Instead, they jump to unfounded legal conclusions to assert that the loan agreement contains misrepresentations. (*See* Pl. Opp. at 17–18.)

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it and also takes into account bargaining power." *Jackson*, 764 F.3d at 777. Applying this standard, the *Jackson* court found the arbitration provision there procedurally unconscionable because it specified that disputes must be resolved exclusively in tribal *court and* exclusively in tribal *arbitration*, an impossibility that may have confused consumers. *Id.* at 778. The arbitration provision here, by contrast, is neither inconsistent nor confusing. In plain language (much of which is conspicuously printed in bold, capitalized typeface), it explains that all disputes under the loan agreement must be resolved in a single manner: through arbitration. (Compl. Ex. A at 5 ("you and we agree that we shall arbitrate [any unresolved] dispute in accordance with the terms of the . . . . Arbitration Provision").) It then explains that Plaintiffs "**WAIV[ED] [THEIR] RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST [MINTO] OR RELATED THIRD PARTIES.**" (*Id.* at 6.)

*Harris* tracks *Jackson* and is distinguishable on a similar basis. In *Harris*, the choice-of-law provision applied "applicable substantive law consistent with the FAA" and, to the extent that the FAA was inapplicable, the agreement called for the application of the "arbitration law of the tribe." 2023 WL 5096295, at *6. Because the tribe had no arbitration law despite explicitly providing for it in the agreement, the court found the arbitration provision procedurally unconscionable for selecting "illusory" arbitral law. *Id.* That issue is not present here. The parties'

13

arbitration provision directs the arbitrator to "apply applicable substantive law consistent with the Governing Law . . . and the [FAA]." (Compl. Ex. A. at 6.) Plaintiffs do not claim—nor could they—that the governing Minto Tribal Law does not exist. (*See* Pl. Opp. at 10) (quoting Minto Tribal Law in their response). Thus, the arbitration provision is not procedurally unconscionable because it does not specify an illusory forum (contra *Jackson*) or illusory law (contra *Harris*).

Plaintiffs maintain—without support—that there is no basis to apply Minto Tribal Law because there is no "colorable claim to tribal jurisdiction." (Pl. Opp. at 17.) Not only is this argument immaterial, but it is also unavailing. *First*, as Plaintiffs well know, this Court has not yet had the opportunity to decide the issue of sovereign immunity and thus any unsupported statement that there is no tribal jurisdiction is meritless. *Second*, Plaintiffs' argument presumes that the arbitrator needs tribal jurisdiction to apply tribal law, but that is not so. Arbitral jurisdiction is "rooted in the parties' consent." *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 268 (7th Cir. 1988) (internal citation omitted); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"). Because the parties undoubtedly agreed to arbitrate this dispute applying Minto Tribal Law, the arbitrator has jurisdiction over Plaintiffs' claims and does indeed have a basis for applying tribal law. *See Mori*, 2015 WL 13654184, at *6 (N.D. Ill. Mar. 24, 2015) ("an arbitrator must follow the agreed upon law") (citing cases). Tribal jurisdiction has no bearing on this analysis.

*Harris* and *Jackson* are inapplicable. Those cases only addressed tribal jurisdiction because they had to. In *Harris*, tribal jurisdiction was at issue because the arbitration provision exclusively selected tribal courts to resolve disputes under the agreement. *Harris*, 2023 WL 5096295, at *7. Thus, if tribal courts lacked tribal jurisdiction, the arbitration provision would have selected an

14

illusory forum, rendering it unconscionable. *See id.* at *8. In *Jackson*, tribal jurisdiction was at issue because the defendants tried to enforce a choice-of-forum clause that required all litigation to proceed in tribal court, which turned on whether the tribal court could exercise jurisdiction. *Jackson*, 764 F.3d at 781–82. Here, by contrast, the arbitration provision does not select tribal court as the exclusive forum for arbitration or litigation. It requires arbitration to "occur before the American Arbitration Association" and permits "any court having competent jurisdiction" to enforce the arbitrator's award. (*See* Compl. Ex. A at 5–6.) Tribal jurisdiction is a nonissue.

### IV. The Class-Action Waiver Is Enforceable.

Finally, Plaintiffs assert that the parties' class-action waiver is unenforceable given the broader arbitration provision's unenforceability. (Pl. Opp. at 18.) But these provisions do not rise and fall together; they "are conceptually distinct." *Fischer v. Instant Checkmate LLC*, No. 19-4892, 2022 WL 971479, at *4 (N.D. Ill. Mar. 31, 2022) (finding waiver of plaintiff's right to seek arbitration did not make class waiver unenforceable). The class-action waiver here should be separately enforced because Plaintiffs waived the right to participate in a class action not only in arbitration but also in "any lawsuit." (Compl. Ex. A. at 6.) It is immaterial that this broad waiver appears in the arbitration provision. *See Bock v. Salt Creek Midstream LLC*, No. 19-1163, 2020 WL 5640669, at *8 (D.N.M. Sept. 22, 2020) (enforcing class waiver separately from arbitration provision where the waiver "plainly applies to '*any* dispute'").

### CONCLUSION

Defendants request that the Court compel arbitration on an individual basis, or in the alternative, rule that this case cannot proceed in court as a class action.

Dated: November 29, 2023

Respectfully submitted,

By: */s/ Sarah A. Zielinski*

Sarah A. Zielinski (IL 6294156)
Amy Starinieri Gilbert (IL 6317954)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 849-8100
Facsimile: (312) 849-3690
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Counsel for Defendants Minto Development Corporation, Benhti Economic Development Corporation, Douglas William Isaacson, and Minto Financial d/b/a Minto Money*

16